IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MERVYN'S HOLDINGS, LLC, et al., | : | Case No. 08-11586 (KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| MERVYN'S LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | Adv. Proc. No. |
| | : | 08-51402 KG |
| LUBERT-ADLER GROUP IV, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT TARGET CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS**

Date: April 3, 2009.

**MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP**
Laurie A. Krepto
(DE Bar #4109)
1105 North Market Street
Suite. 1500
Wilmington, DE 19801
Phone: (302) 504-7000
Fax: (302) 504-7820
lkrepto@mmwr.com

**FAEGRE & BENSON LLP**
Wendy J. Wildung
(MN Bar #117055)
Dennis M. Ryan
(MN Bar #161275)
Michael F. Doty
(MN Bar #0388303)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600
wwildung@faegre.com
dryan@faegre.com
mdoty@faegre.com

Counsel for Defendant Target Corporation

# TABLE OF CONTENTS

I.    INTRODUCTORY STATEMENT ................................... 1

II.   SUMMARY OF ARGUMENT ...................................... 2

III.  STATEMENT OF FACTS ....................................... 5

IV.   APPLICABLE LAW .......................................... 10

V.    ARGUMENT:  THE CLAIMS AGAINST TARGET
      SHOULD BE DISMISSED ..................................... 11

     A. COUNTS I AND II DO NOT STATE CLAIMS
        AGAINST TARGET ...................................... 11

          1.   Target's Sale Of Mervyn's Was Not A
               Fraudulent Transfer ........................... 13

          2.   Section 546(e) Bars Any Claim Against Target
               For The Sale Of Mervyn's ...................... 16

               a.   The Securities Payment was made to
                    complete a securities transaction .......... 17

               b.   Target received the Securities Payment
                    from a financial institution .............. 18

               c.   Section 546(e) applies to settlement
                    payments made to conclude buy-outs of
                    non-public companies ...................... 19

          3.   Target Cannot Be Held Liable As A Participant
               In Allegedly Fraudulent Transfers By Others .... 20

               a.   There is no claim against non-transferees
                    under the UFTA ............................ 20

                b.   Even if non-transferee liability exists
                    under the UFTA, Mervyn's cannot
                    pursue it ................................. 23

     B. COUNT V DOES NOT STATE A CLAIM AGAINST TARGET ....... 24

          1.   Target Did Not Owe Fiduciary Duties To
                Mervyn's Or Its Creditors ..................... 24

          2.   Target's Sale Of Mervyn's Did Not Breach
               Fiduciary Duties ............................... 28

          3.   Count V As Against Target Is Time-Barred By
               The Applicable Statute Of Limitations ......... 30

    VI.   CONCLUSION........................................... 33

**TABLE OF CITATIONS**

Page(s)

STATE CASES

*Freeman v. First Union Nat'l Bank,*
    865 So.2d 1272 (Fla. 2004)................................. 22

*In re Dean Witter P'ship Litig.,*
    1998 Del. Ch. LEXIS 133 (Del. Ch. July 17, 1998)........... 31

*Jara v. Suprema Meats, Inc.,*
    121 Cal. App. 4th 1238, 18 Cal. Rptr. 3d 187 (Cal. Ct.
    App. 2004)................................................. 27

*Jones v. H.F. Ahmanson & Co.,*
    1 Cal.3d 93, 460 P.2d 464 (Cal. 1969)................... 26, 27

*Litchfield Asset Mgmt. Corp. v. Howell,*
    799 A.2d 298 (Conn. App. Ct. 2002)........................ 22

*Lynch v. Vickers Energy Corp.,*
    383 A.2d 278 (Del. 1977).................................. 26

*Sawyer-Strub v. Damon Company (In re Strub),* 2006
    Cal. App. Unpub. LEXIS 6716 (Cal. App. Aug. 1, 2006)....... 22

*Smith v. VanGorkem,*
    488 A.2d 858 (Del. Ch. 1985).............................. 30

*Travelers Indemn. Co. v. Lake,*
    594 A.2d 38 (Del. 1991)................................... 12

*Trenwick America Litig. Trust v. Ernst & Young, L.L.P.*
    906 A.2d 168 (Del. Ch. 2006), *aff'd,* 931 A.2d 438
    (Del. 2007)............................................ 25, 27

*VantagePoint Ventures Partners 1996 v. Examen, Inc.,*
    871 A.2d 1108 (Del. 2005)................................. 24

*Warne Investments, Ltd. v. Higgins,*
    2008 Ariz. App. LEXIS 60 (Ariz. App. April 15, 2008)....... 22

*Whittington v. Dragon Group, L.L.C.,*
    2008 WL 4419075 (Del. Ch. Sept. 30, 2008)................. 31

**FEDERAL CASES**

*Baker O'Neal Holdings v. Ernst & Young, LLP,*
    2004 U.S. Dist. LEXIS 6277 (S.D. Ind. Mar. 24, 2004)........ 22

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ......................................... 10

*Brandt v. B.A. Capital Company, LP (In re Plassein Int'l.*
    *Corp.),*
    366 B.R. 318 (Bankr. D. Del. 2007)................. 17, 18, 19

*Burtch v. Dent (In re Circle Y of Yoakum Texas),*
    354 B.R. 349 (Bankr. D. Del. 2006)..................... 11, 31

*Carino v. Stefan,*
    376 F.3d 156 (3d Cir. 2004) ................................ 10

*Christy v. Alexander & Alexander of New York, Inc. (In re*
    *Finley, Kumble, Wagner, Heine, Underberg, Manley,*
    *Myerson & Casey),*
    130 F.3d 52 (2d Cir. 1997) ................................. 15

*Coggin v. Coggin (In re Coggin),*
    30 F.3d 1443 (11th Cir. 1994) .............................. 15

*David B. Lilly Co. v. Fisher,*
    799 F.Supp. 1562 (D. Del. 1992)......................... 30, 31

*Elliott v. Glushon,*
    390 F.2d 514 (9th Cir. 1967) ............................... 23

*Elway Co., LLP v. Miller, et al. (In re Elrod Holdings*
    *Corp.),*
    394 B.R. 760 (Bankr. D. Del. 2008)..................... 19, 21

*In re Burlington Coat Factory Sec. Litig.,*
    114 F.3d 1410 (3d Cir. 1997) ................................. 5

*In re Loranger Mfg. Corp.,*
    324 B.R. 575 (Bankr. W. D. Pa. 2005)....................... 19

*In re Parmalat Sec. Litig.,*
    377 F.Supp. 2d 390 (S.D.N.Y. 2005)......................... 22

*Jackson v. Star Sprinkler Corp.,*
    575 F.2d 1223 (8th Cir. 1978) .............................. 24

