# APPENDIX – PART 3

THE SECURITIES TO BE ISSUED PURSUANT TO THIS AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY STATE LAW. THE SECURITIES ARE TO BE ACQUIRED FOR INVESTMENT AND MAY NOT BE OFFERED, SOLD, TRANSFERRED, PLEDGED, OR HYPOTHECATED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT FOR THE SECURITIES UNDER THE SECURITIES ACT OF 1933 AND ANY APPLICABLE STATE LAW OR AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT REGISTRATION IS NOT REQUIRED UNDER SAID ACT OR LAWS.

THE COMPANY WILL NOTE IN ITS RECORDS THAT NO TRANSFER MAY BE MADE EXCEPT IN COMPLIANCE WITH THESE RULES. IN ADDITION, TRANSFERORS OF UNITS MAY INCUR ADVERSE TAX CONSEQUENCES.

## OPERATING AGREEMENT
## OF
## MERVYN'S LLC

THIS OPERATING AGREEMENT (this "Agreement") of Mervyn's LLC, is entered into as of the 27th day of August, 2004, by Target Corporation, a Minnesota corporation, as the sole member of the limited liability company (the "Member").

### RECITALS

A. The Member and Mervyn's Holdings, LLC, a Delaware limited liability company ("Mervyn's Holdings"), have entered into an equity purchase agreement dated as of July 29, 2004 (the "Equity Purchase Agreement").

B. As a condition to Mervyn's Holdings' obligation to purchase all of the outstanding equity securities of Mervyn's, a California corporation ("Mervyn's"), Target agreed to convert Mervyn's into the Company (as defined below) pursuant to Section 1151 et seq. of the California Corporations Code (the "Conversion").

C. NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the Member is executing this Agreement for the purpose of forming a limited liability company pursuant to and in accordance with the Beverly-Killea Limited Liability Company Act, codified in the California Corporations Code, Section 17000 et seq., as the same may be amended from time to time (the "Act"), and hereby certifies and agrees as follows:

### AGREEMENT

1. **Name; Formation.** The name of the limited liability company formed hereby is Mervyn's LLC (the "Company"). The Company was formed, on August 27, 2004, as a California limited liability company by the filing the articles of organization-conversion (the "Articles") of the Company with the Secretary of State of the State of California (the "Secretary of State") setting forth the information required by Section 17051 of the Act. Each of the Managers (as hereinafter defined) and each of the officers is hereby designated as an authorized

person, within the meaning of the Act to execute, deliver and file the articles of organization of the Company, and any action taken prior to the execution of this Agreement in connection therewith by any such person is hereby ratified and confirmed.

2. <u>Purpose</u>. The purpose of the Company is to engage in any lawful act or activity for which a limited liability company may be organized under the Act.

3. <u>Principal Place of Business</u>. The location of the principal place of business and the registered office of the Company is 22301 Foothill Boulevard, Hayward, California 94541 or such other address as the Managers may establish from time to time. The Managers or Member may change the registered office of the Company at any time.

4. <u>Agent for Service of Process</u>. The initial registered agent for service of process from the Company shall be Clay Creasey at 22301 Foothill Boulevard, Hayward, California 94541. The Member may change the agent for service of process at any time.

5. <u>Powers of the Company</u>.

(i) The Company shall have the power and authority to take any and all actions necessary, appropriate, advisable, convenient or incidental to, or for the furtherance of, the purpose set forth in Section 2, including, but not limited to, the power:

(a) to conduct its business, carry on its operations and have and exercise the powers granted to a limited liability company by the Act in any state, territory, district or possession of the United States, or in any foreign country that may be necessary, convenient or incidental to the accomplishment of the purpose of the Company;

(b) to acquire, by purchase, lease, contribution of property or otherwise, and to own, hold, operate, maintain, finance, improve, lease, sell, convey, mortgage, transfer, demolish or dispose of any real or personal property that may be necessary, convenient or incidental to the accomplishment of the purpose of the Company;

