## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| MERVYN'S HOLDINGS, LLC, et al. | : Case No. 08-11586 (KG) |
| | : |
| Debtors. | : Jointly Administered |
| | : |
| MERVYN'S LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : Adv. Proc. No. 08-51402 KG |
| LUBERT-ADLER GROUP IV, LLC, et al., | : |
| | : |
| Defendants. | : |

---

## MEMORANDUM OF LAW IN OPPOSITION TO TARGET CORPORATION'S
## MOTION TO DISMISS

BAYARD, P.A.
Neil B. Glassman (No. 2087)
Ashley B. Stitzer (No. 3891)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
nglassman@bayard.com
astitzer@bayard.com

COOLEY GODWARD KRONISH LLP
Ronald R. Sussman
Jay R. Indyke
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7798
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
rsussman@cooley.com

Jennifer L. Stewart
The Prudential Tower
800 Boylston Street • 46th Floor
Boston, MA 02199
Telephone: (617) 937-2300
Facsimile: (617) 937-2400
jstewart@cooley.com

*Attorneys for Plaintiff*

**Table of Contents**

I. INTRODUCTION .................................................................................. 1

II. NATURE AND STAGE OF PROCEEDINGS ......................................... 2

III. SUMMARY OF ARGUMENT ............................................................. 3

IV. STATEMENT OF FACTS ................................................................... 4

V. ARGUMENT ...................................................................................... 7

    A. Mervyn's Has Satisfied the Pleading Standards to
       Overcome a Motion to Dismiss ..................................................... 7

    B. Mervyn's Has Satisfied The Pleading Standard of Rule 9(b) ........ 8

       1. Mervyn's Has Sufficiently Pleaded Facts Relating
          to The Circumstances of The Fraudulent Transfers .......... 8

       2. Plaintiff Has Sufficiently Pleaded Facts Relating to
          Target's Intent to Hinder, Delay or Defraud
          Mervyn's Creditors ........................................................... 9

    C. The Majority of Target's Appendix May Not Be
       Considered on a Motion to Dismiss............................................ 11

    D. Contrary to Target's Assertion, In The LBO Context Target
       Can be Held Liable as a Transferee for the Fraudulent
       Conveyance at Issue.................................................................. 13

       1. The 2004 Transaction Should Be Collapsed.................... 14

    E. Target's Section 546(e) Settlement Payment Defense Fails
       Because Target May Not Isolate Its Role In The 2004
       Transaction to a Securities Transaction ..................................... 19

    F. Target's Section 546(e) Settlement Payment Defense Fails
       Because The Membership Interest In Mervyn's LLC Was
       Not Publicly Traded.................................................................. 21

    G. Plaintiff Has Properly Alleged That Target Breached Its
       Fiduciary Duty to Both Mervyn's And Mervyn's Creditors ....... 25

       1. California Law Applies to Plaintiff's Breach of
          Fiduciary Duty Claim Against Target.............................. 25

       2. California Courts Would Recognize That Target
          Owes a Fiduciary Duty to Mervyn's................................ 26

       3. California Courts Would Recognize That Target
          Owes a Fiduciary Duty to Mervyn's Creditors
          When Mervyn's Is Insolvent........................................... 29

**Table of Contents**
(continued)

Page

4.     The Exculpation Clause in Mervyn's Operating Agreement Does Not Save Target ................................... 31

H.     Mervyn's Breach of Fiduciary Duty Claim Was Timely Filed ........................................................................... 33

1.     California Law Applies to The Statute of Limitations for The Breach of Fiduciary Duty Claim ........................................................................... 33

2.     The Delaware "Borrowing" Statute Does Not Apply ...... 35

VI.     CONCLUSION ..................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford,*
554 F.Supp.2d 538 (D. Del. 2008) ..........................................................................32

*Alidina v. Internet.com Corp.,*
2002 WL 31584292 (Del. Ch. Nov. 6, 2002) ........................................................33

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009) ..............................................................................................7

*Bay Plastics, Inc. v. BT Commercial Corp.*
*(In re Bay Plastics, Inc.),* 187 B.R. 315 (Bankr. C.D. Cal. 1995) ..................14, 15

*Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,*
296 F.3d 164 (3d Cir. 2002) ......................................................................................8

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................................................7

*Benak v. Alliance Capital Mgmt. L.P.,*
435 F.3d 396 (3d Cir. 2006) ....................................................................................11

*B. Lewis Productions, Inc. v. Bean,*
2005 WL 273298, at *3 (D. Del. Jan. 28, 2005) .....................................................37

*Brandt v. B.A. Capital Co. LP*
*(In re Plassein Int'l Corp.),* 352 B.R. 36 (Bankr. D. Del. 2006) ..............................8

*Brandt v. B.A. Capital Company. LP*
*(In re Plassein Int'l Corp.),* 366 B.R. 318 (Bankr. D. Del. 2007) ....................20, 24

*Brandt v. Hicks, Muse & Co., Inc.*
*(In re Healthco Int'l, Inc.),* 195 B.R. 971 (Bankr. D. Mass. 1996) ........................22

*Buckley v. Merrill Lynch & Co., Inc.*
*(In re DVI, Inc.),* 2008 WL 4239120 (Bankr. D. Del. Sept. 16, 2008) ...............9, 10

*Burtch v. Dent & Co., Inc.*
*(In re Circle Y of Yoakum, Texas),* 354 B.R. 349 (Bankr. D. Del. 2006) ..........10, 11, 26, 34

*Carramerica Realty Corp. v. NVIDIA Corp.,*
2006 WL 2868979 (N.D. Cal. Sept. 29, 2006) .................................................25, 30

*China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc.,*
788 F.Supp. 815 (D. Del. 1992)................................................................15

*Christy v. Alexander & Alexander of New York Inc.*
(*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson &
Casey*), 130 F.3d 52 (2d Cir. 1997) ..........................................................18

*Coggin v. Coggin*
(*In re Coggin*), 30 F.3d 1443 (11th Cir. 1994) ........................................18

*CPY Co. v. Ameriscribe Corp.,*
145 B.R. 131 (Bankr. S.D.N.Y. 1992)......................................................15

*David B. Lilly Co., Inc. v. Fisher,*
799 F.Supp. 1562, 1568-69 (D. Del. 1992) ..............................................36

*Edgar v. Mite Corp.,*
457 U.S. 624 (1982)..................................................................................35

*Elliott v. Glushon,*
390 F.2d 514 (9th Cir. 1967) ....................................................................17

*First Am. Real Estate Info. Servs., Inc. v. Consumer Benefit Servs., Inc.,*
2004 WL 5203206 (S.D. Cal. Apr. 23, 2004)......................................25, 26

*Ford Motor Credit Co. v. Chiorazzo,*
529 F.Supp.2d 535 (D.N.J. 2008) ............................................................10

*Griffin v. Oceanic Contractors, Inc.,*
458 U.S. 564, 571 (1982)..........................................................................23

*In re Adams Golf Sec. Litig.,*
381 F.3d 267 (3d Cir. 2004)......................................................................31

*In re Adler, Coleman Clearing Corp.,*
263 B.R. 406 (S.D.N.Y. 2001)..................................................................22

*In re Bridgeport Holdings, Inc.,*
388 B.R. 548 (Bankr. D. Del. 2008) .........................................................33

*In re Burlington Coat Factory Sec. Litig.,*
114 F.3d 1410 (3d Cir. 1997)..................................................................9, 11

*In re Grand Eagle Props., Inc.,*
288 B.R. 484 (Bankr. N.D. Ohio 2003) .................................................21, 23

*In re Jacks,*
266 B.R. 728 (B.A.P. 9th Cir. 2001).........................................................31

*In re Nuvelo, Inc., Sec. Litig.*,
  2008 WL 5114325 (N.D. Cal. Dec. 4, 2008) ..........................................................12

*In re PHP Healthcare Corp.*,
  128 Fed. Appx. 839 (3d Cir. 2005) .....................................................................26

*In re Tower Air, Inc.*,
  416 F.3d 229 (3d Cir. 2005) ...............................................................................31

*Jackson v. Star Sprinkler Corp.*,
  575 F.2d 1223 (8th Cir. 1978) .......................................................................1, 17

*Jewel Recovery, L.P. v Gordon*
  (*In re Zale Corp.*), 196 B.R. 348 (N.D. Tex. 1996) ...........................................21

*Juran v. Bron*,
  2000 WL 1521478 (Del. Ch. Oct. 6, 2000) .........................................................36

*Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*,
  913 F.2d 846 (10th Cir. 1990) ............................................................................23

*Kipperman v. Circle Trust F.B.O.*
  (*In re Grafton Partners, L.P.*), 321 B.R. 527 (B.A.P. 9th Cir. 2005) .............21, 24

*Liquidation Trust v. Fleet Retail Fin. Group*
  (*In re Hechinger Inv. Co.*), 327 B.R. 537 (D. Del. 2005) ............................14, 16

*Lowenschuss v. Resorts International, Inc.*,
  181 F.3d 505 (3d Cir. 1999) ..........................................................................20, 21

*Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP*,
  2007 WL 129003 (D. Del. Jan. 12, 2007) .......................................................1, 17

*McTernan v. City Of York*,
  564 F.3d 636 (3d Cir. 2009) .................................................................................7

*MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*,
  910 F.Supp. 913 (S.D.N.Y. 1995) ..................................................................15, 16

*Miller v. McCown De Leeuw & Co., Inc.*
  (*In re The Brown Schools*), 368 B.R. 394 (Bankr. D. Del. 2007) ....................10, 32

*Moody v. Security Pacific Bus. Credit, Inc.*,
  971 F.2d 1056 (3d Cir. 1992) ..............................................................................18

*Norman v. Elkin*,
  2007 WL 2822798 (D. Del. Sept. 26, 2007) ........................................................36