*Kontrick v. Ryan*,
540 U.S. 443 (2004).........................................15

*Lowenschuss v. Resorts Int'l., Inc. (In re Resorts Int'l.)*,
181 F.3d 505 (3d Cir. 1995)...........................17, 19

*Mack v. Newton*,
737 F.2d 1343 (5th Cir. 1984).............................23

*Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP*,
2007 WL 129003 (D. Del. Jan. 12, 2007)..................21, 22

*Miller v. Marcel Dutil The Canam Manac Group (In re Total Containment, Inc.)*,
335 B.R. 589 (Bankr. E.D. Pa. 2005).......................22

*Miller v. McCown De Leeuw & Co., Inc. (In re Brown Schools)*,
368 B.R. 394 (Bankr. D. Del. 2007).......................11

*Norman v. Elkin*,
2007 U.S. Dist. LEXIS 72725 (D. Del. 2007)................31

*Pepper v. Litton*,
308 U.S. 295 (1939).......................................26

*PHP Liquidating, LLC v. Robbins (In re PHP Healthcare Corp.)*,
128 Fed. Appx. 839 (3d Cir. 2005).........................12

*QSI Holdings Inc. v. Alford*,
382 B.R. 731 (W.D. Mich. 2007)............................19

*Robinson v. Watts Detective Agency, Inc.*,
685 F.2d 729 (1st Cir. 1982)...........................23, 24

*Rohm & Haas Co. v. Capuano*,
301 F.Supp. 2d 156 (D. R.I. 2004).........................22

*U.S. Express Lines, Ltd. v. Higgins*,
281 F.3d 383 (3d Cir. 2002)................................5

*United States v. City of Philadelphia*,
644 F.2d 187 (3d Cir. 1980)...............................10

*Weaver v. Kellogg*,
216 B.R. 563 (Bankr. S. D. Tex. 1997).....................28

*Williams v. Potter,*
  384 F.Supp. 2d 730 (D. Del. 2005)........................... 10

*Wyle v. Howard, Weil, Labousisse, Friedrichs Incorporated*
  *(In re Hamilton Taft & Co.),*
  176 B.R. 895 (Bankr. N.D. Cal. 1995), *aff'd on other*
  *grounds,* 114 F.3d 991 (9th Cir. 1997)....................... 24

**STATE STATUTES**

6 Del. C. §§1301, *et seq.* ..................................... 12

6 Del. C. §1304 ............................................... 13

6 Del. C. §1307 ............................................... 21

10 Del. C. §8106 .............................................. 31

10 Del. C. §8121 .............................................. 32

Cal. Civ. Code §§3439.01, *et seq.* ............................ 12

Cal. Civ. Code §3439.04 ....................................... 13

Cal. Civ. Code §3439.07 ....................................... 21

Cal. Corp. Code §17300 ........................................ 14

Minn. Stat. §§513.41, *et seq.* ................................ 12

Minn. Stat. §513.44 ........................................... 13

Minn. Stat. §513.47 ........................................... 21

**FEDERAL STATUTES**

11 U.S.C. §101 ................................................ 17

11 U.S.C. §101(22) ........................................ 17, 18

11 U.S.C. §101(51A) ........................................... 17

11 U.S.C. §543(a) ............................................. 13

11 U.S.C. §544(b) ..................... 2, 11, 13, 17, 23, 24

11 U.S.C. §546(e) ..................... 4, 16, 17, 19

11 U.S.C. §550 ........................... 11, 15, 16

11 U.S.C. §741(8) ........................................ 16, 17

**RULES**

Fed. R. Civ. P. 9(b) ...................................... 2, 11

Rules 7008, 7009, and 7012 of the Federal Rules of
   Bankruptcy Procedure........................................ 2

Fed. R. Civ. P. 12(b)(6) .................................. 2, 10

Fed. R. Civ. P. 8 ......................................... 2, 10

## I. **INTRODUCTORY STATEMENT**

In an arms'-length sale of equity that closed on September 2, 2004, defendant Target Corporation ("Target") sold its 100% ownership interest in Mervyn's LLC ("Mervyn's"), the plaintiff in this action, to Mervyn's Holdings, LLC ("Mervyn's Holdings") for approximately $1.175 billion cash. Mervyn's Holdings was owned and controlled by a group of private equity investors. The new owners of Mervyn's and their affiliates supposedly plundered the company *after* Target sold it, which eventually led Mervyn's to petition for relief under Chapter 11 of the Bankruptcy Code on July 29, 2008.

Mervyn's commenced this adversary proceeding on September 2, 2008 against 38 defendants, including Target. On December 22, 2008, Mervyn's filed and served its First Amended Complaint ("Amended Complaint", D.I. 7). The Amended Complaint contains detailed allegations against some of the defendants, but only vague and conclusory allegations of wrongdoing against Target. In a "kitchen sink" approach to pleading, it includes Target among multiple defendants on the following claims:

Count I: That the new owners of Mervyn's caused its real estate assets to be transferred with the actual intent to hinder, delay, or defraud Mervyn's creditors or without adequate consideration, in violation of the applicable provisions of the Uniform Fraudulent Transfer Act ("UFTA") or Uniform

- 1 -

Fraudulent Conveyance Act ("UFCA"), and Bankruptcy Code Sections 544(b) and 550.

Count II: That the new owners of Mervyn's caused its real estate assets to be pledged with the actual intent to hinder, delay, or defraud Mervyn's creditors or without adequate consideration, in violation of the applicable provisions of the UFTA or the UFCA, and Sections 544(b) and 550.

Count V: That the owners of Mervyn's (which changed over time) each breached the fiduciary duties that they owed to Mervyn's and its creditors at the respective times that they owned it.

Target now moves pursuant to Rules 8, 9(b), and 12(b)(6)of the Federal Rules of Civil Procedure, made applicable by Rules 7008, 7009, and 7012 of the Federal Rules of Bankruptcy Procedure, for an order dismissing the claims alleged against it in the Amended Complaint with prejudice.

## II. <u>SUMMARY OF ARGUMENT</u>

Mervyn's lacks a legal or factual basis to include Target among the defendants on its claims for fraudulent transfer and breach of fiduciary duty. There was nothing unlawful or improper about Target selling its ownership interest in Mervyn's to Mervyn's Holdings through a competitive bidding process.

## <u>Counts I and II</u>

Target's sale of Mervyn's to Mervyn's Holdings cannot, as a matter of law, render Target liable for fraudulent transfer, for five reasons.

1.   Target did not transfer or cause to be transferred any property belonging to Mervyn's.  Instead, it only sold Target's own property, the equity in Mervyn's.