(c) to enter into, perform and carry out contracts of any kind, including, without limitation, contracts with the Member or any person or other entity that directly or indirectly controls, is controlled by, or is under common control with the Member (any such person or entity, an "<u>Affiliate</u>"), or any agent of the Company necessary to, in connection with, convenient to, or incidental to, the accomplishment of the purpose of the Company. For purposes of the definition of Affiliate, the term "control" means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an entity, whether through ownership of voting securities or otherwise;

(d) to purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, lend, pledge, or otherwise dispose of, and otherwise use and deal in and with, shares or other interests in, or obligations of, domestic or foreign corporations, associations, general or limited partnerships (including, without limitation, the power to be admitted as a partner thereof and to exercise the rights and perform the duties created thereby), trusts, limited liability companies (including, without limitation, the power to be admitted as a member or appointed as a manager thereof and to exercise the rights and

Tar.A098

perform the duties created thereby), and other entities or individuals, or direct or indirect obligations of the United States or any foreign country or of any government, state, territory, governmental district or municipality or of any instrumentality of any of them;

(e) to lend money for any proper purpose, to invest and reinvest its funds, and to take and hold real and personal property for the payment of funds so loaned or invested;

(f) to sue and be sued, complain and defend and participate in administrative or other proceedings, in its name;

(g) to appoint employees and agents of the Company, and define their duties and fix their compensation;

(h) to indemnify any person or entity and to obtain any and all types of insurance;

(i) to cease its activities and cancel its insurance;

(j) to negotiate, enter into, renegotiate, extend, renew, terminate, modify, amend, waive, execute, acknowledge or take any other action with respect to any lease, contract or security agreement in respect of any assets of the Company;

(k) to borrow money and issue evidences of indebtedness, and to secure the same by a mortgage, pledge or other lien on any or all of the assets of the Company;

(l) to pay, collect, compromise, litigate, arbitrate or otherwise adjust or settle any and all other claims or demands of, or against, the Company or to hold such proceeds against the payment of contingent liabilities;

(m) to make, execute, acknowledge and file any and all documents or instruments necessary, convenient or incidental to the accomplishment of the purpose of the Company; and

(n) to merge with, or consolidate into, another limited liability company or other business entity (as such term is defined in Section 17001(ac) of the Act) upon the approval of the Member, in its sole discretion.

6. Member. The name and the business, residence or mailing address of the Member of the Company are as follows:

Name: Target Corporation         Address: 1000 Nicollet Mall
                                          TPS-3255
                                          Minneapolis, MN 55403

7. Powers of Member. The Member shall have the power to exercise any and all rights and powers granted to the Member pursuant to the express terms of this Agreement.

Tar.A099

Except as otherwise specifically provided by this Agreement or required by the Act, the Managers (as hereinafter defined) shall have the power to act for and on behalf of, and to bind, the Company. Each of the Managers is hereby designated as an authorized person, within the meaning of the Act, to execute, deliver and file any amendments and/or restatements to the articles of organization of the Company and any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

8. Management.

    8.1 Management of the Company.

        (i) Each of Timothy R. Baer, Stephen C. Kowalke and Diane Neal shall be a manager of the Company (each, a "Manager," collectively, the "Managers") and, in such capacity, shall manage the Company in accordance with this Agreement. Each of the Managers is an agent of the Company's business, and the actions of any Manager taken in such capacity and in accordance with this Agreement shall bind the Company.

        (ii) The Managers shall have full, exclusive and complete discretion to manage and control the business and affairs of the Company, to make all decisions affecting the business and affairs of the Company and to take all such actions as it deems necessary or appropriate to accomplish the purpose of the Company as set forth herein. The Managers shall be the sole persons with the power to bind the Company, except and to the extent that such power is expressly delegated to any other person or entity by a Manager, and such delegation shall not cause a Manager to cease to be a Manager. Each of the Managers shall be "manager" (within the meaning of the Act) of the Company.