*Official Comm. of Unsecured Creditors v. Lattman*
  (*In re Norstan Apparel Shops, Inc.*), 367 B.R. 68 (Bankr. E.D.N.Y. 2007)..........21, 22, 23, 34

*Official Comm. of Unsecured Creditors v. Reliance Capital Group, Inc.*
  (*In re Buckhead America Corp.*), 178 B.R. 956 (D. Del. 1994)............................18

*Rosener v. Majestic Mgmt., Inc.*
  (*In re OODC, LLC*), 321 B.R. 128 (D. Del 2005) ......................................14, 16, 19

*Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co., Inc.*,
  866 A.2d 1 (Del. 2005)...............................................................................36, 37

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
  742 F.2d 786 (3d Cir. 1984)..........................................................................8

*Solomon v. North Am. Life & Cas. Ins. Co.*,
  151 F.3d 1132 (9th Cir. 1998) ......................................................................34

*Stanziale v. McGladrey & Pullen, LLP*
  (*In re Student Fin. Corp.*), 334 B.R. 776 (D. Del. 2005).......................................10

*Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006)..................................................................25, 28

*United States v. Hodge*,
  321 F.3d 429 (3d Cir. 2003)..........................................................................23

*United States v. Tabor Court Realty Corp.*,
  803 F.2d 1288 (3d Cir. 1986)...............................................................14, 16, 19

*Vantagepoint Venture Partners v. Examen*,
  871 A.2d 1108 (Del. 2005) ...........................................................................33

*Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*,
  919 F.2d 206 (3d Cir. 1990)....................................................................15, 16

*Walsh v. Toledo Hosp.*
  (*In re Fin. Mgmt. Scis., Inc.*), 261 B.R. 150 (Bankr. W.D. Pa. 2001) .....................22

*Weaver v. Kellogg*,
  216 B.R. 563 (S.D. Tex. 1997) ................................................................29, 30

*Wieboldt Stores, Inc. v. Schottenstein*,
  94 B.R. 488 (N.D. Ill. 1988) .........................................................................15

## STATUTES AND RULES

6 Del. Code
  § 18-901(a)(1) ...................................................................................26, 34

11 U.S.C.
  § 108(a) .............................................................................................34
  § 546(e) ..........................................................................................passim
  § 741(8) ........................................................................................22, 23

Cal. Code Civ. Proc.
  § 343 ...............................................................................................34

Cal. Corp. Code
  § 204(a)(10) ....................................................................................33
  § 17150 ...........................................................................................27
  § 17151(b) .......................................................................................27
  § 17153 ...........................................................................................27

Federal Rule of Civil Procedure
  9(b) ...........................................................................................3, 8, 9, 10
  12(b)(6) .........................................................................................7, 31
  12(d) ...............................................................................................11
  56 ....................................................................................................11

# I.    INTRODUCTION

Target Corporation ("Target") received over $1.1 billion as a result of a transaction which caused Mervyn's insolvency. Nonetheless Target has woven a complex narrative in an effort to explain why it should not be a defendant in the above-captioned litigation. However, its untested narrative is prematurely presented at the motion to dismiss stage of the proceedings. A version of the events that is unproven and challenges vital factual elements of the pleadings in the Amended Complaint cannot withstand the standard on a motion to dismiss, which demands that the pleadings in the Amended Complaint must be presumed to be true, with all reasonable inferences drawn in favor of the plaintiff. The purpose of the standard is to allow the plaintiff the opportunity to test its allegations in discovery, while assuring defendants that the plaintiff must have some basis for its contentions. Competing versions of the events, and direct challenges to the pleadings themselves, are clearly reserved in the rules for summary judgment.

Target has also attempted to portray itself as a bystander to the events at issue, claiming it played a role similar to that of an attorney or a bank acting as a depositor. (*See* Defendant Target Corporation's Memorandum of Law in Support of Motion to Dismiss D.I. 44 ("Mem.") at 20-24) (citing, among other cases, *Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP*, 2007 WL 129003, at *3 (D. Del. Jan. 12, 2007), and *Jackson v. Star Sprinkler Corp.,* 575 F.2d 1223, 1234 (8th Cir. 1978).) Yet, Target's characterization contradicts facts pleaded in the Amended Complaint. Case law has made clear that when a series of transactions occur in a simultaneous or interrelated manner, the court will collapse the transactions and look to the overall effect on creditors, not the words and labels used by the parties to the transaction. The Amended Complaint

charges that Target was not a bystander, nor long gone, when Mervyn's LLC (the "Plaintiff" or "Mervyn's") was stripped of its real estate assets for little or no consideration. Rather, the stripping of Mervyn's real estate assets required Target's active participation from the signing of the Equity Purchase Agreement ("EPA") through the actual closing. Target entered into the EPA, converted Mervyn's into an LLC, and then transferred its membership interest in that LLC to the private equity defendants. Target did all of this in exchange for the transfer of over $1 billion, and was thus the transferee of a fraudulent conveyance. Target was not only involved in the various stages of the 2004 Transaction (defined *infra*), but also had knowledge of the entire transaction and its effect on Mervyn's.

Moreover, despite Target's contentions, the Amended Complaint adequately pleads that Target owed a fiduciary duty to Mervyn's and its creditors under California law, a duty it breached as a result of the 2004 Transaction. The fiduciary duty claim was timely asserted under the California statute of limitations and related principles. Accordingly, Target's Motion to Dismiss should be denied in its entirety.

## II.    NATURE AND STAGE OF PROCEEDINGS

On July 29, 2008, Mervyn's filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Just over a month later, after Special Litigation Counsel had been retained, Mervyn's commenced this adversary proceeding by filing a complaint against numerous defendants including Target. On December 22, 2008, Mervyn's filed an Amended Complaint and then served the defendants for the first time in the litigation. Target responded to the Amended Complaint on April 3, 2009 by filing a Motion to Dismiss. On May 20, 2009, the litigation was stayed pending the resolution of a certain disqualification motion related to the role of Kirkland & Ellis LLP in the litigation. Even

though a joint scheduling order was presented to the Court, it has not yet been entered due to the pending disqualification motion.

The Amended Complaint alleges fraudulent conveyance and breach of fiduciary duty against the defendants, including Target, and includes allegations of actual and constructive fraud. Among other things, the Amended Complaint concerns a series of related transactions in 2004 (the "2004 Transaction") wherein a group of private equity firms purchased Mervyn's from Target. The 2004 Transaction caused the stripping of Mervyn's valuable real estate assets for little or no consideration in order to finance the purchase price to Target.

## III. SUMMARY OF ARGUMENT

Target's contentions that Mervyn's lacks a legal and/or factual basis to include Target among the defendants on its claims for fraudulent conveyance and breach of fiduciary duty (Mem. 2) fail for the following reasons:

1. The Amended Complaint satisfies Rule 9(b) because it gives Target adequate notice of the claims brought against it and sets forth the circumstances surrounding the fraudulent transfers in sufficient detail, including the property transferred, the parties which received the transfers, the date of the transfers and the amount at issue.

2. The majority of the documents in Target's Appendix may not be considered on a Motion to Dismiss as it consists of documents not integral or explicitly relied on in the Amended Complaint, and documents that are allegedly part of the public record may not be cited for the truth of the matters asserted in them.

3. Target is a transferee of the fraudulent transfers at issue because the 2004 Transaction should be collapsed and viewed as a series of integrated transactions where

$1.1 billion was transferred to Target, which primarily consisted of the proceeds of loans secured by the real estate stripped from Mervyn's, for little or no consideration, and fraudulently conveyed to the private equity firms.

4.       Target's section 546(e) defense fails because Target improperly attempts to isolate its role in the 2004 Transaction and because the transfer at issue is not the kind of transfer protected by section 546(e)'s safe harbor provision.

5.       Under California law, at least one case has held that a member of an LLC can owe a fiduciary duty to the LLC, and it is well established that fiduciary duties are owed to creditors when a company is insolvent. Dismissal of this claim at this stage of the proceedings is premature. Moreover, the exculpation clause is an affirmative defense which is not appropriate for consideration on a motion to dismiss. Finally, because California law governs the statute of limitations on the breach of fiduciary duty claims, the Amended Complaint is timely.

Therefore, Target's Motion to Dismiss should be denied in its entirety.

## IV.    STATEMENT OF FACTS

Mervyn's traces its roots to a mid-range department store opened by Mervin Morris in San Lorenzo, California in 1949. (Amended Complaint, D.I. 7, ("Am. Compl.") ¶ 42.) Over the last 60 years, Mervyn's grew into a retail chain of family-friendly promotional department stores offering fashion and home décor at affordable prices. (*Id.*) In or about 1978, Mervyn's became a wholly-owned subsidiary of Dayton Hudson Corporation (now known as Target Corporation or Target). (*Id.* ¶ 43.) In 2004, Target converted Mervyn's from a corporation into a limited liability company and sold it to an acquisition vehicle, Mervyn's Holdings LLC ("MH"). (*Id.* ¶¶ 39, 44.) MH is a Delaware

limited liability company that was formed by affiliates of three private equity groups (collectively the "PE Sponsors"). (*Id.* ¶¶ 19, 44.)

The 2004 Transaction was structured like a leveraged buyout ("LBO") and consisted of a series of mostly simultaneous, and fully integrated transactions, the result of which was to strip away Mervyn's valuable real estate assets, including the residual value of those assets, for little or no consideration, while Mervyn's incurred substantial new obligations to service the debt incurred to pay Target the purchase price. (*Id.* ¶¶ 45-47, 64.) In a traditional LBO, Mervyn's would have retained its assets and the residual value of its assets in excess of any debt placed against them. (*Id.* ¶ 46.) Instead in the context of this transaction, Mervyn's was left with none of the real estate assets (nor the benefit of any future residual value), none of the proceeds of any loans placed on those assets, and substantial additional obligations, all to the benefit of Target, Mervyn's new owners and various other defendants. (*Id.* ¶¶ 46-47.)