2.   The sale of Mervyn's to Mervyn's Holdings had no impact on the solvency of Mervyn's.  It was made pursuant to Target's strategic plan for its own business, not in order to hinder, delay, or defraud Mervyn's creditors.

3.   Target did not receive any property belonging to Mervyn's, or the proceeds of any transfer or pledge of Mervyn's real estate assets.  The Equity Purchase Agreement was between Target and Mervyn's Holdings, and the approximately $1.175 billion cash that Target received came from Mervyn's Holdings.  Mervyn's Holdings raised the cash from outside sources.  Therefore, Target is not a transferee or subsequent transferee of Mervyn's property within the meaning of fraudulent transfer law.

4.   Target was not a party for whose benefit the allegedly fraudulent post-closing transfers or pledges of Mervyn's real estate assets were made.  It was not a guarantor of Mervyn's, or a debtor of the initial transferee.  Furthermore, the Equity Purchase Agreement between Target and Mervyn's Holdings did not condition Target's obligation to sell, or Mervyn's Holdings' obligation to buy, upon the transfer or pledge of any of Mervyn's real estate assets.

5.    Even assuming, *arguendo,* that Target's sale of Mervyn's could be viewed as a possible fraudulent transfer, Section 546(e) of the Bankruptcy Code bars Counts I and II as against Target.  The approximately $1.175 billion paid by Mervyn's Holdings to Target is a "settlement payment" made by a "financial institution" within the meaning of Section 546(e), and hence cannot be avoided by Mervyn's.

Target also cannot be held liable for the allegedly fraudulent transfers or pledges of Mervyn's real estate assets on the theory that its sale of Mervyn's somehow facilitated them.  Both bankruptcy law and state law are clear that claims for fraudulent transfer cannot be maintained against someone who only participated in some way in an allegedly fraudulent transfer, but who did not actually receive the fraudulently transferred property or its proceeds.

**Count V**

Count V's claim for breach of fiduciary duty by Target also fails, for three reasons.

1.    Parent companies like Target do not owe fiduciary duties to their wholly-owned subsidiaries, or to the creditors of their wholly-owned subsidiaries.

2.    Even if Target had owed a fiduciary duty to Mervyn's or its creditors, selling Mervyn's under the terms of the Equity Purchase Agreement did not breach that duty.

3.   Any claim for breach of fiduciary duty arising out of Target's sale of Mervyn's is time-barred by the applicable statute of limitations.

### III.   STATEMENT OF FACTS[1]

### The Background To Target's Sale Of Mervyn's

The business of the Debtor, Mervyn's LLC, began with a retail department store opened by Mervin Morris in San Lorenzo, California in 1949.  The company was incorporated in California in 1954 under the name "Mervyn's", and grew into a chain of mid-range department stores.  (*See* Am. Compl. ¶42, D.I. 7.)

Dayton Hudson Corporation ("DHC"), a Minnesota corporation, acquired Mervyn's in 1978.  (Am. Compl. ¶43, D.I. 7.)  At the time, DHC owned and operated high-end department stores.  Over the next several decades, DHC also acquired other high-end department stores, and grew the "Target" concept.  "Target" became a chain of discount retail

---

[1]   This Statement of Facts is based upon the facts alleged in the Amended Complaint as to Target, and upon certain documents that are contained in Target's Appendix ("Tar.A___").  On a motion to dismiss, a court can consider any "document integral or explicitly relied on in the complaint."  *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002) (*citing In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).  Target's Appendix contains documents that are referenced in the Amended Complaint or that are matters of public record.

stores. The "Target" concept was so successful that DHC eventually changed its name to "Target Corporation". (*Id.*)

As of the end of 2003, Target owned and operated three retail concepts: (1) Marshall Field's department stores; (2) Mervyn's; and (3) Target. By early 2004, Target's Board of Directors had made the strategic decision to focus upon the "Target" concept. (Am. Compl. ¶43, D.I. 7; Press release, Tar.A001.) Target therefore decided to sell both the Marshall Field's department store division, and Mervyn's. (*Id.*)

Target hired Goldman Sachs as its financial advisor. Goldman Sachs ran separate auction processes for the sale of the Marshall Field's division and Mervyn's. Through an auction process, the Marshall Field's division was sold to The May Department Stores Company in summer 2004. (Press release, Tar.A005.)

After receiving offers and negotiating with several potential buyers for Mervyn's, Target entered into an Equity Purchase Agreement dated as of July 29, 2004 (Tar.A006-084) to sell Mervyn's. (Am. Compl. ¶54, D.I. 7; Press release, Tar.A003.)

**The Equity Purchase Agreement**

The Equity Purchase Agreement required Target to sell its ownership interest in Mervyn's, consisting of equity securities, to Mervyn's Holdings in exchange for $1.175

billion in cash, subject to adjustments. (Am. Compl. ¶¶55, 57, D.I. 7; Equity Purchase Agree. ¶1, Tar.A014-015.)

Mervyn's Holdings was created by a group of private equity investors for the purpose of buying the equity of Mervyn's. (Am. Compl. ¶44, D.I. 7.) Target had no affiliation with any of the members of Mervyn's Holdings. (*Id.*) The sale was an arms-length transaction entered into after a competitive auction process. (*Id.* at ¶43.)

In the Equity Purchase Agreement, Mervyn's Holdings represented to Target that it had equity and debt commitment letters from outside funding sources "in an aggregate amount that exceeds the sum of the Purchase Price, the estimated transaction expenses arising from the transactions contemplated hereby and the *on-going working capital requirement* of the Companies." (Equity Purchase Agree. ¶6(d), Tar.A048, emphasis added.) As an exhibit to the Equity Purchase Agreement, Mervyn's Holdings furnished Target with commitment letters indicating that it had arranged loans and letters of credit from outside sources. (Tar.A085-096; *see also* Am. Compl. ¶¶58, 76, 89, D.I. 7, acknowledging the loans.) Nothing in the Equity Purchase Agreement conditioned the closing of the transaction upon the sale or transfer of any of Mervyn's real estate assets, either by Target or by anyone else. To the contrary, the Equity Purchase Agreement

expressly prohibited Target from selling, transferring, or encumbering any of Mervyn's real estate assets. (*Id.* at ¶5(b), Tar.A.043-044.)

The Equity Purchase Agreement also required Target, as a condition of the closing of the sale transaction, to cause Mervyn's "to be converted from a California corporation to California limited liability company in accordance with the California General Corporation Law". (Am. Compl. ¶44, D.I. 7; Equity Purchase Agree. ¶3(a)(xi), Tar.A021-022.) On August 27, 2004, Mervyn's converted to a California limited liability company ("LLC") and became known as "Mervyn's LLC." (Am. Compl. ¶56, D.I. 7.)