        (iii) Any Manager may be removed with or without cause by the Member. Each Manager shall serve until removed and such Manager's successor is designated by the Member or until a Manager's earlier death, retirement or incapacity. Upon the death, retirement or incapacity of a Manager, a successor shall be designated by the Member.

        (iv) The Company shall have the following officers: President, Secretary, Treasurer and such other officers as the Managers may appoint, from time to time, and all such officers shall be appointed and removed at the will of the Managers and shall perform such functions as are herein provided or as specified by the Managers. The initial officers shall be as set forth on Exhibit A hereto.

        (a) The President shall be the chief executive officer of the Company and shall, subject to the control of the Managers, have general supervision, direction and control of the business and the officers of the Company. The President shall have the general powers and duties of management usually vested in the office of President of a California corporation and shall have such other powers and duties as may be prescribed by the Manager.

        (b) The Secretary shall keep or cause to be kept at the principal place of business of the Company, or such other place as the Managers may direct, a book of minutes of all formal actions of the Managers and Member. The Secretary shall keep or cause to

Tar.A100

be kept at the principal place of business of the Company, a register or a duplicate register showing the name and address of the Member, the number and date of certificates issued in respect of the Member's interest in the Company, if any, and the number and date of cancellation of every certificate surrendered for cancellation. The Secretary shall have such other powers and perform such other duties as may be prescribed by the Managers or the President.

(c) The Assistant Secretary shall assume and perform the duties of the Secretary in the absence or disability of the Secretary, and each Assistant Secretary shall have such other powers and perform such other duties as may be prescribed by the Managers or the President.

(d) The Treasurer shall be the chief financial officer of the Company and shall keep and maintain or cause to be kept and maintained adequate and correct books and records of accounts of the properties and business transactions of the Company. The books of account shall at all times be open to inspection by the Member. The Treasurer shall deposit all monies and other valuables in the name of, and to the credit of, the Company with such depositaries as may be designated by the Managers. The Treasurer shall disburse the funds of the Company as may be ordered by the Managers, shall render to the President and the Managers whenever the Managers request it, an account of all of his transactions as chief financial officer and of the financial condition of the Company and shall have other powers and perform such other duties as may be prescribed by the Managers or the President.

(e) The Assistant Treasurer shall assume and perform the duties of the Treasurer in the absence or disability of the Treasurer, and each Assistant Treasurer shall have such other powers and perform such other duties as may be prescribed by the Managers or the President.

(v) A majority of the Managers may appoint, employ, or otherwise contract with such other persons or entities for the transaction of the business of the Company or the performance of services for, or on behalf of, the Company as it shall determine in his sole discretion. A Manager may delegate to any officer of the Company, or to any other Manager, such authority to act on behalf of the Company as such Manager may from time to time deem appropriate in his sole discretion. The salaries or other compensation, if any, of the officers and agents of the Company shall be fixed from time to time by the Managers. Except as otherwise provided by the Managers, when the taking of such action has been authorized by the Managers, any Manager or any officer of the Company, or any other person specifically authorized by the Managers, may execute any contract or other agreement or document on behalf of the Company.

8.2 Powers of the Manager. The Managers shall have the right, power and authority, in the management of the business and affairs of the Company, to do or cause to be done any and all acts deemed by the Managers to be necessary or appropriate to effectuate the business, purposes and objectives of the Company, at the expense of the Company. Without limiting the generality of the foregoing, the Managers shall have the power and authority to:

(i) establish a record date with respect to all actions to be taken hereunder that require a record date be established, including with respect to allocations and distributions;

**Tar.A101**

(ii) bring and defend on behalf of the Company actions and proceedings at law or in equity before any court or governmental, administrative or other regulatory agency, body or commission or otherwise; and

(iii) execute all documents or instruments, perform all duties and powers and do all things for, and on behalf of, the Company in all matters necessary, desirable, convenient or incidental to the purpose of the Company, including, without limitation, all documents, agreements and instruments related to the making of investments of Company funds.