To effect the 2004 Transaction, Target and MH entered into the EPA, dated as of July 29, 2004, pursuant to which MH acquired all of the outstanding equity of Mervyn's from Target. (*Id.* ¶¶ 54-55.) As agreed to under the EPA, Target converted Mervyn's from a California corporation to a California limited liability company in August 2004. (*Id.* ¶¶ 44, 56.) The private equity defendants formed special bankruptcy remote entities called the MDS Companies. (*Id.* ¶ 47.) At the closing of the 2004 Transaction, Mervyn's was forced to transfer virtually all of its real estate assets to the newly-formed MDS Companies, which simultaneously used those assets for secure loans made by certain lenders to the MDS Companies totaling approximately $800,000,000. (*Id.* ¶¶ 47, 61.) The loan proceeds were transferred to Target as part of the purchase price which

equaled approximately $1.175 billion. (*Id.* ¶¶ 47, 57.) Even though Mervyn's was forced to transfer its real estate assets to the MDS Companies, Mervyn's received little or no consideration for the loss of its most valuable assets. (*Id.* ¶ 61.) Instead, substantial increased burdens in the form of increased rent and notional rent, including rent on formerly owned real estate, were imposed on Mervyn's to finance the debt owed to the real estate lenders. (*Id.* ¶¶ 48-51.) The transfer of the real estate assets, the increased rents placed on Mervyn's and the payment to Target constituted a "split-second series of concurrent transactions" orchestrated "with the knowledge, participation, or acquiescence of Target," who directly benefited from the same at the expense of Mervyn's and its creditors. (*Id.* ¶¶ 71, 79.)

The results of this on Mervyn's were devastating. The transaction rendered Mervyn's insolvent as of September 2, 2004, because the fair value of its assets did not exceed the fair value of its liabilities, and Mervyn's was left with negative working capital of over $22,200,000. (*Id.* ¶¶ 100-01.) The 2004 Transaction burdened Mervyn's with at least $80,000,000 of additional annual expenses in order to service the debts incurred to pay Target. (*Id.* ¶¶ 47, 53, 102.) Significant real estate assets, which could have been utilized for working capital purposes, were no longer available to Mervyn's or its creditors. (*Id.* ¶ 102.) The result of the 2004 Transaction was the conversion of Mervyn's from a retailer with valuable below market leases and valuable owned real estate into a shrunken operating company whose remaining capital consisted largely of inventory, cash, credit card receipts, and intellectual property. On July 29, 2008, Mervyn's filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (*Id.* ¶ 4.)

## V.    ARGUMENT

### A.    Mervyn's Has Satisfied the Pleading Standards to Overcome a Motion to Dismiss

In deciding a motion to dismiss under Rule 12(b)(6),[1] the court "must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City Of York*, 564 F.3d 636, 646 (3d Cir. 2009) (citation and quotations omitted). Although a plaintiff's allegations "must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted), "[a] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan*, 564 F.3d at 646 (citation omitted). The Third Circuit has recognized that "[t]he Supreme Court's *Twombly* formulation of the pleading standard 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.* (citation omitted); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citing *Twombly*, 550 U.S. at 556).

Here, Mervyn's Amended Complaint plainly sets forth sufficient factual

---

[1] Bankruptcy Rule 7012(b) makes Federal Rule of Civil Procedure 12(b)(6) applicable in adversary proceedings.

allegations against Target to demonstrate its plausible entitlement to relief. Accordingly, Target's Motion to Dismiss should be denied.

## B. Mervyn's Has Satisfied The Pleading Standard of Rule 9(b)

Mervyn's has pleaded Counts I and II, including related allegations, with sufficient particularity to survive the Motion to Dismiss, as the Amended Complaint gives Target adequate notice of the claims and related events brought against it.[2]

### 1. Mervyn's Has Sufficiently Pleaded Facts Relating to The Circumstances of The Fraudulent Transfers

Third Circuit law is clear that "in applying Rule 9(b), focusing exclusively on its 'particularity' language is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (citation and quotations omitted), *cert. denied*, 469 U.S. 1211 (1985). While allegations of "date, place or time" are sufficient to place defendants on notice of the claims against them, such allegations are not required by the rules, and plaintiffs may "use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*; *see also Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002) ("Although the complaint does not contain specifics concerning the date, time or place of the allegations, the complaint does plead the allegations with some particularity."). Accordingly, courts have consistently denied motions to dismiss where,

---

[2] Bankruptcy Rule 7009 makes Federal Rule of Civil Procedure 9(b) applicable in adversary proceedings. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Further, only allegations of actual fraud, not constructive fraud, are subject to the Rule 9(b) standard. *See Brandt v. B.A. Capital Co. LP* (*In re Plassein Int'l Corp.*), 352 B.R. 36, 40-41 (Bankr. D. Del. 2006) ("[T]he Court joins with those decisions that have (either implicitly or explicitly) evaluated fraudulent transfer complaints using Rule 8(a)(2)'s notice pleading standard.") (collecting cases)).

as here, the complaint sets forth the circumstances surrounding the fraudulent transfer. *See, e.g.*, *Buckley v. Merrill Lynch & Co., Inc.* (*In re DVI, Inc.*), 2008 WL 4239120, at *8 (Bankr. D. Del. Sept. 16, 2008) (finding complaint sufficient because "the Trustee has identified the transfer by date and face amount and has alleged that it was for no consideration. Further, the Trustee has explained in detail the circumstances surrounding that transfer.").

The Third Circuit has also advised that "'courts should be sensitive to the fact that application of [Rule 9(b)] prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (internal citation omitted). At all times relevant to this litigation, various defendants, including Target, completely dominated and controlled Mervyn's. (*See* Am. Compl. ¶¶ 43, 97, 124, 170.)

The Amended Complaint satisfies Rule 9(b) by setting forth the circumstances surrounding the fraudulent transfer in sufficient detail to apprise Target of the claims against it. Among other things, the Amended Complaint sets forth numerous details with respect to the fraudulent transfer, including a detailed description of the 2004 Transaction, the property involved in the transactions, the dates of the transactions, the value of the transfers made, what was transferred to Target, and the effect of the 2004 Transaction on Mervyn's. (Am. Compl. ¶¶ 62-71, 76, 100-102, 129-137, 139-147.) As such, the pleadings are sufficient for the purposes of Rule 9(b).

### 2. Plaintiff Has Sufficiently Pleaded Facts Relating to Target's Intent to Hinder, Delay or Defraud Mervyn's Creditors

Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Consistent with the plain

language of the rule, when examining the sufficiency of the intent alleged, "only general averments with regard to state of mind" are required. *See In re DVI, Inc.*, 2008 WL 4239120, at *9 ("[The complaint] allege[s] that the various transfers were 'made with actual intent to hinder, delay or defraud the creditors of DVI' while the Debtors were insolvent. That is all that is required by section 548(a)(1)(A) of the Bankruptcy Code."); *Ford Motor Credit Co. v. Chiorazzo*, 529 F.Supp.2d 535, 539 (D.N.J. 2008) (plaintiff "need only plead fraud generally when stating allegations of Defendants' intent or motive in transferring [the] stock."); *Stanziale v. McGladrey & Pullen, LLP (In re Student Fin. Corp.)*, 334 B.R. 776, 779 (D. Del. 2005) (finding that allegations that the debtor "made the transfers to [the defendant] with the actual intent to hinder, delay and defraud [the debtor's] creditors" were sufficient to withstand a motion to dismiss).

The Amended Complaint satisfies Rule 9(b) by stating that the fraudulent transfer was made with "actual intent to hinder, delay or defraud creditors of Mervyn's." (Am. Compl. ¶¶ 134, 143.) Further, the Amended Complaint alleges that the entire 2004 Transaction occurred with Target's "knowledge, participation, or acquiescence" in relation to Target's participation in the 2004 Transaction, knowledge of the structure of the 2004 Transaction and knowledge of the actions of the private equity owners and other defendants. (*Id.* ¶¶ 71, 79.) Accordingly, the allegations concerning Target's intent to hinder, delay or defraud Mervyn's creditors are adequately pleaded.[3]

---

[3] In support of its statement that the Amended Complaint fails to plead fraud "with particularity," Target cites *Miller v. McCown De Leeuw & Co., Inc. (In re The Brown Schools)*, 368 B.R. 394, 403-04 (Bankr. D. Del. 2007) and *Burtch v. Dent & Co., Inc. (In re Circle Y of Yoakum, Texas)*, 354 B.R. 349, 356 (Bankr. D. Del. 2006). (Mem. 11.) Yet, in *In re The Brown Schools*, the court found that the complaint lacked the requisite particularity in part because "the Trustee [did] not specify what individual Defendant received which particular transfer." 368 B.R. at 403. Likewise, in *In re Circle Y of Yoakum, Texas*, the court found that fraud was not alleged with sufficient particularity because the complaint "merely recite[d] the statutory elements" and did

**C.**   **The Majority of Target's Appendix May Not Be Considered on a Motion to Dismiss**

The majority of the documents in Target's Appendix should not be considered by this Court at this stage of the proceedings as they are not integral to or explicitly relied upon in the complaint, contrary to Target's claim. (Mem. 5.) Further, documents which allegedly form part of the public record cannot be cited for the truth of the matters asserted in them to challenge the pleadings in the Amended Complaint.

Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[4] Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* The Third Circuit has created a limited exception to this rule where "a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (citations and quotations omitted) (emphasis original).