**The Closing Of Target's Sale Of Mervyn's**

All of the conditions to closing set forth in the Equity Purchase Agreement were satisfied or waived as of September 2, 2004. On that date,[2] Target sold and conveyed its equity interest in Mervyn's to Mervyn's Holdings. In exchange, Target received from Mervyn's Holdings, through wire transfers to Target's bank Wells Fargo Bank, N.A., the cash

---

[2]     The logistical and accounting systems for Mervyn's day-to-day operations had been integrated with Target's comparable systems. Therefore, Target provided transition logistical and accounting support to Mervyn's for a period of time after September 2, 2004 under the terms of a Transition Services Agreement until Mervyn's got its own systems in place. These services are not at issue in this action.

due under the terms of the Equity Purchase Agreement (the "Securities Payment"). (Am. Compl. ¶¶56-57, D.I. 7; Wire information per Equity Purchase Agree., Tar.A110-115.)

**The Factual Allegations Against Target**

In the 123 paragraphs that comprise the "factual" allegations of the Amended Complaint (¶¶4-127, D.I. 7), Target is mentioned by name or description only a few times. The Amended Complaint identifies Target (¶39), refers to the Equity Purchase Agreement and Target's sale of Mervyn's (¶¶43, 45, 54-57), and twice mentions the fact that Target converted Mervyn's to an LLC prior to the closing (¶¶44, 56).

Allegedly, Mervyn's Holdings raised the funds used to pay Target at closing by agreeing with some of the other defendants to transfer or pledge the real estate assets of Mervyn's after closing. The Amended Complaint contains no specific facts indicating that Target knew that (or had any interest in knowing whether) these post-closing transfers or pledges of Mervyn's real estate assets would occur. Instead, it just baldly asserts that the new owners of Mervyn's engaged in post-closing fraudulent transfers "with the knowledge, participation, or acquiescence" of Target. (Am. Compl. ¶49, D.I. 7; *see also* ¶¶39, 50, 79.) There is nothing in the Amended Complaint to indicate what Target allegedly knew; or when Target allegedly knew it; or what Target allegedly did to

participate in the fraudulent transfer scheme; or what Target allegedly acquiesced to; or why Target's acquiescence was essential to the scheme.

## IV.  **APPLICABLE LAW**

Target's motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the factual allegations made in the Amended Complaint in light of the required elements of Mervyn's alleged legal theories. In considering the motion, the Court "must accept all well-pleaded allegations in the [Amended Complaint] as true, and view them in the light most favorable to the plaintiff." *Carino v. Stefan,* 376 F.3d 156, 159 (3d Cir. 2004). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Instead, the *facts* pleaded "must be enough to raise a right to relief above the speculative level." *Id.*

Vague and conclusory allegations are not facts. They "do not provide fair notice to the defendant", as Rule 8 requires, so the Court should disregard them. *Williams v. Potter,* 384 F.Supp. 2d 730, 733 (D. Del. 2005) (*citing United States v. City of Philadelphia,* 644 F.2d 187, 204 (3d Cir. 1980).

Rule 9(b) of the Federal Rules of Civil Procedure applies to claims based upon fraud, specifically, Counts I and II. It requires that the circumstances constituting any alleged fraud by Target be pleaded "with particularity." Fed. R. Civ. P. 9(b). A failure to comply mandates dismissal of those claims. *See, e.g., Miller v. McCown De Leeuw & Co., Inc. (In re Brown Schools),* 368 B.R. 394, 403-404 (Bankr. D. Del. 2007); *Burtch v. Dent (In re Circle Y of Yoakum Texas),* 354 B.R. 349, 356 (Bankr. D. Del. 2006)(both dismissing fraudulent transfer claims under Rule 9(b)).

## V. ARGUMENT:
### THE CLAIMS AGAINST TARGET SHOULD BE DISMISSED.

**A. COUNTS I AND II DO NOT STATE CLAIMS AGAINST TARGET.**

Section 544(b) of the Bankruptcy Code[3] gives Mervyn's the rights of its actual unsecured creditors under state law to avoid fraudulent transfers or conveyances. Section 550 of the Bankruptcy Code authorizes Mervyn's to recover from a transferee any of its property, or the value of such property, that was transferred in a transaction that has been avoided pursuant to Section 544(b).

---

[3]     Section 544(b) provides in relevant part that "the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. §544(b)(1).

Although the Amended Complaint does not identify which state's law allegedly applies here, the state law applicable to any claims against Target could only be the law of Minnesota, California, or Delaware.[4] All three states have adopted the UFTA, *see* Minn. Stat. §§513.41, *et seq.,* Cal. Civ. Code §§3439.01, *et seq.,* and 6 Del. C. §§1301, *et seq.,* and all three interpret the UFTA similarly.

The Amended Complaint appears to contain two different fraudulent transfer theories as against Target: (1) that Target is liable for selling Mervyn's, because the approximately $1.175 billion that Target received was somehow the "poison fruits" of allegedly fraudulent transactions orchestrated by Mervyn's new owners; or (2) that Target is liable as a "participant" in the post-closing transactions orchestrated by Mervyn's new owners because by selling

---

[4]    This Court should apply Delaware choice of law rules to the state law claims before it. *See PHP Liquidating, LLC v. Robbins (In re PHP Healthcare Corp.),* 128 Fed. Appx. 839, 843 (3d Cir. 2005); *Dent,* 354 B.R. at 359.  Under the Delaware choice of law rule for tort claims, the local laws of the state "which has the most significant relationship to the occurrence and the parties" govern.  *Travelers Indemn. Co. v. Lake,* 594 A.2d 38, 47 (Del. 1991) (*citing* Restatement (Second) of Conflicts §145(1) (1971)). Minnesota is the state of incorporation and headquarters for Target, and is the state where Mervyn's was offered for sale and sold.  California is Mervyn's state of organization and headquarters.  Delaware is the state of organization for Mervyn's Holdings, the buyer.

Mervyn's, Target facilitated those transactions.[5]  Neither

theory has legal merit.

### 1. Target's Sale Of Mervyn's Was Not A Fraudulent Transfer.

By their plain language, the UFTA, and Sections

544(b) and 550, afford Mervyn's a cause of action against

transferees (or subsequent transferees) of its own property,

if the transfers at issue rendered Mervyn's insolvent or were

made with an actual intent to hinder, delay, or defraud

Mervyn's unsecured creditors.[6]

When describing Target's sale of Mervyn's, the

Amended Complaint relies more upon vague characterizations

(*e.g.,* that "it was similar to a leveraged buyout", ¶45,

D.I. 7) than facts.  On the facts that are either pleaded or

undisputed, Target's sale of Mervyn's does not fit within the

plain language of the fraudulent transfer statutes because:

---

[5]    The Amended Complaint also references Target in the caption of Count III, but Target assumes that reference was made in error.  Both the text of Count III and other paragraphs of the Amended Complaint allege that particular fees and expenses were charged by, and paid by Mervyn's to, certain of the defendants other than Target. (*See* Am. Compl. ¶95, and Ex. A, D.I. 7.) The Amended Complaint does *not* allege that any payments were made to Target for fees and expenses, and the prayer for relief on Count III does not include Target.  (*Id.* at p. 73, ¶C.)  If, contrary to Target's assumption, Mervyn's was trying to allege a claim against Target in Count III, it has failed to do so.