The expression of any power or authority of the Managers in this Agreement shall not in any way limit or exclude any other power or authority of the Managers that is not specifically or expressly set forth in this Agreement.

8.3 <u>No Management by Other Persons or Entities</u>. Except as provided in Section 8.1(iv) or as otherwise expressly delegated by the Managers, no person or entity other than the Managers shall be an agent of the Company or have any right, power or authority to transact any business in the name of the Company or to act for, or on behalf of, or to bind, the Company.

8.4 <u>Reliance by Third Parties</u>. Any person or entity dealing with the Company, the Managers or the Member may rely upon a certificate signed by any one of the Managers as to:

(i) the identity of the Manager or the Member;

(ii) the existence or non-existence of any fact or facts that constitute a condition precedent to acts by the Manager or the Member or are in any other manner germane to the affairs of the Company;

(iii) the persons who, or entities that, are authorized to execute and deliver any instrument or document of, or on behalf of, the Company; or

(iv) any act or failure to act by the Company or as to any other matter whatsoever, involving the Company or the Member.

8.5 <u>Records and Information</u>. Unless otherwise required by a mandatory provision of law including, but not limited to Section 17058 of the Act, neither the Company, the Member nor the Managers shall have any obligation to maintain any books or records of the Company; provided that the Managers may keep books and records of the Company and may, from time to time, designate recordkeeping requirements for the Company.

9. <u>Term; Dissolution</u>. The term of the Company shall be perpetual unless the Company is dissolved and terminated in accordance with this Section 9. The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (i) at the time specified in the articles of organization, if any, (ii) upon the happening of an event specified in the articles of organization, if any, (iii) the written consent of the Member, or, (iv) the entry of a decree of judicial dissolution under Section 17351 of the Act. If at any time there is no Member of the Company, the Company shall not dissolve but the legal representative or successor of the

Tar.A102

Member shall agree in writing to continue the Company and to the admission of the legal representative of the Member or its nominee or its designee to the Company as a Member, effective as of the occurrence of the event that terminated the continued membership of the Member. Upon the dissolution of the Company, the Managers shall wind up the Company's affairs as provided in the Act. Upon completion of the winding up of the Company, the Managers shall distribute the property of the Company as follows:

   (i)  First, to creditors, including the Member if it is a creditor, to the extent permitted by law, in satisfaction of the Company's liabilities (whether by payment or the making of reasonable provision for payment thereof); and

   (ii)  Second, to the Member in cash or property, or partly in cash and partly in property, as determined by the Managers.

Upon the completion of the winding up and liquidation of the Company, the Managers shall file a certificate of cancellation with the Secretary of State canceling the Company's articles of organization at which time the Company shall terminate.

  10.  Capital Contribution. On the date hereof and as a consequence of the Conversion, each outstanding share of common stock of Mervyn's has been, by virtue of the Conversion and without any action on the part of the holder of such common stock, converted into one common unit of membership interest in the Company. Pursuant to the foregoing sentence, the Member holds one hundred (100) common units of membership interest, which represents one hundred percent (100%) of the membership interests in the Company.

  11.  Additional Contributions. The Member may, but is not required to, make any additional capital contributions to the Company.

  12.  Allocation of Profits and Losses; Tax Status. The Company's profits and losses shall be allocated to the Member. No allocation of losses or any item thereof to the Member shall create any implication that the Member has liability to the Company. At all times that the Company has only one member (who owns 100% of the membership interests in the Company), it is the intention of the Member that the Company be disregarded for federal, state, local and foreign income tax purposes and that the Company be treated as a division of the Member.

  13.  Distributions. Distributions shall be made to the Member at the times and in the amounts determined by the Managers, provided, however, that no distribution shall be made in violation of the Act.