Further, courts may take judicial notice of the existence of matters in the public record, but may not use them to determine disputed factual issues. *See Benak v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (taking judicial notice of newspaper articles submitted by appellees but noting that the articles "serve only to

---

not provide adequate factual support. 354 B.R. at 356. The Amended Complaint, by contrast, not only details who received which transfers, including Target, it goes far beyond simply reciting statutory elements. (*See* Am. Compl. ¶¶ 62-71, 76, 129-137, 139-147.)

[4] Bankruptcy Rule 7056 makes Federal Rule of Civil Procedure 56 applicable in adversary proceedings.

indicate what was in the public realm at that time, not whether the contents of those articles were in fact true."); *In re Nuvelo, Inc., Sec. Litig.*, 2008 WL 5114325, at *2 (N.D. Cal. Dec. 4, 2008) (taking judicial notice of SEC filings and press releases but noting that "Defendants do not request judicial notice for the truth of the statements within the documents; [only that] the information contained in them was available to the market during the class period.").

First, Target includes three press releases in its Appendix. (Tar.A001-005.) Target references the press releases in connection with (i) its discussion of the decision to sell Mervyn's, which Target states led to its entry into the equity purchase agreement, and (ii) its argument that the sale of Mervyn's was not made to hinder, delay or defraud Mervyn's creditors, but rather was part of a plan to sell off non-Target divisions. (Mem. 6, 14.) The press releases are not integral to nor relied on in the Amended Complaint. To the extent this Court considers these documents public records, they can be considered solely to show that information contained in the documents was in the public realm (to the extent this would even be relevant) and not to demonstrate Target's intent in selling Mervyn's.

Target has also included a number of other documents in its Appendix which are not public records, and are not integral to nor relied upon in the Amended Complaint. These documents include a commitment letter dated July 29, 2004 provided to Mervyn's Holdings by Ableco Finance LLC (Tar.A085-096), Mervyn's operating agreement (Tar.A097-109), and the closing/funds flow statement for the Equity Purchase Agreement and wire information (Tar.A110-115). While the reason for including the commitment letter is unclear from Target's opposition, the operating agreement, the closing/funds

flow statement and the wire transfer information are submitted in support of potential affirmative defenses contradicting allegations in the Amended Complaint. (*See infra* section V.G.4.) Mervyn's is not in a position to verify the authenticity of these documents, nor are Mervyn's allegations and theories reliant on these documents. Further, documents cannot be offered on disputed issues of fact on a motion to dismiss. Thus, they cannot be considered at this stage of the proceedings.

### D.  Contrary to Target's Assertion, In The LBO Context Target Can be Held Liable as a Transferee for the Fraudulent Conveyance at Issue

Target attempts to avoid liability by arguing that it (i) was not a transferee or subsequent transferee in relation to Mervyn's property; (ii) was not a guarantor or an initial transferee that therefore cannot be a party for whose benefit the transfers were made; and (iii) did not receive Mervyn's property in the course of the 2004 Transaction and was a mere "participant" from whom a trustee cannot seek recovery. (Mem. 2-4.) Not only is the case law cited by Target in support of these propositions entirely inapposite, Target ignores the entire body of case law that has developed in relation to LBOs and similar transactions which holds that a "participant" in Target's position can be held liable under fraudulent conveyance law as a transferee.

The 2004 Transaction was similar to an LBO but with far worse consequences for Mervyn's. Unlike a traditional LBO, a series of interrelated transfers stripped away Mervyn's valuable owned real estate for little or no consideration, and among other things, caused such real estate to be leased back to the Mervyn's for the purpose of servicing the debt used to pay Target the purchase price. (Am. Compl. ¶¶ 47-51, 71.) Target's contentions completely disregard the nature of the 2004 Transaction and more than twenty years of jurisprudence on the treatment of LBOs and similar transactions in

fraudulent conveyance cases. While Target neglects to cite to any cases on the subject, courts have repeatedly concluded that "[i]n appropriate circumstances courts may view a series of transactions (such as those involved in a leveraged buyout) as one integrated transaction." *Rosener v. Majestic Mgmt., Inc.* (*In re OODC, LLC*), 321 B.R. 128, 137 (D. Del 2005) (collecting cases); *see also United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1302 (3d Cir. 1986); *Liquidation Trust v. Fleet Retail Fin. Group* (*In re Hechinger Inv. Co.*), 327 B.R. 537, 546-47 (D. Del. 2005). Accordingly, because the 2004 Transaction was a series integrated transactions, Target remains liable as a transferee of over $1 billion that represents the proceeds from assets that were fraudulently conveyed.

1.      **The 2004 Transaction Should Be Collapsed**

Target has alleged that because Mervyn's did not directly transfer any of its property to Target, Target cannot be held liable for the fraudulent transfer at issue. (Mem. 14.)   While attribution of the transfer from Mervyn's to Target requires a conceptual collapse of the several generally simultaneous and fully interrelated stages of the 2004 Transaction, there is ample authority in this Circuit for doing so.   In *Tabor Court Realty*, the Third Circuit established that in fraudulent conveyance cases, where the exchanges were "part of one integrated transaction," courts may look "beyond the exchange of funds" and collapse the individual legs of a leveraged buyout.   803 F.2d at 1302.[5]   Collapsing the 2004 Transaction makes clear that Target is a transferee of over $1.1 billion which it received as a direct result of the fraudulent conveyance at issue.

---

[5] Courts interpreting state laws regarding fraudulent transfers also hold that multiple interrelated transactions may be collapsed.   See *Bay Plastics, Inc. v. BT Commercial Corp.* (*In re Bay Plastics, Inc.*), 187 B.R. 315, 329 (Bankr. C.D. Cal. 1995) (following *Tabor* and collapsing various pieces of LBO transaction into one integral transaction under the California Uniform

Following the *Tabor Court Realty* decision, courts will collapse integrated or simultaneous transactions in fraudulent conveyance cases, focusing the inquiry not on the formal structure of the transactions but on the overall economic consequences and effect of the transactions on creditors. For instance, in *CPY Co. v. Ameriscribe Corp.*, 145 B.R. 131 (Bankr. S.D.N.Y. 1992), the court explained that

> Regardless of the number of steps taken to complete a transfer of debtor's property, such as in a leveraged buyout transaction, if they reasonably collapse into a single integrated plan and either defraud creditors or leave the debtor with less than equivalent value post-exchange, the transaction will not be exempt from the Code's avoidance sections. ... Thus, in LBO's, where a purchaser uses the assets of the target corporation to finance the acquisition, a series of transactions surrounding the LBO will often be collapsed into one transaction.

*Id.* at 137.[6]

In fact, courts have extended the reasoning in *Tabor Court Realty* to hold selling shareholders liable where interrelated or simultaneous transactions are collapsed. *See In re Bay Plastics, Inc.*, 187 B.R. at 320 (collapsing transactions and holding transfers to selling shareholders were avoidable as a constructively fraudulent transfer under the California UFTA); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 502 (N.D. Ill. 1988) (rejecting controlling shareholders' contention that that because they did not

---

Fraudulent Transfer Act ("UFTA") because the selling shareholders had full knowledge that it was an LBO); *China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc.*, 788 F.Supp. 815, 820 n.8 (D. Del. 1992) (citing *Tabor* for the proposition that "separate transactions may be collapsed into one transaction" in order to assess whether the transaction constituted a fraudulent conveyance under the Delaware Fraudulent Conveyance Act); *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F.Supp. 913, 933-34 (S.D.N.Y. 1995) (transaction may be collapsed in order to assess fraudulent conveyance under Minnesota, New York and Delaware law).

[6] Courts have not restricted "collapsing" to the LBO context. *See, e.g., Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.*, 919 F.2d 206, 212-13 (3d Cir. 1990) (holding that it was appropriate for foreclosure and resale of a corporation's assets to be telescoped "into a single consolidated unit, without regard to the formalities adopted by the parties," based on an evaluation of the "simultaneity" of the transactions).

receive Wieboldt property during the tender offer, they could not be liable for a fraudulent conveyance, and instead collapsing the series of interrelated transactions and denying the motion to dismiss) (cited with approval in *In re OODC, LLC*, 321 B.R. at 138).

Courts have consistently held that in determining whether a series of transactions should be collapsed, courts focus not on the form of the transaction but on its substance, especially the knowledge of the parties involved in the transaction.[7] *See In re Hechinger Inv. Co.*, 327 B.R. at 546-47; *MFS/Sun Life Trust-High Yield Series*, 910 F.Supp. at 934 (collapsing " is appropriate here, where all the parties to each subsidiary transfer were aware of the overall leveraged buyout."). Among other things, courts consider whether all of the defendants were aware of the multiple steps of the transaction. *See In re Hechinger Inv. Co.*, 327 B.R. at 546-47. Courts also consider whether each step would have occurred on its own or, alternatively, whether each step depended upon the occurrence of additional steps in order to fulfill the parties' intent. *See id.* Mervyn's has sufficiently pled that all the steps of the 2004 Transaction were interdependent and that

---

[7] Moreover, the Third Circuit in *Tabor Court Realty* held that the prerequisite for collapsing an LBO was not actual intent to defraud but knowledge (whether imputed or actual) of the structure of the greater transaction. *Tabor Court Realty Co.*, 803 F.2d at 1295-96, 1302 (rejecting defendant's argument that there was no motive to defraud the borrowers' creditors and declaring that because the statute "excludes an examination of intent, it follows that 'good faith' must be something other than intent; because [the statute] also focuses on insolvency, *knowledge* of insolvency is a rational interpretation of the statutory language of *lack of 'good faith.'*") (emphasis added); *see also Voest-Alpine Trading USA Corp.*, 919 F.2d at 215 ("Thus, even if no finding of 'actual intent' . . . had been found, the fraudulent nature of the conveyance in question would still be beyond dispute. . . . This legal conclusion emerges from the district court's findings that the Stablers had arranged a series of transactions that rendered Paige insolvent through foreclosure . . . while conveying Paige's assets . . . without fair consideration.").