[6]    *See* Minn. Stat. §513.44; Cal. Civ. Code §3439.04; 6 Del. C. §1304; 11 U.S.C. §548(a).

**It was not a sale of Mervyn's property.** It instead involved a transfer of a membership interest in Mervyn's. That interest was the personal property of Target. *See* Cal. Corp. Code §17300 ("A membership interest and an economic interest in a limited liability company constitute personal property of the member or assignee.").

**It did not render Mervyn's insolvent.** By itself, the change in ownership from Target to Mervyn's Holdings did not affect Mervyn's assets. Further, Mervyn's Holdings represented to Target in the Equity Purchase Agreement that it had sufficient financing for the purchase price *plus* Mervyn's "on-going working capital requirement". (Tar.A048.)

**It was not made to hinder, delay, or defraud Mervyn's creditors.** It instead was made as part of a strategic plan by Target to focus on its "Target" concept and sell off its non-Target divisions. (Am. Compl. ¶43, D.I. 7; Press release, Tar.A001.)

**Target was not a transferee or subsequent transferee of Mervyn's property.** Mervyn's did not transfer any of its property to Target in the sale transaction. To the contrary, the Amended Complaint expressly alleges that Mervyn's Holdings, not Mervyn's, paid the purchase price to Target. (Am. Compl. ¶55, D.I. 7.) Mervyn's Holdings raised funds for the purchase price through various loans. (*Id.* at ¶¶58, 59.)

Even if (as alleged in ¶58) Mervyn's Holdings had promised its lenders that it would transfer or pledge certain real estate assets of Mervyn's in order to get the loans, the transfers and pledges could not have occurred until *after* Mervyn's Holdings closed on the Equity Purchase Agreement with Target. Thus Target could *not* have received any proceeds from the transfer or pledge of Mervyn's real estate assets when it was paid by Mervyn's Holdings at closing.

**Target was not a party "for whose benefit" the post-closing transfers or pledges of Mervyn's property were made.**

Section 550 of the Bankruptcy Code allows recovery of a fraudulent transfer from the initial transferee or the entity "for whose benefit" an alleged fraudulent transfer was made. As courts have construed it, the phrase is limited to: (1) a guarantor of the debtor; or (2) a debtor of the initial transferee. *See, e.g., Christy v. Alexander & Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey),* 130 F.3d 52, 57 (2d Cir. 1997); *Coggin v. Coggin (In re Coggin),* 30 F.3d 1443, 1453-54 (11th Cir. 1994), *overruled on other grounds, see Kontrick v. Ryan,* 540 U.S. 443 (2004). Target was neither a guarantor of Mervyn's, nor a debtor of any initial transferee, when the transfers or pledges of Mervyn's real estate assets were made. Further, Target's obligation to sell Mervyn's, and Mervyn's

Holdings' obligation to buy Mervyn's, were not conditioned in any way upon those transfers or pledges taking place. If anyone received the benefit of those transfers or pledges, it was the defendants who had made loans to Mervyn's Holdings, not Target.

There is simply no way to fit the legitimate, four-square peg that was Target's sale of Mervyn's, into the round hole of a fraudulent transfer claim. Counts I and II fail to state actionable claims against Target based upon its sale of Mervyn's, and so should be dismissed.

## 2. Section 546(e) Bars Any Claim Against Target For The Sale Of Mervyn's.

Even if Target's sale of Mervyn's otherwise fit within the plain language of the UFTA and Sections 546(b) and 550, Section 546(e) of the Bankruptcy Code bars Mervyn's from recovering the relief that it seeks against Target.

For its relief against Target, Mervyn's seeks return of some or all of the approximately $1.175 billion that Target received from Mervyn's Holdings in exchange for its equity interest in Mervyn's. (Am. Compl. at pp. 72-73, ¶A, D.I. 7.) This Securities Payment was a "settlement payment" as defined in 11 U.S.C. §741(8). Pursuant to Section 546(e), settlement payments made by or to a financial institution (as defined in

11 U.S.C. §101(22)) are *not* subject to avoidance under Sections 544(b) or 550.

### a. The Securities Payment was made to complete a securities transaction.

Section 741(8)[7] of the Bankruptcy Code defines a "settlement payment" as "a preliminary settlement payment, a partial settlement payment, a settlement payment on account, a final settlement payment, or any similar payment commonly used in the securities trade." Courts in the Third Circuit have consistently held that the definition of settlement payment "is generally the transfer of cash or securities made to complete a securities transaction." *Brandt v. B.A. Capital Company, LP (In re Plassein Int'l. Corp.)*, 366 B.R. 318, 323 (Bankr. D. Del. 2007) (*quoting Lowenschuss v. Resorts Int'l., Inc. (In re Resorts Int'l.)*, 181 F.3d 505, 515 (3d Cir. 1995)). Accordingly, "[the] definition [of settlement payment] is extremely broad and encompasses almost all securities transactions." *Id.* (*citing Resorts Int'l.* at 515).

In the Amended Complaint, Mervyn's admits that Target's equity interest in Mervyn's was a security when it was sold to Mervyn's Holdings. (Am. Compl. ¶55, D.I. 7,

---

[7] 11 U.S.C. §546(e) refers to "settlement payments" as defined in 11 U.S.C. §101 or §741. However, the definition of "settlement payment" that appears in 11 U.S.C. §101(51A) only applies to provisions in forward contracts and is not applicable here.

stating that Mervyn's Holdings "acquired all of the
outstanding equity securities (the 'Securities') of Mervyn's
from Target"). The Securities Payment was made to complete
that securities transaction. (*Id.* at ¶57, stating that a
purchase price of "$1,175,000,000 in cash, subject to
adjustments" was paid by Mervyn's Holding "to Target for the
Securities".)

> **b. Target received the Securities Payment from a financial institution.**

The Securities Payment that Target received on
account of its sale of Mervyn's was made by various financial
institutions.