  14.  Assignments. The Member may transfer or assign (including as a collateral assignment or pledge) in whole or in part its membership interest in the Company. In connection with a voluntary transfer or assignment by the Member of its entire membership interest in the Company, the Member will automatically withdraw and the assignee will automatically and simultaneously be admitted as the successor Member without any further action at the time such voluntary transfer or assignment becomes effective under applicable law and the Company shall be continued without dissolution. In connection with a partial assignment or transfer by the Member of its membership interest in the Company, this Agreement shall be amended to reflect the fact that the Company will have (a) more than one member or (b) one member and one or

Tar.A103

more economic interest holding assignees.

15. Resignation. The Member may resign from the Company at such time as it shall determine.

16. Admission of Additional Members. One or more additional members of the Company may be admitted to the Company with the consent of the Member. Prior to the admission of any such additional member of the Company, this Agreement shall be amended by the Member and the person or persons to be admitted as additional members to make such changes as they shall determine to reflect the fact that the Company shall have more than one member.

17. Limited Liability of Member. The Member shall not have any liability for the debts, obligations, losses, liabilities, or expenses of the Company except to the extent expressly provided in the Act.

18. Indemnification.

18.1 Exculpation.

(i) For purposes of this Agreement, the term "Covered Persons" means the Managers, the Member, any Affiliate of any of the Managers or Member and any officers, directors, shareholders, partners or employees of the Managers or Member and their respective Affiliates, and any officer, employee or expressly authorized agent of the Company or its Affiliates.

(ii) No Covered Person shall be liable to the Company or any other Covered Person for any loss, damage or claim incurred by reason of any act or omission performed (whether or not constituting negligence or gross negligence) or omitted by such Covered Person in good faith on behalf of the Company, except that a Covered Person (other than the Member, irrespective of the capacity in which it acts) shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's willful misconduct. The Member, whether acting as Member, or in any other capacity, shall not be liable to the Company or to any other Covered Person for any loss, damage or claim incurred by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted by the Member in good faith.

(iii) A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any person or entity as to matters the Covered Person reasonably believes are within the professional or expert competence of such person or entity and who or which has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid. The foregoing provision shall in no way be deemed to reduce the limitation on liability of the Member provided in clause (ii) of this Section 18.1.

Tar.A104

18.2 <u>Duties and Liabilities of Covered Persons</u>.

(i) To the extent that, at law or in equity, a Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Company or to any other Covered Person, a Covered Person acting under this Agreement shall not be liable to the Company or to any other Covered Person for its good faith reliance on the provisions of this Agreement. The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Member to replace such other duties and liabilities of such Covered Person.

(ii) Unless otherwise expressly provided herein, (a) whenever a conflict of interest exists or arises between Covered Persons, or (b) whenever this Agreement or any other agreement contemplated herein or therein provides that a Covered Person shall act in a manner that is, or provides terms that are, fair and reasonable to the Company or the Member, the Covered Person shall resolve such conflict of interest, taking such action or providing such terms, considering in each case the relative interest of each party (including its own interest) to such conflict, agreement, transaction or situation and the benefits and burdens relating to such interests, any customary or accepted industry practices, and any applicable generally accepted accounting practices or principles. In the absence of bad faith by the Covered Person, the resolution, action or term so made, taken or provided by the Covered Person shall not constitute a breach of this Agreement or any other agreement contemplated herein or of any duty or obligation of the Covered Person at law or in equity or otherwise.

(iii) Whenever in this Agreement a Covered Person is permitted or required to make a decision (a) in its "discretion" or under a grant of similar authority or latitude, the Covered Person shall be entitled to consider only such interests and factors as it desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of, or factors affecting, the Company or any other Person, or (b) in its "good faith" or under another express standard, the Covered Person shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or other applicable law.

(iv) All provisions of this Section 18 shall apply to any former member or Manager of the Company for all actions or omissions taken while such person was the Member or the Manager, as applicable, of the Company to the same extent as if such person were still the Member or the Manager, as applicable, of the Company.