Target was a knowledgeable participant and a transferee in relation to the overall scheme.[8]

As described above, the 2004 Transaction consisted of several interrelated and generally simultaneously executed transactions, where the combined effect was to render Mervyn's insolvent. Each step of the transaction was dependent on all other steps – for instance, the closing of the 2004 Transaction and transfer of the purchase price to Target depended on the stripping of Mervyn's valuable real estate assets for little or no consideration, and the resulting increase in obligations on Mervyn's to service the new debt. (Am. Compl. ¶¶ 46-79.) Further, while Target has alleged that it is not liable because the transfer of its membership interest in Mervyn's "was not made to hinder, delay or defraud Mervyn's creditors" (Mem. 14), Target can only make that argument by impermissibly relying on the truth of the assertions in press releases (*see supra* section V.C) while directly contradicting the Amended Complaint. (*See* Am. Compl. ¶¶ 49-50, 129, 134, 139, 143) (stating that the fraudulent transfers were made with "actual intent to hinder, delay or defraud creditors of Mervyn's" and that the transactions were done with "the knowledge, participation, or acquiescence of Target.") Determining whether Target had the requisite intent to commit fraud to the detriment of Mervyn's and its creditors is

---

[8] The cases that Target cites for its proposition that non-transferees cannot be liable under the UFTA (*see* Mem. 21-24) are inapposite to Target's participation in the 2004 Transaction. For instance, in *Magten Asset Mgmt. Corp.*, 2007 WL 129003, at *3, the court dismissed a fraudulent conveyance claim against a law firm that "did not receive the assets in question" where plaintiff sought to impose conspiracy and aiding and abetting liability on the law firm. In *Jackson*, 575 F.2d at 1234, the court dismissed claims against attorneys and banks that acted as depositories of funds, not as recipients. In *Elliott v. Glushon*, 390 F.2d 514, 516-17 (9th Cir. 1967), the court held that an attorney who acted as an escrow holder and never received any interest in the property at issue was not liable for a fraudulent transfer. None of these cases (and the other cases cited by Target for this proposition) involve facts even remotely similar to those pled in the Amended Complaint.

premature at this stage of the proceedings. *See Moody v. Security Pacific Bus. Credit, Inc.*, 971 F.2d 1056, 1064-65 (3d Cir. 1992) ("In the few instances in which leveraged buyouts have been set aside under the [UFCA]'s intentional fraud provisions, an intent to defraud has been inferred from the circumstances surrounding the transaction. Accordingly, the question whether a leveraged buyout constitutes a fraudulent conveyance will typically turn on application of the UFCA's constructive fraud provisions.") (citations omitted).

If Target's contention is taken to its logical conclusion, a parent of a wholly owned subsidiary would always be protected from fraudulent transfer liability because as a matter of common sense, in a sale of a subsidiary to a third party, the purchase price comes from the buyer, not the debtor itself. However, automatically shielding the seller from liability because the purchase price did not come from the debtor is clearly not what the Bankruptcy Code and UFTA contemplate as the collapsing of LBOs and similar transactions ultimately leads to recovering transfers to the seller as a transferee. Target's contention simply does not comport with established case law in relation to fraudulent conveyances.[9]

---

[9] Delaware courts have also rejected the limiting construction of section 550 advocated by Target in relation to "a party for whose benefit the allegedly fraudulent post-closing transfers or pledges of Mervyn's real estate assets were made." (Mem. 3, 15). *See, e.g., Official Comm. of Unsecured Creditors v. Reliance Capital Group, Inc. (In re Buckhead America Corp.)*, 178 B.R. 956, 962-63 (D. Del. 1994) (rejecting the argument that section 550(a)(1) "'allows recovery from only two types of entities – a debtor of the initial transferee, or a guarantor of the debtor's debt to the initial transferee' because such an interpretation "'appears to afford section 550(a)(1) far too limited a scope.'") (internal citations omitted). Further, even the cases cited by Target reject its limited interpretation of the "benefit" clause. *See Christy v. Alexander & Alexander of New York Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir. 1997) ("[T]he 'entity for whose benefit' phrase . . . references entities that benefit as guarantors of the debtor, *or otherwise*, without ever holding the funds.") (citations omitted) (emphasis added); *Coggin v. Coggin (In re Coggin)*, 30 F.3d 1443, 1453-54 (11th Cir. 1994) ("[T]he phrase 'entity for whose benefit the transfer is made' *typically* has been employed when the trustee attempts to recover from a guarantor of an underlying debt.") (emphasis added).

**E.    Target's Section 546(e) Settlement Payment Defense Fails Because Target May Not Isolate Its Role In The 2004 Transaction to a Securities Transaction**

Target's contention that section 546(e) of the Bankruptcy Code bars Mervyn's from recovering the relief that it seeks against Target once again seeks to isolate one leg of the 2004 Transaction, disregarding the true nature of deal. While Target attempts to simplify its involvement in the transaction to a basic sale of securities, its participation as a transferee makes it more than a mere seller of securities. As explained in detail above, unlike a traditional LBO, Mervyn's was stripped of its valuable real estate assets for little or no consideration, and Mervyn's incurred substantial additional obligations to service the loans secured by those same real estate assets, the proceeds of which were transferred to Target.  (Am. Compl. ¶¶ 45-47, 64.)  This series of "split-second" transactions, orchestrated with Target's knowledge, participation, or acquiescence, from which Target directly benefitted as a transferee to the clear detriment of Mervyn's and its creditors, involved more than the labels given to the steps on paper by the defendants including Target. Indeed, separating the stock purchase element of the transaction from the other, fully interdependent elements is anathema to the notion that "in appropriate circumstances courts may view a series of transactions (such as those involved in a leveraged buyout) as one integrated transaction." *In re OODC, LLC*, 321 B.R. at 137; *see also Tabor Court Realty Corp.*, 803 F.2d at 1302-03. Without discovery into the realities of this transaction and Target's participation and knowledge of the same, this Court should not dismiss Target at this early stage of the proceedings.

---

While these cases suggest that the typical construction of the "benefit" phrase is in the guarantor context, they by no means stand for the proposition that it is the only context where section 550 is applicable.

Even the Third Circuit in *Lowenschuss v. Resorts International, Inc.*, 181 F.3d 505 (3d Cir. 1999), *cert. denied*, 528 U.S. 1021 (1999), recognized that there may be exceptions to the safe harbor defense in relation to certain securities transactions. *Id.* at 515 ("The general thrust of *Kaiser Steel, Bevill* and *In re Comack* is that the term 'settlement payment' is a broad one that includes *almost all* securities transactions.") (emphasis added). Although this Court has extended the reasoning in *Resorts International* to privately held securities, there are important distinguishing facts from the situation in *Brandt v. B.A. Capital Company. LP (In re Plassein Int'l Corp.)*, 366 B.R. 318, 325 (Bankr. D. Del. 2007). According to the decision, because the complaint in *Plassein* did not allege fraud, bad faith, or "any relationship whatsoever among the transactions," the "allegations contained within the Complaint do not serve as a basis for collapsing the transaction." *In re Plassein Int'l Corp.*, 366 B.R. at 326. Further, Mervyn's pleadings in relation to Target are not limited to the stock purchase element of the 2004 Transaction. Mervyn's seeks "[j]udgment against . . . Target avoiding Mervyn's transfer of its real estate assets to the MDS Companies, or alternatively, awarding plaintiff judgment against . . . Target [jointly and severally with other defendants] for the value of the real estate assets transferred by Mervyn's in an amount to be determined at trial . . . or, alternatively, as to Target, awarding an amount equal to the Purchase Price or the proceeds of the loans made by the Real Estate Secured Lenders that were borrowed using Mervyn's real estate assets as collateral." (Am. Compl. ¶¶ 72-73.) It is precisely because the 2004 Transaction was accomplished as a result of simultaneous and interdependent transactions, that involved the stripping of real estate assets in order to

transfer to Target the purchase price, that Mervyn's has not limited its claims against

Target to the receipt of cash in exchange for its membership interest in Mervyn's LLC.

**F.     Target's Section 546(e) Settlement Payment Defense Fails Because The Membership Interest In Mervyn's LLC Was Not Publicly Traded**

The 2004 Transaction does not implicate any of the policy considerations

underlying the enactment of section 546(e).  Its application here would serve only to

unjustly "bless" a fraudulent transfer, made in the context of a complex series of

transactions designed to immunize the participants, at the expense of Mervyn's estate and

its creditors.

While certain courts, including the Third Circuit, have extended the "safe harbor"

provision of section 546(e) to transactions involving publicly traded companies in the

LBO context, *see Resorts Int'l*, 181 F.3d at 516 (holding payments made to shareholders

in connection with the LBO of a publicly-traded company were settlement payments in

connection with section 546(e)), courts have declined to extend section 546(e) to cover

all forms of securities transactions.  "[C]ommon elements in decisions finding that there

is not a protected settlement payment are that the securities involved are not publicly

traded and public markets are not utilized."  *Official Comm. of Unsecured Creditors v.*

*Lattman (In re Norstan Apparel Shops, Inc.)*, 367 B.R. 68, 76 (Bankr. E.D.N.Y. 2007)

(declining to extend the protection of section 546(e) to the sale of privately held

securities) (citing *Kipperman v. Circle Trust F.B.O. (In re Grafton Partners, L.P.)*, 321

B.R. 527, 539 (B.A.P. 9th Cir. 2005)).[10]  Any attempt to extend the safe harbor provision

---

[10]  *See also In re Grand Eagle Props., Inc.*, 288 B.R. 484, 494 (Bankr. N.D. Ohio 2003) (declining to apply the Safe Harbor Provision to LBO-related payments, and noting that application of section 546(e) to private securities transactions would "convert that statutory provision into a blanket transactional cleansing mechanism for any entity savvy enough to funnel payments for the purchase and sale of privately held stock through a financial institution"); *Jewel*

to privately held securities in a complex transaction such as the one at issue ignores the purpose for which the safe harbor was enacted, and immunizes a whole host of transactions from avoidance. This is contrary to the usual rule that avoidance powers are to be broadly construed.