Obviously, Mervyn's Holdings did not bring
approximately $1.175 billion cash to closing and pay Target
by physically delivering the money. Rather, Mervyn's Holdings
deposited funds with its banks. Those banks are financial
institutions as defined in Section 101(22) of the Bankruptcy
Code. Those banks then transferred the funds comprising the
Securities Payment by a series of wire transfers to Target's
bank, Wells Fargo, N.A. (Wire information, Tar.A110-115.)
Wells Fargo also is a financial institution, as defined in
Section 101(22). As this Court has observed, wire transfers
"must be performed by a bank; thus, a wire transfer must be
made through a financial institution." *Plassein*, 366 B.R. at

323 (*citing In re Loranger Mfg. Corp.*, 324 B.R. 575 (Bankr. W. D. Pa. 2005) (taking judicial notice of federal regulation requiring that wire transfers be made by a bank)).

Wire transfers through financial institutions to settle the sale of securities satisfy the requirements of Section 546(e). *Elway Co., LLP v. Miller, et al. (In re Elrod Holdings Corp.)*, 394 B.R. 760, 763 (Bankr. D. Del. 2008).

### c. Section 546(e) applies to settlement payments made to conclude buy-outs of non-public companies.

The Amended Complaint alleges that Target's sale of Mervyn's "was similar to a leveraged buyout." (Am. Compl. ¶45, D.I. 7.) Even if true, courts in this Circuit have consistently held that settlement payments made to complete LBO transactions are protected from avoidance by Section 546(e). *See, e.g., Plassein*, 366 B.R. at 323-324; *Resorts*, 181 F.3d at 515-516. The fact that the security being sold –– Target's equity interest in Mervyn's –– was not publicly traded has no bearing on the applicability of Section 546(e). *See, e.g., Plassein*, 366 B.R. at 324; *Resorts*, 181 F.3d at 515 (noting that transfer that did not involve any securities clearing agency, but did involve two financial institutions, was a settlement payment); *Elway*, 394 B.R. at 763-764; *QSI Holdings Inc. v. Alford*, 382 B.R. 731, 743 (W.D. Mich. 2007)(finding that the plain language of Section 546(e)

"neither limits application of the term 'settlement payment'
to transactions involving only publicly traded securities nor
does it exclude LBO payments").

The Securities Payment thus satisfies every
requirement of Section 546(e): Target received it from a
financial institution in final settlement of a securities
transaction.  Accordingly, the Securities Payment is protected
from being avoided.  The claims asserted against Target in
Counts I and II necessarily fail as a matter of law.

3.    **Target Cannot Be Held Liable As A Participant In
      Allegedly Fraudulent Transfers By Others.**

As a matter of law, Target cannot be held liable for
the transfers or pledges of Mervyn's real estate assets
orchestrated by Mervyn's new owners because it did not
actually receive the fraudulently transferred property or its
proceeds.

a.    **There is no claim against non-transferees under
      the UFTA.**

The remedies available under the UFTA permit
creditors to set aside fraudulent transfers made to
transferees.  Specifically, the remedies provision of the UFTA
permits creditors to: (1) avoid a fraudulent transfer made to
a transferee; (2) request that a court attach assets
transferred to a transferee; (3) obtain an injunction that
enjoins the disposition of assets by a transferee; and (4)

request appointment of a receiver to assume control over assets transferred to a transferee. Minn. Stat. §513.47; Cal. Civ. Code §3439.07; 6 Del. C. §1307.

The UFTA does *not* afford creditors any remedy against non-transferees of the debtor's property. Nevertheless, plaintiffs, like Mervyn's here, frequently attempt to assert claims under the UFTA against non-transferees on the theory that the non-transferee participated in the transfer, or aided and abetted the transfer, or conspired with others to accomplish the transfer, or some like theory of accessory liability. (*See* Am. Compl. ¶¶39, 49, 50, 79, D.I. 7, alleging that Target knew of/participated in/acquiesced in the allegedly fraudulent transfers or pledges of Mervyn's real estate assets.)

Relying principally upon the plain language of the UFTA, this Court has squarely rejected attempts to hold non-transferees liable under the UFTA. *See, e.g., Elway,* 394 B.R. at 757 (granting motion to dismiss fraudulent transfer claims to the extent that movant was not the transferee); *see also Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP,* 2007 WL 129003, at *3 (D. Del. Jan. 12, 2007) (dismissing fraudulent transfer claim against non-transferee). So, too,

have the vast majority of other courts[8] that have addressed the issue. As one court has stated, "[w]e simply can see no language in [the UFTA] that suggests an intent to create an independent tort for damages." *Freeman v. First Union Nat'l Bank,* 865 So.2d 1272, 1277 (Fla. 2004).

This Court should not allow Mervyn's to pursue allegations against Target for which no remedy exists. To the extent that Mervyn's asserts claims against Target for the allegedly fraudulent transfers or pledges of Mervyn's real estate assets, those claims should be dismissed.

---

[8] *E.g., Miller v. Marcel Dutil The Canam Manac Group (In re Total Containment, Inc.),* 335 B.R. 589, 615-616 (Bankr. E.D. Pa. 2005)(UFTA in Pennsylvania does not permit claims against non-transferees); *In re Parmalat Sec. Litig.* 377 F.Supp. 2d 390, 417 (S.D.N.Y. 2005)(UFTA in Illinois does not encompass aiding and abetting); *Baker O'Neal Holdings v. Ernst & Young, LLP,* 2004 U.S. Dist. LEXIS 6277, at **42-43 (S.D. Ind. Mar. 24, 2004)(UFTA in Indiana does not encompass aiding and abetting); *Rohm & Haas Co. v. Capuano,* 301 F.Supp. 2d 156, 161 (D. R.I. 2004)(declining to extend liability under Rhode Island UFTA to non-transferees); *Freeman v. First Union Nat'l Bank,* 865 So.2d 1272 (Fla. 2004)(UFTA in Florida does not encompass aiding and abetting)**;** *Magten,* 2007 WL 129003, at * 3 (UFTA in Montana does not encompass aiding and abetting); *Warne Investments, Ltd. v. Higgins,* 2008 Ariz. App. LEXIS 60, at *30 (Ariz. App. April 15, 2008)(UFTA in Arizona does not encompass aiding and abetting); *Litchfield Asset Mgmt. Corp. v. Howell,* 799 A.2d 298, 308-309 (Conn. App. Ct. 2002)(UFTA in Connecticut does not encompass aiding and abetting); *see also Sawyer-Strub v. Damon Company (In re Strub),* 2006 Cal. App. Unpub. LEXIS 6716, at **19-20 (Cal. App. Aug. 1, 2006) (declining to allow participant liability under the California UFTA).

### b. Even if non-transferee liability exists under the UFTA, Mervyn's cannot pursue it.

Even if the UFTA were interpreted under a particular state's law as permitting a claim against a non-transferee like Target, that claim could not be pursued by Mervyn's.