18.3 <u>Indemnification</u>. To the fullest extent permitted by applicable law, any Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted by such Covered Person in good faith on behalf of the Company, except that no Covered Person (other than the Member, irrespective of the capacity in which it acts) shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of willful misconduct with respect to such acts or omissions; <u>provided</u>, <u>however</u>, that any indemnity under this Section 18 shall be provided out of, and to the extent of, Company assets only, and no Covered Person shall have any personal liability on account thereof. To the fullest extent permitted by applicable law,

Tar.A105

the Member (irrespective of the capacity in which it acts) shall be entitled to indemnification from the Company for any loss, damage or claim incurred by the Member by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted by the Member in good faith on behalf of the Company.

18.4 Expenses. To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person in defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in Section 18 hereof.

18.5 Insurance. The Company may purchase and maintain insurance, to the extent and in such amounts as the Managers shall, in their sole discretion, deem reasonable, on behalf of Covered Persons and such other persons or entities as the Managers shall determine, against any liability that may be asserted against, or expenses that may be incurred by, any such person or entity in connection with the activities of the Company or such indemnities, regardless of whether the Company would have the power to indemnify such person or entity against such liability under the provisions of this Agreement. The Managers and the Company may enter into indemnity contracts with Covered Person and adopt written procedures pursuant to which arrangements are made for the advancement of expenses and the funding of obligations under this Section 18 and containing such other procedures regarding indemnification as are appropriate.

19. Certificated Securities. All membership interests in the Company are and shall be securities governed by Division 8 of the California Uniform Commercial Code, as amended from time to time (the "California Uniform Commercial Code"). All membership interests shall at all times be certificated under Division 8 of the California Uniform Commercial Code, and all certificates representing the membership interests shall include a reference to being subject to Division 8 of the California Uniform Commercial Code, and, unless in bearer form, be registered on the books of the Company.

20. Outside Business. The Managers or any Affiliate thereof may engage in or possess an interest in any business venture of any nature or description, independently or with others, similar or dissimilar to the business of the Company, and the Company and the Member shall have no rights by virtue of this Agreement in and to such independent ventures or the income or profits derived therefrom, and the pursuit of any such venture, even if competitive with the business of the Company, shall not be deemed wrongful or improper. The Managers, Member or any Affiliate thereof shall not be obligated to present any particular investment opportunity to the Company even if such opportunity is of a character that, if presented to the Company, could be taken by the Company, and the Managers, Member or Affiliate thereof shall have the right to take for its own account (individually or as a partner, shareholder, fiduciary or otherwise) or to recommend to others any such particular investment opportunity.

21. Amendment. This Agreement may be amended or modified only by a written instrument signed by the Member.

Tar.A106

22. <u>Governing Law</u>. This Agreement shall be governed by, and construed under, the laws of the State of California, without regard to the rules of conflict of laws thereof or of any other jurisdiction that would call for the application of the substantive laws of a jurisdiction other than the State of California.

23. <u>Entire Agreement</u>. This Agreement and the documents and agreements contemplated in this Agreement constitute the entire agreement with the Member with regard to the subject matter hereof and thereof.

24. <u>Benefits</u>. Except as expressly provided herein, this Agreement is entered into for the sole and exclusive benefit of the parties hereto and will not be interpreted in such a manner as to give rise to or create any rights or benefits of or for any person or entity not a party hereto.

25. <u>Severability</u>. If any provision of this Agreement, or the application of such provision to any person or circumstances, is held invalid or unenforceable, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall continue in full force without being impaired or invalidated.

[Remainder of Page Intentionally Left Blank]

Tar.A107

IN WITNESS WHEREOF, the undersigned has duly executed this Operating Agreement as of the day and year first aforesaid.