Section 546(e) provides, in relevant part, that absent actual fraud, "the trustee may not avoid a transfer that is a . . . settlement payment, as defined in section 101 or 741 . . . , made by or to a . . . financial institution." 11 U.S.C. § 546(e). Section 741(8) defines "settlement payment" as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). The definition of the term "settlement payment" in section 741(8) has been roundly criticized as "opaque," "circular and cryptic," "obscure and elusive," and even so ambiguous as to "def[y] plain meaning." *Walsh v. Toledo Hosp. (In re Fin. Mgmt. Scis., Inc.)*, 261 B.R. 150, 154 (Bankr. W.D. Pa. 2001); *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406, 481 (S.D.N.Y. 2001); *In re Healthco Int'l, Inc.*, 195 B.R. at 983. But, as stated by the court in *In re Norstan Apparel Shops, Inc.*,

> The definition of "settlement payment" contained in § 741(8) is saved from complete circularity by the concluding phrase, "or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). It is therefore important to give meaning to this modifying language, because

---

*Recovery, L.P. v Gordon (In re Zale Corp.)*, 196 B.R. 348, 352 (N.D. Tex. 1996) (holding that section 546(e) did not insulate payments made to shareholders pursuant to an LBO, because LBOs were not the type of transaction contemplated by Congress in enacting section 546(e), especially as here to a private stock purchase); *Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Int'l, Inc.)*, 195 B.R. 971, 981-83 (Bankr. D. Mass. 1996) (rejecting shareholder's contention that payments it received from a bank pursuant to an LBO were shielded by the Safe Harbor Provision, observing that a financial institution acting as an intermediary in the payment of LBO proceeds is not a transferee because it acts only as a conduit in the transfer and acquires no beneficial interest in the funds).

in its absence, the statutory definition contained in § 741(8) would be, in effect, a meaningless tautology.

367 B.R. at 76; *see also In re Grand Eagle Props., Inc.*, 288 B.R. at 492 ("[T]he final modifying phrase . . . is key to the intended meaning and use of that term [settlement payment].""). While the term "the securities trade" in section 741(8) is not defined, it is best read as referring to the industry dealing in publicly-traded securities. *See In re Norstan Apparel Shops, Inc.*, 367 B.R. at 76 ("[I]n the context of the legislative history of these provisions, the modifying phrase at the end of § 741(8) must be understood, at a minimum, to mean that in order to be encompassed in the statutory definition of 'settlement payment,' a transaction must involve the public securities markets.").

The definition of "settlement payment" as encompassing only the public securities market is consistent with the legislative history and congressional intent behind these statutory sections. When a statute is ambiguous, resort to the statute's legislative history is appropriate. *See, e.g., United States* v. *Hodge*, 321 F.3d 429, 437 (3d Cir. 2003) ("When the language of a statute is ambiguous, we look to its legislative history to deduce its purpose.") (citing cases). This Circuit has also emphasized that it "will not read a statute to produce absurd or unintended results 'demonstrably at odds with the intentions of its drafters.'" *Id.* (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). The legislative history and the intent of Congress in drafting section 546(e) are remarkably clear in their limitation of its reach to publicly-traded securities. The term "settlement payment" must therefore be understood in light of its purpose, "'to minimize the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries'" by avoiding a "'ripple effect' . . . on the entire market." *Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*, 913 F.2d 846, 849

(10th Cir. 1990) (quoting H.R. Rep. 97-420 at 1, *reprinted in* 1982 U.S.C.C.A.N. at 583).[11] There is, therefore, no indication in the legislative history that Congress saw any need to exempt from avoidance payments with respect to transfers of privately held stocks. This reasoning applies with even more force to the sale of the securities of a wholly owned subsidiary that is completely dominated by its owner at all times, especially where payment for the same came from the stripping of valuable real estate assets for little or no consideration at the direct expense of Mervyn's and its creditors. To hold otherwise would allow the form – the incredible volume of paperwork and legal machinations devised by the defendants and their attorneys – to reign over substance.

Even though this Court has held in *In re Plassein Int'l Corp.* that "[t]he broad application of what constitutes a settlement payment method mandated in *Resorts* covers transactions which, as here, are LBO purchases of non-public securities," *In re Plassein Int'l Corp.*, 366 B.R. at 325, that decision is currently on appeal to the Third Circuit. We respectfully request that the Court refrain from ruling on this issue until after the Third Circuit decision is released, and the parties both have an opportunity to submit briefing in relation to any holding bearing on the application of section 546(e).

---

[11] With respect to section 546(e), the legislative history explains:

> Section 546([e]d), together with provisions of section 548, prohibits a trustee from avoiding a transfer that is a margin payment to a commodity broker or forward contract merchant or is *a settlement payment made by a clearing organization,* except where the transfer was made with intent to hinder, delay, or defraud other creditors and was not taken in good faith.

*Id.* at 3, 1982 U.S.C.C.A.N. at 585 (emphasis added). Of course, the clearance and settlement system operates only with respect to securities that are publicly traded. *See, e.g., In re Grafton Partners, L.P.*, 321 B.R. at 532-33; Glenn G. Munn *et al.*, Encyclopedia of Banking and Finance 937 (9th ed. 1991) (showing flow chart of clearance and settlement system as part of definition of "securities markets" that refers only to public markets).

**G.** **Plaintiff Has Properly Alleged That Target Breached Its Fiduciary Duty to Both Mervyn's And Mervyn's Creditors.**

Plaintiff has properly alleged that Target owed a fiduciary duty to both Mervyn's and its creditors, and that Target breached that duty through both participating in and benefitting from the 2004 Transaction, in which it had a "large financial interest." (Am. Compl. ¶ 173.) Target's challenge to the existence of a parent's fiduciary duty to its subsidiary and its subsidiary's creditors should be rejected at this stage of the proceedings, where a full record of Target's participation in the transaction and Target's knowledge of its intended effect on Mervyn's has not yet been subject to discovery. Further, Target fails to cite any case law in California holding that a member of a California LLC *does not* owe fiduciary duties to the company or to the company's creditors when the company is or is about to be rendered insolvent. Instead, Target focuses on *Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del. Ch. 2006), which is inapplicable to the facts of this matter. In fact, as explained below, at least one court in California has suggested that a member of an LLC does owe fiduciary duties to the LLC, *see First Am. Real Estate Info. Servs., Inc. v. Consumer Benefit Servs., Inc.*, 2004 WL 5203206, at *6 (S.D. Cal. Apr. 23, 2004), and it is well established under California law that fiduciary duties are owed to creditors when a company is insolvent. *See Carramerica Realty Corp. v. NVIDIA Corp.*, 2006 WL 2868979, at *5 (N.D. Cal. Sept. 29, 2006).

**1.** **California Law Applies to Plaintiff's Breach of Fiduciary Duty Claim Against Target**

Target recognizes, as it must, that California law applies to Plaintiff's breach of fiduciary duty claim against Target. (Mem. 24.) Under the "internal affairs doctrine," federal courts sitting in Delaware apply the law of the state of organization to claims that

implicate an organization's internal affairs. *See In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005) (noting that "we will adopt the choice of law rule of Delaware – the state in which the Bankruptcy Court resides" and that "Delaware recognizes the internal affairs doctrine."). Courts applying Delaware choice of law principles have found (and it is undisputed by Target) that the internal affairs doctrine applies to breach of fiduciary duty claims. *See, e.g., In re Circle Y of Yoakum, Texas*, 354 B.R. at 359 ("A breach of fiduciary duty involves the internal affairs of the corporation."); *see also* 6 Del. Code § 18-901(a)(1) ("The laws of the state . . . under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its members and managers.").

Accordingly, applying Delaware choice of law principles, this Court should apply California law to Plaintiff's breach of fiduciary duty claims against Target because, at all times, Mervyn's was organized under California law.

## 2. California Courts Would Recognize That Target Owes a Fiduciary Duty to Mervyn's

Acknowledging the dearth of case law on the issue, Target argues in the negative that because there is "*zero* law in California holding that the sole member of a California LLC owes fiduciary duties to the LLC," then such duties must not be owed. (Mem. 25) (emphasis original.) In fact, California law suggests the opposite result. At least one district court interpreting California law has stated that a member of an LLC owes a fiduciary duty to the LLC itself, regardless of whether the member also acts as a manager. *See First Am. Real Estate Info. Servs., Inc.*, 2004 WL 5203206, at *6 ("Parties which choose to form a limited liability company are choosing an organizational form which entitles the members to limited liability while permitting the member active

control. Thus, it is reasonable to conclude that the members shall have certain fiduciary duties, regardless of whether the members choose to turn control of the LLC over to appointed managers."). According to the court, "[w]hile California law does permit the members of the LLC to specifically vest managers with the duties of managing the LLC, *see* Cal. Corp. Code § 17151(b), that act does not extinguish the members' fiduciary duties to each other *and to the LLC*." *Id.* (emphasis added).