A bankruptcy trustee is not empowered to pursue every action that creditors might pursue, but only those authorized under the Bankruptcy Code. Mervyn's' only authority to assert creditors' state-law causes of action relating to fraudulent transfers is found in Section 544(b). That section only permits Mervyn's to *avoid* a fraudulent transfer. (*See* 11 U.S.C. §544(b), stating that "[t]he trustee *may avoid* any transfer . . .")(emphasis added)).

The purpose of the avoidance powers granted to a trustee is to "preserve the assets of the bankrupt", and not "to render civilly liable all persons who might have contributed in some way to the dissipation of those assets." *Mack v. Newton,* 737 F.2d 1343, 1358 (5th Cir. 1984). Federal courts consistently have held that a trustee lacks authority to pursue claims for fraudulent transfer against non-transferees under Section 544(b) of the Bankruptcy Code, or its predecessor provision in the Bankruptcy Act. *See, e.g., Mack,* 737 F.2d at 1361; *Elliott v. Glushon,* 390 F.2d 514, 516 (9th Cir. 1967); *Robinson v. Watts Detective Agency, Inc.,* 685

F.2d 729, 737 and n.10 (1st Cir. 1982); *Jackson v. Star Sprinkler Corp.,* 575 F.2d 1223, 1234 (8th Cir. 1978).  "[T]he legislative theory [of Section 544(b)] is cancellation, not the creation of liability for the consequences of a wrongful act."  *Wyle v. Howard, Weil, Labousisse, Friedrichs Incorporated (In re Hamilton Taft & Co.)*, 176 B.R. 895, 902 (Bankr. N.D. Cal. 1995), *aff'd on other grounds,* 114 F.3d 991 (9th Cir. 1997)(quotation and citations omitted).

Because Mervyn's lacks authority under the Bankruptcy Code to sue Target for the transfers or pledges of its real estate assets described in the Amended Complaint, the Court should dismiss Counts I and II as to Target.

**B.**  **COUNT V DOES NOT STATE A CLAIM AGAINST TARGET.**

**1.**  **Target Did Not Owe Fiduciary Duties To Mervyn's Or Its Creditors.**

The premise of Count V is that Target owed fiduciary duties to Mervyn's and/or its creditors at the time that Target sold Mervyn's.  (Am. Compl. ¶172, D.I. 7.) *Not* true.

Mervyn's was a California limited liability company at the time of its sale, so under the "internal affairs doctrine", the substantive law of California governs whether fiduciary duties were owed by Target, and to whom.  *See VantagePoint Ventures Partners 1996 v. Examen, Inc.,* 871 A.2d 1108, 1115 (Del. 2005)(holding that Delaware's choice of law

rules require application of "the law of the state of incorporation to issues involving corporate internal affairs").

California, like Delaware, considers limited liability companies to be hybrids, creatures of both statute and contract. Target's relationship with Mervyn's as of the date it was sold was as the sole member, and the 100% owner, of Mervyn's. (*See* Mervyn's Operating Agree. at p. 1, Tar.A097.) There is *zero* law in California holding that the sole member of a California LLC owes fiduciary duties to the LLC.

Mervyn's might attempt to invoke case law addressing fiduciary duties that majority controlling shareholders owe under certain circumstances, but that law does not save Count V.

The general rule of corporate law is that parent companies like Target do *not* owe fiduciary duties to their wholly-owned subsidiaries like Mervyn's. As was stated in *Trenwick America Litig. Trust v. Ernst & Young, L.L.P.* 906 A.2d 168, 173 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. 2007), "[w]holly-owned subsidiary corporations are expected to operate for the benefit of their parent corporations; that is why they are created. Parent corporations do not owe such subsidiaries fiduciary duties." Indeed, it would be an

oxymoron to hold that a parent corporation owes fiduciary duties to a company that exists to serve the parent's interests.

The law reaches a different conclusion if the subsidiary is only partially owned by the parent company.  In that situation, the subsidiary serves the interests of multiple shareholders.  There are minority shareholders to consider, so the law protects the minority's interests by imposing fiduciary duties upon the majority controlling shareholder under some circumstances. *See, e.g., Lynch v. Vickers Energy Corp.,* 383 A.2d 278, 279 (Del. 1977) (in connection with sale transaction, majority shareholders owe a fiduciary duty of candor to minority shareholders); *Pepper v. Litton,* 308 U.S. 295, 306 (1939) (majority shareholders' dealings with the corporation are subjected to "rigorous scrutiny", and they must prove the "inherent fairness" of the transaction).

California case law conforms with this approach.  In *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 460 P.2d 464 (Cal. 1969), the California Supreme Court held that majority controlling shareholders had fiduciary duties to the corporation and its minority shareholders.  460 P.2d at 471-472.  There, the majority controlling shareholders had used their voting powers to cause the corporation to engage in

transactions that manipulated the value of the corporation's stock to their benefit, and at the expense of minority shareholders. California courts applying *Jones* focus on the duties owed by majority controlling shareholders to minority shareholders. As one court subsequently noted, the stock manipulation at issue in *Jones* had "no effect whatever on the underlying business" of the corporation, but only on the interests of the minority shareholders. *Jara v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1258, 18 Cal. Rptr. 3d 187, 202 (Cal. Ct. App. 2004).

The cases imposing fiduciary duties upon majority controlling shareholders have no applicability here because Mervyn's had no minority shareholders (or members) when Target owned it. Mervyn's operated to benefit Target alone. Target owed no fiduciary duties to Mervyn's as a matter of law, and therefore Count V fails.

Count V also fails to adequately plead that Target owed fiduciary duties to the creditors of Mervyn's when it sold Mervyn's. There is *zero* law in either Delaware or California holding that a parent company owes fiduciary duties to the creditors of its wholly-owned subsidiaries. *See Trenwick,* 906 A.2d at 191. A majority controlling shareholder may be found to have owed fiduciary duties to creditors of a corporation under California law, but only "where there has

been prejudice to the creditors, and prejudice arises only where the transaction is a fraudulent conveyance or one which led to corporate insolvency." *Weaver v. Kellogg,* 216 B.R. 563, 583 (Bankr. S. D. Tex. 1997)(discussing California law) (quotations and citations omitted).

Target did not owe fiduciary duties to the creditors of Mervyn's because, as discussed previously, Target's sale of Mervyn's did not itself prejudice Mervyn's creditors. And Target did not owe fiduciary duties to creditors *after* it sold Mervyn's, because former owners do not owe such duties. Thus, even if the transfers or pledges of real estate assets orchestrated by others were fraudulent, or rendered Mervyn's insolvent, Target cannot be held liable for them on a breach of fiduciary duty theory.