**TARGET CORPORATION**
By: _____
Name: _Timothy R. Baer_
Title: _Senior Vice President_

Tar.A108

# EXHIBIT A
## OFFICERS

| Name: | Title: |
|---|---|
| Diane Neal | President and Chief Operating Officer |
| Clay Creasey | Senior Vice President, Finance and Chief Financial Officer |
| George Sherman | Senior Vice President, Stores |
| Janna Adair-Potts | Vice President, Human Resources |
| Chris Daniel | Vice President, Product Design & Development |
| Judy Howard | Vice President, MM - Kids |
| Tim Keegan | Vice President, Distribution Services |
| Lynn Schirmer | Vice President, Merchandise Planning |
| Peg A. Schoenfelder | Vice President, General Counsel and Assistant Secretary |
| Janet Taake | Vice President, GMM, Women's Sportswear |
| Pete Daleiden | Vice President, GMM, Men's |
| Lee Walker deSarvide | Vice President, Marketing |
| Aline Tewes | Vice President, MM, Jewelry, Accessories and Shoes |
| Timothy R. Baer | Vice President and Secretary |
| John D. Griffith | Vice President, Property Development |
| Scott Nelson | Vice President, Real Estate |
| Rich Varda | Vice President, Store Planning, Architecture and Engineering |
| Marc Steadman | Vice President, Construction |
| Michael J. Wahlig | Vice President and Assistant Secretary |
| Terri Simard | Vice President and Assistant Secretary |
| Stephen C. Kowalke | Vice President and Treasurer |
| Michael Bell | Vice President, Building Services |
| Susan Fuller | Regional Vice President, Stores – Region I |
| Margarette Hall | Regional Vice President, Stores – Region II |
| Joe Nuñez | Assistant Secretary |
| Jack N. Reif | Assistant Treasurer |
| Sara Ross | Assistant Treasurer |

Tar.A109

## CLOSING/FUNDS FLOW STATEMENT

**SELLER:** Target Corporation

**BUYER:** Mervyn's Holdings, LLC
c/o Sun Capital Partners Group, Inc.
5200 Town Center Circle, Suite 470
Boca Raton, Florida 33486

**SUBJECT:** All equity securities of Mervyn's LLC, as more fully set forth in the Equity Purchase Agreement between Seller and Buyer dated as of July 29, 2004 (the "Equity Purchase Agreement"). Each term used in this Closing/Funds Flow Statement, if not otherwise defined herein, shall have the meaning provided therefor in the Equity Purchase Agreement.

**CLOSING DATE:** September 2, 2004 (Effective as of 11:59 p.m. Minneapolis, Minnesota, time on August 28, 2004)

**PURCHASE PRICE:**

|   |   |
|---|---|
|   | $1,175,000,000.00 |
| Adjustment for 4 days' interest (based on 3-month LIBOR on August 27): | 230,493.15 |
| **TOTAL AMOUNT DUE:** | **$1,175,230,493.15** |

By this Closing/Funds Flow Statement, Seller hereby directs Buyer to transfer by wire:

$1,105,654,493.15 of the Total Amount Due to Wells Fargo Bank, for the account of Target Corporation, in accordance with the Wire Transfer Instructions set forth on Exhibit A hereto.

By this Closing/Funds Flow Statement, Seller hereby directs Buyer to transfer by wire:

$69,576,000.00 of the Total Amount Due to the account described on Exhibit B hereto pursuant to the Notice of Assignment and Acceptance Relinquished Property Agreement, in accordance with the wire transfer instructions set forth on Exhibit B hereto.

This Closing/Funds Flow Statement is subject to all of the terms and conditions of the Equity Purchase Agreement, including without limitation the provisions of Section 2(c) thereof.