While Target's reliance on the operating agreement is improper on a motion to dismiss (*see supra* section V.C), that Agreement clearly states that Target is the sole member of the LLC. (*See* Tar.A099.) Accordingly, under California law Target owes a fiduciary duty to the LLC, regardless of the appointment of separate managers.[12] Further, simply because California courts have not yet ruled on the issue of whether a parent corporation owes a fiduciary duty to its wholly owned subsidiary corporation (since Mervyn's was a wholly owned subsidiary corporation of Target before Target transformed Mervyn's into an LLC), it does not follow that no such duty exists. In fact, the willingness to accept the proposition that a member owes a fiduciary duty directly to an LLC is indicative that California courts would be open to accepting the proposition of the same fiduciary duty being owed in the context of corporations.

---

[12] If Target managed Mervyn's, it is black-letter law that it would owe a fiduciary duty to Mervyn's. Under California law, if management of an LLC is vested in its member(s), then the member(s) shall owe a fiduciary duty to the LLC. *See* Cal. Corp. Code § 17150 ("If management is vested in the members, each of the members shall have the same rights and be subject to all duties and obligations of managers as set forth in this title."); *id.* § 17153 ("The fiduciary duties a manager owes to the limited liability company and to its members are those of a partner to a partnership and to the partners of the partnership."). Accordingly, even though the operating agreement lists certain individuals as managers, it is unclear if all of those individuals worked exclusively for Mervyn's, or acted as agents for Target in managing Mervyn's. Therefore, Plaintiff should be afforded discovery to determine whether or not Target acted as a manager of Mervyn's. If Target did, in fact, manage Mervyn's, then it would owe a fiduciary duty to Mervyn's in accordance with California law.

Target's citation to *Trenwick* is inapposite as the case does not discuss a member's fiduciary duty to an LLC under California law, and instead focuses on the fiduciary duty of the directors of a parent corporation to a subsidiary under Delaware law. (Mem. 27.) The facts of *Trenwick* are readily distinguishable from the facts at hand.

- First, *Trenwick* involved allegations against the parent's directors, not against the parent itself. Plaintiff in this case has alleged that *Target*, not Target's *directors*, breached its fiduciary duty. It could be argued that *Trenwick* would support the types of claims brought by Plaintiff herein if they had been brought in that case. *See* 906 A.2d at 194 ("[I]f there was a breach of fiduciary duty by conduct at the [parent]-level toward [the subsidiary], the proper defendant is [the parent] itself, as the parent corporation, not the directors of [the parent].").

- Second, *Trenwick* implies that a cause of action for breach of fiduciary duty against a parent of a wholly-owned subsidiary could be pleaded under certain facts. *See* 906 A.2d at 200 ("[T]he [plaintiff] has failed to plead facts supporting an inference that [the parent] or [the subsidiary] were insolvent at any of the relevant times, and therefore has not pled fact[s] supporting an inference that [the parent] owed any fiduciary duties to [the subsidiary] at the time of the challenged transactions.").

- Third, any findings by the *Trenwick* court related to whether or not a fiduciary duty is owed are dicta, because the court noted that the subsidiary was far from insolvent. *See* 906 A.2d at 195 (stating that

the subsidiary had "a net book value of over $200 million" and that because "the complaint fails to plead facts supporting a rational inference that [the parent] or [the subsidiary] were insolvent at the time of any of the challenged transactions, the premise for the [plaintiff's] fiduciary duty claim does not exist.").

Regardless of the final outcome of this matter, it is not appropriately decided on a motion to dismiss, and instead should be decided on a full factual record concerning Target's relationship to Mervyn's, and its knowledge of, participation in, and benefit from the 2004 Transaction.[13]

### 3. California Courts Would Recognize That Target Owes a Fiduciary Duty to Mervyn's Creditors When Mervyn's Is Insolvent

Target's contention that "[t]here is *zero* law in either Delaware or California holding that a parent company owes fiduciary duties to the creditors of its wholly-owned subsidiaries" ignores Target's duties as a member of an LLC in relation to a company in the zone of insolvency. (Mem. 27-28.) To the extent that a fiduciary duty is owed to Mervyn's creditors, this is so because the Amended Complaint adequately and fully pleads that at the time of the transaction, Mervyn's was or became insolvent, and therefore, those in control of Mervyn's owed fiduciary duties to Mervyn's creditors. (Am. Compl. ¶¶ 100-02.) Contrary to Target's claims, this situation involves the circumstances contemplated in *Weaver v. Kellogg*, 216 B.R. 563 (S.D. Tex. 1997),

---

[13] Target cites various cases for the proposition that parent companies do not owe fiduciary duties to their subsidiaries and the "different conclusion" reached by courts when the subsidiary is only partially owned by the parent company. (Mem. 25-27.) None of these cases addresses the situation found here. The fact that these cases indicate that a fiduciary duty *is* owed by a majority controlling shareholder does not lead to the conclusion that the sole member of an LLC *does not* owe a fiduciary duty to the LLC.

"where there has been prejudice to the creditors, and prejudice arises only where the transaction is a fraudulent conveyance or one which led to corporate insolvency." *Id.* at 583 (citation and quotations omitted).[14] Further, the court in *Weaver* held that "[b]ecause the existence or absence of Defendants' fiduciary duty to [the company's] creditors depends on resolution of these factual issues [whether company was in the vicinity of insolvency or that transaction was a fraudulent conveyance], the Court cannot determine as a matter of law whether Defendants' status as sole shareholders render them immune from liability." *Id.* at 584.

Here, Plaintiff has properly alleged that Target – Mervyn's controlling shareholder and sole member – breached its fiduciary duty by participating and directly benefitting from the fraudulent conveyance of Mervyn's valuable real estate assets. (*See, e.g.*, Am. Compl. ¶¶ 1, 62-90, 128-147, 173.) That allegation is sufficient for this Court to deny the Motion to Dismiss, because Plaintiff has properly alleged that Target failed to maximize the value of Mervyn's for Mervyn's and its creditors due to Mervyn's engagement "in a business for which its remaining assets and/or capital were unreasonably small in relation to the business." (*Id.* ¶ 172.)

In fact, California law specifically recognizes a duty to a company's creditors when the company is insolvent. *See, e.g., Carramerica Realty Corp.*, 2006 WL 2868979, at *5 ("A corporation's directors and officers owe no fiduciary duty to creditors under California law until the corporation becomes insolvent," and recognizing that under

---

[14] Despite Target's statement that *Weaver* was "discussing California law," there is nothing in *Weaver* implicating California law and, to the contrary, the court stated that "Plaintiff's Complaint implicates the laws of both Delaware and Texas with respect to the breach of corporate duties claims." 216 B.R. at 581 n.27 (refusing to determine which state law applied because Delaware and Texas law did not differ significantly with respect to the alleged breach).

California law "the directors and officers of the insolvent corporation become fiduciaries whose obligations to creditors is to protect the assets of the insolvent corporation to satisfy their claims.")  The analysis is heavily dependent on, among other things, a determination of the timing of insolvency, a fact-specific issue which is not amenable to determination on a motion to dismiss.  *See, e.g., In re Jacks*, 266 B.R. 728, 738 (B.A.P. 9th Cir. 2001) ("Because a director's fiduciary duties to creditors do not arise until the corporation is insolvent, the timing of the insolvency is critical.").

Accordingly, Mervyn's pleadings properly allege that Target owed a fiduciary duty to Mervyn's and its creditors.

### 4.  The Exculpation Clause in Mervyn's Operating Agreement Does Not Save Target

Target also attempts to avoid liability by arguing that even if it owed a duty to Mervyn's, it did not breach that duty.  (Mem. 28-30.)  Target states that Mervyn's Operating Agreement "expressly provides that Target cannot be held liable to Mervyn's" for conduct which is, "at worst, negligent or grossly negligent."  (*Id.* at 29.)  Not only is this issue inappropriate for consideration on a motion to dismiss, without further discovery it is at best unclear if Target's actions will get the benefit of the protections provided by the Operating Agreement.

It is well-settled that an affirmative defense "may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6)."  *In re Adams Golf Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004) (reversing District Court's dismissal of certain claims).  As the Third Circuit has stated, "the protection of an exculpatory charter provision appears to be in the nature of an affirmative defense.  As we have said, affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)."  *In re Tower Air, Inc.*, 416 F.3d 229,

242 (3d Cir. 2005). Other courts in this District have likewise refused to consider the defense of exculpation on a motion to dismiss. *See Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F.Supp.2d 538, 561 (D. Del. 2008) ("Because [an exculpatory] provision is in the nature of an affirmative defense and following the statement of the Third Circuit that such defenses will generally not form the basis of a Rule 12(b)(6) dismissal, defendants' motion to dismiss the duty of care claims is denied."); *In re The Brown Schools*, 368 B.R. at 401 ("The exculpation clause is an affirmative defense and the determination of the viability of that defense is not proper at this stage."). Accordingly, Target's reliance on the exculpation clause is inappropriate at this juncture of the lawsuit.

Even if the Court considers the exculpation clause at this stage of the proceedings, the exculpation clause will not save Target based on the pleadings in the Amended Complaint. For example, Plaintiff submits that Target's actions were not performed in good faith and on behalf of Mervyn's, as is required for the exculpatory provision in Mervyn's operating agreement to apply. (Mem. 29) (exculpatory provision applies only if "Covered Person" acts or fails to act "in good faith" and "on behalf of [Mervyn's].") Plaintiff has alleged that Target breached its fiduciary duty of good faith. (Am. Compl. ¶¶ 169-82.) In addition, Plaintiff alleges that the sale of Mervyn's was made for the benefit, in part, of Target (not Mervyn's), raising a factual issue as to whether Target's actions were performed "on behalf of Mervyn's." (*Id.* ¶¶ 137, 146.) These allegations demonstrate that a factual issue exists with respect to the applicability of the exculpatory provision which cannot be resolved at this stage in the proceedings.