## 2. Target's Sale Of Mervyn's Did Not Breach Fiduciary Duties.

Even if Target had owed fiduciary duties to Mervyn's or its creditors, the sale of Mervyn's did not breach those duties.

Count V specifically alleges that other defendants "engaged in self-dealing, acted in bad faith, and breached their fiduciary duties (including the duty of loyalty), and took unfair advantage of Mervyn's". (Am. Comp. ¶¶178-181, D.I. 7.) It contains *no* comparable allegations against

Target.  All it alleges is that Target "had or should have had

knowledge of" the plans of the other defendants when Target

sold Mervyn's, and that selling Mervyn's therefore was a

breach of Target's fiduciary duty. (*Id.* at ¶¶174, 175.)

These allegations do not suffice to state a claim

against Target.  *First*, the allegations describe conduct that

was, at worst, negligent or grossly negligent.  Mervyn's

Operating Agreement expressly provides that Target cannot be

held liable to Mervyn's for such conduct.  It states, at

Section 18.1(ii), that "Covered Persons" (defined to include

Members),

> whether acting as Member, or in any other capacity, shall
> not be liable to the Company . . . for any loss, damage
> or claim incurred by reason of any act or omission
> (whether or not constituting negligence or gross
> negligence) performed or omitted by the Member in good
> faith on behalf of the Company . . ..

(Tar.A105.)  *Second*, there is nothing in the law of fiduciary

duty that requires Target to be a watchdog for the acts or

omissions of successor fiduciaries.  Target can be held

liable, if at all, only for its own acts and omissions.  As

the sole owner of Mervyn's, Target had the right to sell the

company.  Even if Target had known about the plans of the

other defendants, it *still* was entitled to sell Mervyn's.

Nothing that Target allegedly did or failed to do in

connection with its sale of Mervyn's constitutes a breach of

fiduciary duty. Target did not sell assets of Mervyn's, only its own equity interest. Target was entitled by law to obtain the best price that it could for that interest. *See generally Smith v. VanGorkem,* 488 A.2d 858 (Del. Ch. 1985) (board of directors has fiduciary duty to obtain fair value in a sale transaction). Neither the price that Target received, nor the closing of the Mervyn's sale transaction, were conditioned upon the transfer or pledge of any of Mervyn's real estate assets. To the contrary, the Equity Purchase Agreement (Tar.A043-044) expressly prohibited Target from selling, transferring, or encumbering any of Mervyn's real estate assets, and Target *did not do so*.

How, then, as a matter of fact, can Target be held liable for the financial engineering that supposedly started Mervyn's down the path to bankruptcy? It cannot, and so Count V should be dismissed.

### 3. Count V As Against Target Is Time-Barred By The Applicable Statute Of Limitations.

Even if Count V had stated an actionable claim against Target for breach of fiduciary duty, that claim is time-barred by the applicable statute of limitations.

Under Delaware law, the statute of limitations is a procedural issue for choice of law purposes, not a substantive issue. *See, e.g., David B. Lilly Co. v. Fisher*, 799 F.Supp.

1562, 1568 (D. Del. 1992); *Norman v. Elkin*, 2007 U.S. Dist. LEXIS 72725, at *9 (D. Del. 2007).  On procedural issues, the court's own law applies.  Therefore, this Court should apply the statute of limitations applicable under Delaware law to Mervyn's claims.[9]  *Id.* at *10 (applying Delaware statute of limitations to claims that officers, directors, and/or shareholders breached their fiduciary duties).

The general rule in Delaware is that "the cause of action accrues, at the time of the alleged wrongful act, even if the plaintiff is ignorant of the cause of action." *Whittington v. Dragon Group, L.L.C.*, 2008 WL 4419075, at *5 (Del. Ch. Sept. 30, 2008) (*quoting In re Dean Witter P'ship Litig.*, 1998 Del. Ch. LEXIS 133, at *15 (Del. Ch. July 17, 1998)).  According to the Amended Complaint, Target allegedly breached its fiduciary duty by selling Mervyn's on September 2, 2004. (Am. Compl. ¶¶172, 174, 175, D.I. 7.)  Mervyn's claim for breach of fiduciary duty therefore accrued as of September 2, 2004.

That being the case, Count V is time-barred as against Target.  Under 10 Del. C. §8106, the statute of

---

[9]     Target is aware that the court in *Dent,* 354 B.R. at 359, applied the Texas statute of limitations to a claim for breach of fiduciary duty involving a Texas corporation.  In doing so, the *Dent* court failed to recognize that the statute of limitations is a procedural issue, not a substantive issue, for choice of law purposes.

limitations for bringing a breach of fiduciary duty claim is three years from when the claim accrued, and Mervyn's Count V did not meet that deadline.

The result does not change even if the statute of limitations is treated as a substantive issue for choice of law purposes. This is because Delaware has made the substantive decision that its courts should not provide a forum for the adjudication of claims that might be timely in another jurisdiction, but are time-barred under Delaware law. Specifically, Delaware has a "borrowing" statute that directs as follows:

> [w]here a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

10 Del. C. §8121.

Section 8121 means that the *longest* statute of limitations applicable to Count V is three years from September 2, 2004. Mervyn's chose to bring this action in this Court, as opposed to in another forum, and so is bound by this Court's limitations rules. Because Count V was not timely filed as against Target, Target should be dismissed as a defendant on that claim.

## VI.  CONCLUSION

Target's sale of its ownership interest in Mervyn's for cash was not a fraudulent transfer or in breach of any fiduciary duty.  And Target cannot be held liable for transfers or pledges of Mervyn's real estate assets orchestrated by Mervyn's new owners based upon untimely and conclusory allegations that Target knew of, participated in, or acquiesced in the new owners' plans.

For these reasons, Target's motion should be granted and the Amended Complaint should be dismissed with prejudice.

Date:  April 3, 2009
Wilmington, Delaware        Respectfully submitted,

    **MONTGOMERY, MCCRACKEN,**
    **WALKER & RHOADS, LLP**


BY: */s/ Laurie A. Krepto*
    Laurie A. Krepto (DE Bar #4109)
    1105 North Market Street
    Suite 1500
    Wilmington, DE  19801
    Phone:  (302) 504-7800
    Fax:  (302) 504-7820
    lkrepto@mmwr.com

        – and –

**FAEGRE & BENSON LLP**
Wendy J. Wildung (MN Bar #117055)
Dennis M. Ryan (MN Bar #161275)
Michael F. Doty MN Bar #0388303)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Phone:  (612) 766-7000
Fax:  (612) 766-1600
wwildung@faegre.com
dryan@faegre.com
mdoty@faegre.com

Co-Counsel for Defendant Target
Corporation

fb.us.3799168.02