*[Signature Page Follows]*

Closing Statement.doc

**Tar.A110**

Signature Page
to
Closing/Funds Flow Statement

TARGET CORPORATION

MERVYN'S HOLDINGS, LLC

By *(signature)*
Name: Timothy R. Baer
Title: Senior Vice President

By _____
Name: _____
Title: _____

Tar.A111

Signature Page
to
Closing/Funds Flow Statement

TARGET CORPORATION

MERVYN'S HOLDINGS, LLC

By_____
Name:_____
Title:_____

By_____/s/_____
Name: Michael Kalb
Title: Vice President

Tar.A112

Exhibit A

**INCOMING WIRE TRANSFER INSTRUCTIONS FOR TARGET CORPORATION**

| | |
|---|---|
| BANK NAME: | WELLS FARGO BANK |
| ABA Number: | 121 000 248 |
| Account Number: | 43254 |
| Account Name: | Target Corporation Capital Account |
| Notify: | 612-761-6454 |

Contact Information:

Karla Eggen-Paurus, CTP
Supervisor, Banking Operations
Target Corporation
karla.eggen-paurus@target.com

1000 Nicollet Mall, TPN-1320
Minneapolis, MN 55403
phone: (612) 761-5543
fax: (612) 761-5508

Exhibit B

JPMorgan Chase Bank
New York, NY

ABA: 021000021

Acct. Name: NY Escrow Incoming Wire Acct.

Acct. No.: 507953312

FFC: GP#10209340, Target, Attn: J.Morales


Contact Information:

Joe Morales
JPMorgan Chase Bank
4 New York Plaza
21st Floor
New York, NY 10004
Phone: 212-623-5078
email: joe.morales@jpmchase.com

Tar.A114

| Date | Description | | Amount |
|---|---|---|---|
| 8/24/2004 | 195 / INCOMING MONEY TRANSFER<br>Cust Ref: COMPLETE<br>Wires Ref: 1748<br>Wells Ref: 040824026639<br>091000022 U.S. BANK,N.A. ST PAUL, MN 040824011197 ORG=FIRST AMERICAN TITLE INS CO NATL AC 5700 SMETANA DR STE 401 MINNETONKA, MN 553439686 RFB=NCS-83000 (HB) OBI=NOTIFY 612-761-6454 /FTR/ BNF=43254 TARGET CORPORATION CAPITAL ACCOUNT<br>Completed Timestamp 040824115550 (Time Released) | Credit Amount:<br>Bank Ref: | 39,730,883.27 |
| 9/2/2004 | 195 / INCOMING MONEY TRANSFER<br>Cust Ref: COMPLETE<br>Wires Ref: 0891<br>Wells Ref: 040902022799<br>031000053 PNCBANK, NATIONAL ASSOC PHILADELPHIA, PA 040902010604 OGB=PNC BANK PHILADELPHIA ORG=FIRST AMERICAN TITLE INSURANCE SETTLEMENT ACCOUNT 2 PENN CTR PLZ STE 1910 PHILADELPHIA PA 19102 OBI=ATTN KARLA EGGEN-PAURUS 612 761 5543 REF MERVYN`S /FTR/ BNF=43254 TARGET CORP CAPITAL ACCT<br>Completed Timestamp 040902112023 (Time Released) | Credit Amount:<br>Bank Ref: | 1,105,654,493.15 |
| 9/2/2004 | 195 / INCOMING MONEY TRANSFER<br>Cust Ref: COMPLETE<br>Wires Ref: 4556<br>Wells Ref: 040902022073<br>021001033 DEUTSCHE BANK TRUST CO AMERICAS NEW YORK NY UNITED STATES MONOGRAM BANK OF GEORGIA ATT: CASH ACCOUNTING 4TH FLOOR 0902517442008034 OGB=GENERAL ELECTRIC COMPANY 335 MADISON AVENUE FLOOR 12 NEW YORK,NY,US ORG=MONOGRAM BANK OF GEORGIA ATT: CASH ACCOUNTING 4TH FLOOR 4125 WINDWARD PLAZA PKWY BL | Credit Amount:<br>Bank Ref: | 483,045,442.00 |

Tar.A115