Further, when a plaintiff alleges facts supporting a breach of the duty of loyalty or a lack of good faith, in addition to a breach of the duty of care, an exculpatory provision will not justify a dismissal of the duty of care claims. *See, e.g.*, *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 568-72 (Bankr. D. Del. 2008) ("Here I am holding that the duty of loyalty remains, so that the due care claim is not defeated by § 102(b)(7) [Delaware's exculpatory provision]."); *Alidina v. Internet.com Corp.*, 2002 WL 31584292, at *8 (Del. Ch. Nov. 6, 2002) ("[W]hen a duty of care breach is not the *exclusive* claim, a court may not dismiss based on an exculpatory provision.") (emphasis original). Accordingly, to the extent Mervyn's duty of loyalty and good faith claims survive the Motion to Dismiss, any exculpatory provision in Mervyn's operating agreement should not serve to extinguish the breach of the duty of care claims.[15]

**H.    Mervyn's Breach of Fiduciary Duty Claim Was Timely Filed**

**1.    California Law Applies to The Statute of Limitations for The Breach of Fiduciary Duty Claim**

Delaware choice of law principles mandate that the law of California, the state in which Mervyn's was organized, applies to the breach of fiduciary duty claim, as acknowledged by Target (Mem. 24). *See Vantagepoint Venture Partners v. Examen*, 871 A.2d 1108, 1113 (Del. 2005) ("By providing certainty and predictability, the internal affairs doctrine protects the justified expectations of the parties with interests in the

---

[15] Furthermore, California law is clear that an exculpatory provision "may not eliminate or limit the liability of directors (i) for acts or omissions that involve intentional misconduct or a knowing and culpable violation of law, (ii) for acts or omissions that a director believes to be contrary to the best interests of the corporation or its shareholders or that involve the absence of good faith on the part of the director, (iii) for any transaction from which a director derived an improper personal benefit, (iv) for acts or omissions that show a reckless disregard for the director's duty to the corporation or its shareholders in circumstances in which the director was aware, or should have been aware, in the ordinary course of performing a director's duties, of a risk of serious injury to the corporation or its shareholders." Cal. Corp. Code § 204(a)(10).

corporation."); 6 Del. Code § 18-901(a)(1). California has a four-year statute of limitations for breach of fiduciary duty claims. *See* Cal. Code Civ. Proc. § 343 ("An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued"); *see also Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (9th Cir. 1998) ("California courts have expressly held that claims for breach of fiduciary duty are governed by the four-year statute of limitations, pursuant to CCP § 343.").[16]

In nearly identical situations to this matter, two courts have held that the statute of limitations of the state of incorporation applies to breach of fiduciary duty claims. In *In re Circle Y of Yoakum, Texas*, Judge Walrath rejected the trustee's argument that the Delaware statute of limitations applied and, citing the internal affairs doctrine, applied the statute of limitations of the state of incorporation to a breach of fiduciary duty claim against one of the debtor's directors. *See* 354 B.R. at 359. Similarly, in *In re Norstan Apparel Shops, Inc.*, the court rejected the creditors' committee's attempt to apply the statute of limitations of the forum state rather than the state of incorporation, stating that because the internal affairs doctrine applied, the statute of limitations of a breach of fiduciary duty claim was governed by the law of the state of incorporation. *See* 367 B.R. at 82.

Target argues that the principles applied in *Circle Y* "failed to recognize that the statute of limitations is a procedural issue, not a substantive issue, for choice of law purposes." (Mem. 31 n.9.) Yet, Target's argument ignores the purpose of the internal

---

[16] With respect to breaches of fiduciary duty that occurred between July 29, 2004 and September 2, 2004, section 108 of the Bankruptcy Code operates to extend the time to commence an action until the later of two years from the petition date or the expiration of the statute of limitations under state law. *See* 11 U.S.C. § 108(a).

affairs doctrine. As recognized by the Supreme Court, the internal affairs doctrine "recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters particular to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands." *Edgar v. Mite Corp.*, 457 U.S. 624, 645 (1982). Under the internal affairs doctrine, courts have not carved out an exception for the statute of limitations, and neither should this Court.[17]

## 2.     The Delaware "Borrowing" Statute Does Not Apply

Target also attempts to claim that Delaware's "borrowing" statute prevents Mervyn's from proceeding with its breach of fiduciary duty claim. Yet the borrowing statute is inapplicable in this context and does not defeat the timeliness of Mervyn's fiduciary duty claim against Target.

Target claims that the purpose behind the Delaware borrowing statute is that "courts should not provide a forum for the adjudication of claims that might be timely in another jurisdiction, but are time barred under Delaware law." (Mem. 32.) This misstatement, for which no citation is provided, could not be further from the truth. The Delaware Supreme Court has stated that

> [b]orrowing statutes such as [the Delaware borrowing statute] are typically designed to address a specific kind of forum shopping scenario-cases where a plaintiff brings a claim in a Delaware court that (i) arises under the law of a jurisdiction other than Delaware and (ii) *is barred by that jurisdiction's statute of limitations but would not be time-barred in Delaware, which has a longer statute of limitations.*

---

[17] This should also be consistent with Target's own expectations. Target should not be surprised that California law, including the California statute of limitations, applies to a corporation and a limited liability company that it formed and of which it was the parent and sole member. In fact, application of California law should comport with Target's expectations in organizing Mervyn's in this manner.

*Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co., Inc.*, 866 A.2d 1, 16 (Del.

2005), *cert. denied*, 546 U.S. 936 (2005) (emphasis added). Similarly, the Delaware

Chancery Court has stated that the borrowing statute "was designed to protect Delaware's

courts from having to adjudicate *stale-out-of-state claims* [and to] *prevent forum

shopping* to take advantage of a *longer* limitations period." *Juran v. Bron*, 2000 WL

1521478, at *12 (Del. Ch. Oct. 6, 2000) (emphasis added). The *Juran* court squarely

addressed the issue faced by this Court, finding that "[h]ere, we do not have that

situation. The plaintiffs have come to a jurisdiction with a *shorter*, rather than a longer,

limitations period. Thus, there is no danger of forum shopping here." *Id.* (emphasis

original).[18] The concerns about forum shopping to avoid stale out-of-state claims do not

apply to Plaintiff's claims against Target. The California claim here is not "stale."

Absent tolling, California has a *longer* statute of limitations than Delaware for breach of

fiduciary duty claims, so the concern about forum shopping in order to "revive" a stale

claim does not apply.[19]

Even if this Court is influenced by the borrowing statute, two Delaware courts

have held that the borrowing statute need not be literally applied. In *Saudi Basic*

---

[18] The cases cited by Target for the proposition that the statute of limitations is a procedural issue, and that the borrowing statute applies for Delaware choice of law purposes miss the mark. (Mem. 30-31.) In *David B. Lilly Co., Inc. v. Fisher*, the court found that all three potential jurisdictions had the same statute of limitations, and therefore no conflict of law analysis was necessary. 799 F.Supp. 1562, 1568-69 (D. Del. 1992). In *Norman v. Elkin*, with regard to breach of fiduciary duty and certain other claims, the court applied the Delaware borrowing statute because, absent application thereof, a claim which otherwise would have been untimely would have been revived by Delaware's longer statute of limitations. 2007 WL 2822798, at *4 (D. Del. Sept. 26, 2007).

[19] Moreover, Plaintiff can hardly be considered to have "shopped" for this jurisdiction when certain of the defendants who controlled Mervyn's are directly responsible for the filing of the Debtors' bankruptcy cases in Delaware as opposed to, for example, California.

*Industries*, the Delaware Supreme Court recognized that the borrowing statute, "if literally read and applied, would cause the three-year Delaware limitations statute to govern [counterclaimant's] claim." 866 A.2d at 16. Nevertheless, the court refused to literally apply the borrowing statute because it would have provided a limitations defense to the counterclaim defendant which would not have existed had the counterclaim been brought in the jurisdiction where the cause of action arose. In so holding, the court rejected the counterclaim defendant's literal reading of the borrowing statute, finding that such a reading would "subvert the statute's underlying purpose. Our case law precedent eschews such a construction." *Id*. Similarly, in *B. Lewis Productions, Inc. v. Bean*, the Delaware District Court rejected counterclaim defendant's attempt to apply the borrowing statute, stating that "the same kinds of considerations that operated to make the literal application of Delaware's borrowing statute inappropriate in *Saudi Basic* appear to be applicable here." 2005 WL 273298, at *3 (D. Del. Jan. 28, 2005) (expressing concern that counterclaimant would be "unfairly deprive[d . . . ] of rights to which he may otherwise be entitled."). Taken together, these cases stand for the proposition that the borrowing statute cannot be used defensively to shorten the statute of limitations when the plaintiff has not engaged in forum shopping for the purpose of reviving an expired out-of-state claim. As such, it is inapplicable in this matter.

## VI.     CONCLUSION

Based on the foregoing, Mervyn's LLC respectfully submits that Target Corporation's Motion to Dismiss be denied in its entirety.[20]

---

[20] Even though it is the Plaintiff's position that the Amended Complaint is adequately pleaded, to the extent that the Court finds deficiencies with the pleadings, Plaintiff requests leave to replead.

July 2, 2009

Respectfully submitted,

BAYARD, P.A.

*/s/ Ashley B. Stitzer*
Neil B. Glassman (No. 2087)
Ashley B. Stitzer (No. 3891)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19899
Telephone:  (302) 655-5000
Facsimile: (302) 658-6395
nglassman@bayard.com
astitzer@bayard.com

- and -

COOLEY GODWARD KRONISH LLP
Ronald R. Sussman
Jay R. Indyke
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7798
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
rsussman@cooley.com

Jennifer L. Stewart
The Prudential Tower
800 Boylston Street • 46th Floor
Boston, MA  02199
Telephone: (617) 937-2300
Facsimile: (617) 937-2400
jstewart@cooley.com

*Attorneys for Plaintiff*

BN-43185-v1

38