IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MERVYN'S HOLDINGS, LLC, et al., | : | Case No. 08-11586 (KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| MERVYN'S LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| - against - | : | Adv. Proc. No. |
| | : | 08-51402 KG |
| LUBERT-ADLER GROUP IV, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT TARGET CORPORATION'S
REPLY MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS**

Date: July 31, 2009.

**MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLLP**
Laurie A. Krepto
(DE Bar #4109)
1105 North Market Street
Suite. 1500
Wilmington, DE 19801
Phone: (302) 504-7890
Fax: (302) 504-7820
lkrepto@mmwr.com

**FAEGRE & BENSON LLP**
Wendy J. Wildung
(MN Bar #117055)
Dennis M. Ryan
(MN Bar #161275)
Michael F. Doty
(MN Bar #0388303)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600
wwildung@faegre.com
dryan@faegre.com
mdoty@faegre.com

Counsel for Defendant Target Corporation

# TABLE OF CONTENTS

Page(s)

I.   THE AMENDED COMPLAINT FAILS THE APPLICABLE
     PLEADING STANDARDS ....................................... 1

II.  COUNTS I AND II FAIL ON THE FACTS AND UNDER THE LAW ..... 4

     A.   Target Was Not A Transferee Under The UFTA ......... 4

     B.   The "Collapsing-The-Transaction" Concept Is Not
          Applicable To Target's Sale Of Mervyn's ............ 5

     C.   The Plain Language Of Section 546(e) Bars
          Counts I And II .................................... 7

III. COUNT V LACKS A LEGAL OR FACTUAL BASIS ................. 10

     A.   Target Did Not Owe Mervyn's Fiduciary Duties In
          Selling The Company ............................... 10

     B.   Target Did Not Owe Fiduciary Duties To Mervyn's
          Creditors In Selling The Company .................. 11

     C.   The Exculpation Provision Bars Count V ............ 12

          1.   The provision may be considered ............. 12

          2.   The Amended Complaint does not plead around
               the exculpation provision ................... 13

     D.   Count V Is Untimely ............................... 14

          1.   Delaware's three-year statute of
               limitations applies to Count V .............. 14

          2.   Delaware's borrowing statute bars Count V .... 16

IV.  MERVYN'S ATTEMPTS TO POSTPONE DISMISSAL SHOULD FAIL .... 18

     A.   Mervyn's Objections To The Exhibits Submitted
          By Target Have No Merit ........................... 18

     B.   The Court Should Deny Mervyn's Leave To Amend ..... 19

# TABLE OF CITATIONS

Page(s)

**STATE CASES**

*Amoroso v. Joy Mfg. Co.,*
   531 A. 2d 619 (Del. Super. 1987) .......................... 17

*First Am. Real Estate Info Servs., Inc.,* 2004 WL 5203206,
   at *6 (S.D. Cal. April 23, 2004) .......................... 10

*Juran v. Bron,*
   2000 Del. Ch. LEXIS 143 (Del. Ch. Oct. 6, 2000) ........ 14, 15

*Katell v. Morgan Stanley Group, Inc.,*
   1993 Del. Ch. LEXIS 5 (Del. Ch. Jan. 14, 1993) ............. 17

*Malpiede v. Townson,*
   780 A.2d 1075 (Del. 2001) ............................... 12, 13

*Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical
   Co., Inc.,*
   866 A.2d 1 (Del. 2005) .................................... 16

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
   ___ U.S. ___, 129 S.Ct. 1937 (2009) ......................... 2

*B. Lewis Productions, Inc. v. Bean,*
   2005 WL 273298 (D. Del. Jan. 28, 2005) ..................... 16

*Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay
   Plastics, Inc.),*
   187 B.R. 315 (Bankr. C.D. Cal. 1995) ........................ 6

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ......................................... 2

*Brandt v. B.A. Capital Co. (In re Plassein Int'l Corp.),*
   366 B.R. 318 (Bankr. D. Del. 2007) .......................... 8

*Burtch v. Dent (In re Circle Y of Yoakum, Texas),*
   354 B.R. 349 (Bankr. D. Del. 2006) ......................... 15

*Burtch v. Milberg Factors, Inc.,*
   2009 U.S. Dist. LEXIS 48431 (D. Del. May 31, 2009) ......... 19

*Contemporary Indus. Corp. v. Frost (In re Contemporary Indus. Corp.),*
  564 F.3d 981 (8th Cir. 2009) ............................ 8, 9

*Elmer v. Tenneco Resins, Inc.,*
  698 F. Supp. 535 ........................................ 17

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,*
  482 F.3d 247 (3d Cir. 2007) ............................. 19

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
  530 U.S. 1 (2000) ....................................... 9

*HBE Leasing Corp. v. Frank,*
  48 F.3d 623 (2d Cir. 1995) .............................. 5

*In re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir. 1997) ............................ 18

*In re Tower Air, Inc.,*
  416 F.3d 229 (3d Cir. 2005) ............................. 12

*Lamb v. Household Finance Corp. III (In re Tiffany Arneaca Lamb),*
  2009 Bankr. LEXIS 1775 (Bankr. N.D. Fla. June 15, 2009) ....................................................... 3

*Lamie v. United States Trustee,*
  540 U.S. 526 (2004) ..................................... 9

*Lopez v. Beard,*
  2009 U.S. App. LEXIS 13403 (3d Cir. June 18, 2009) ...... 3

*McIntosh v. Arabian American Oil Co.,*
  633 F. Supp. 942 (D. Del. 1986) ......................... 17

*MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Company,*
  910 F. Supp. 913 (S.D.N.Y. 1995) ........................ 6

*Official Committee of Unsecured Creditors of Fedders North America v. Goldman Sachs Credit Partners L.P. (In re Fedders North America, Inc.),*
  405 B.R. 527 (Bankr. D. Del. 2009) ...................... 3, 12

*Official Committee of Unsecured Creditors of Sunbeam
   Corp. v. Morgan Stanley & Co., Inc. (In re Sunbeam
   Corp.),*
   284 B.R. 355 (Bankr. S.D.N.Y. 2002) ......................... 7

*Official Committee of Unsecured Creditors v. Lattman (In
   re Norstan Apparel Shops, Inc.),*
   367 B.R. 68 (March 30, 2007) ............................... 15

*QSI Holdings, Inc. v. Alford (In re QSI Holdings, Inc.),*
   ___ F.3d ___, 2009 U.S. App. LEXIS 14744 (6th Cir.
   July 6, 2009) ........................................... 8, 9

*Schum v. Bailey,*
   578 F.2d 493 (3d Cir. 1978) ............................... 15

*Sun Oil Co. v. Wortman,*
   486 U.S. 717 (1988) ....................................... 14

*The Liquidation Trust of Hechinger Investment Co. v.
   Fleet Retail Finance Group (In re Hechinger Investment
   Co.),*
   327 B.R. 537 (D. Del. 2005) ................................ 5

*Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.,*
   919 F.2d 206 (3d Cir. 1990) ................................ 6

*Wieboldt Stores, Inc. v. Schottenstein,*
   94 B.R. 488 (N.D. Ill. 1988) .............................. 6

**RULES**

Fed. R. Civ. P. 12(b)(6) .................................. 2, 12

Fed.R.Evid. 2001 .......................................... 19

**OTHER AUTHORITIES**

Restatement (Second) Conflict of Laws § 142 ............... 14

Target's story is simple, not complex (as Mervyn's wants to claim, see P's Br. 1, D.I. 112).  Target sold its 100% equity interest in Mervyn's (Target's own property) to Mervyn's Holdings, LLC ("MH") for cash in an arms-length transaction that was not contingent on any pledge or disposition of Mervyn's assets.  Mervyn's makes conclusory allegations against Target, and asks for more time to discover whether its allegations have factual support.  Mervyn's position has no merit whatsoever.

## I. THE AMENDED COMPLAINT FAILS THE APPLICABLE PLEADING STANDARDS.

Mervyn's maintains that it meets applicable pleading standards simply by: (1) describing in detail allegedly fraudulent transfers that occurred after Target sold Mervyn's (P's Br. 9-10, citing Am. Compl. ¶¶62-71, 76, 100-102, 129-137, 139-147); (2) mouthing the language of the UFTA (P's Br. 9-10, citing Am. Compl. ¶¶134, 143);[1] and (3) alleging conclusorily that the transfers occurred with Target's "knowledge, participation, or acquiescence" (P's Br. 10, citing Am.Compl. ¶¶71,[2] 79).  Mervyn's is wrong.

---

[1]    The cited paragraphs actually do not mention Target at all.

[2]    Paragraph 71 of the Amended Complaint likewise does not mention Target at all.

- 1 -

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), the Amended Complaint must meet the pleading standards that the Supreme Court articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and explained further three months ago in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009). These two decisions effectively rewrote the pleading standards for all civil cases. They supersede, and render superfluous, the cases on pleading standards that Mervyn's relies upon.

*Twombly* held that the adequacy of a pleading must be evaluated based upon the facts alleged, and not upon "labels and conclusions", or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555. *Iqbal* outlined a two-step approach that federal courts must follow. *First*, a court should identify pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. *Second*, after having identified the "well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949.

Mervyn's detailed description of the transfers that occurred after Target sold Mervyn's do not allow for a

reasonable inference that *Target* is liable. Target is not specifically alleged to have done anything except convert Mervyn's from a corporation to an LLC and sell its equity interest. Neither action reasonably supports an inference of wrongful conduct by Target.

The other references to Target in the Amended Complaint "are theories and conclusions, not facts",[3] and so do not permit a court to reach the conclusion that Target might be liable. *Lopez v. Beard,* 2009 U.S. App. LEXIS 13403, at *7 (3d Cir. June 18, 2009) (applying *Iqbal* and affirming dismissal); *see also Lamb v. Household Finance Corp. III (In re Tiffany Arneaca Lamb),* 2009 Bankr. LEXIS 1775, at *15 (Bankr. N.D. Fla. June 15, 2009) (dismissing claim after *Iqbal* because plaintiff had failed to plead "some basic facts to support its conclusory allegations of knowledge or intent").

---

[3]   Courts may infer fraudulent intent by examining the circumstances and considering whether various "badges of fraud" are present. *Official Committee of Unsecured Creditors of Fedders North America v. Goldman Sachs Credit Partners L.P. (In re Fedders North America, Inc.),* 405 B.R. 527, 545 (Bankr. D. Del. 2009).  No "badges of fraud" were pleaded with respect to Target's sale of Mervyn's. *See Fedders,* 405 B.R. at 545-546 (dismissing Section 548(a)(1)(A) claim against lenders where only one "badge of fraud" existed, and there were no facts pleaded "indicating anything other than an arms' length relationship between Fedders and the Lenders").

## II. COUNTS I AND II FAIL ON THE FACTS AND UNDER THE LAW.

### A. Target Was Not A Transferee Under The UFTA.

Mervyn's real complaints are about the transfer of its real estate assets allegedly orchestrated by the PE Sponsors. (Am. Compl. ¶¶46, 61, 62, 69, 74, 78, 79, 80, 97; P's Br. 5, arguing that MH forced Mervyn's "to transfer virtually all of its real estate assets to the newly-formed MDS Companies, which simultaneously used those assets for [sic] secure loans made by certain lenders.")

Target no longer owned Mervyn's at the time of these transfers, and is not alleged to have received any of Mervyn's assets as a result of them. Although Mervyn's suggests that Target received the loan proceeds, the suggestion is beyond implausible. MH could not have caused Mervyn's to transfer its real estate assets until MH controlled Mervyn's, and MH did not own and control Mervyn's until Target received the Purchase Price and conveyed its ownership interest to MH.  In Mervyn's reverse order world, the Equity Purchase Agreement ("EPA") was entered into to effect the real estate transfers. But that cannot be true, since the EPA had no financing contingency and in no way required that Mervyn's transfer any of its assets.

Because Target was not a transferee of any assets of
Mervyn's, but instead received only the funds of the buyer, no
claim lies against Target under the UFTA.

**B.    The "Collapsing-The-Transaction" Concept Is Not
Applicable To Target's Sale Of Mervyn's.** .

Neither the law, nor the facts alleged in the
Amended Complaint, justify "collapsing" Target's sale of its
equity interest in Mervyn's with the post-sale transfers.

The concept "finds its most frequent application to
lenders who have financed leveraged buyouts of companies that
subsequently become insolvent." *HBE Leasing Corp. v. Frank*,
48 F.3d 623, 635 (2d Cir. 1995) (citing cases); *accord The
Liquidation Trust of Hechinger Investment Co. v. Fleet Retail
Finance Group (In re Hechinger Investment Co.)*, 327 B.R. 537,
546 (D. Del. 2005). The "paradigmatic scheme" for application
of the concept has been described as follows:

> [O]ne transferee gives fair value to the debtor in
> exchange for the debtor's property, and *the debtor*
> then gratuitously transfers the proceeds of the
> first exchange to a second transferee.

*HBE Leasing*, 48 F.3d at 635 (emphasis added).

Most of the cases relied upon by Mervyn's involved
suits against lenders who received assets, or pledges of
assets, from failing companies, and hence are inapplicable to
Mervyn's claims as against Target. Mervyn's also cites a few
cases (P's Br. 15) where a court was willing to include

selling shareholders as defendants when transactions were collapsed, but those rare cases all involved selling shareholders who had orchestrated, or knowingly participated, in allegedly fraudulent schemes.[4]  Mervyn's cited cases agree that "the sale of one's ownership of a business does not raise an inference of fraud."  *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Company,* 910 F. Supp. 913, 935 (S.D.N.Y. 1995) (entering judgment for selling shareholders).

There are no facts in the Amended Complaint that would justify collapsing Target's sale of its equity in Mervyn's with the post-sale financing transfers.

- Mervyn's does not allege that Target orchestrated the financing transactions, but instead alleges that the PE Sponsors did. (Am. Compl. ¶¶46, 61, 62, 69, 74, 78, 79, 80, 97.)

- Mervyn's does not allege that Target had the intent to "hinder, delay, or defraud creditors", but that such intent "is supplied by the PE Sponsors". (Am. Compl. ¶¶134, 143.)

---

[4]     In Mervyn's cited cases, insider shareholders: (1) transferred assets among affiliated entities that they controlled in order to avoid paying judgment creditors, *Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.,* 919 F.2d 206 (3d Cir. 1990); (2) agreed with a purchaser and a lender to cause their company to pledge its assets so that a tender offer for the company's stock could be made, *Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488 (N.D. Ill. 1988); (3) sold their insolvent company by causing it to borrow $3.5 million, that was then transferred to pledge the purchaser, who in turn used the funds to pay the selling shareholders, *Bay Plastics, Inc. v. BT Commercial Corp. (In re Bay Plastics, Inc.),* 187 B.R. 315 (Bankr. C.D. Cal. 1995).

- 6 -

- Mervyn's does not allege that Target's sale of its equity in Mervyn's actually rendered Mervyn's insolvent. It instead alleges that Mervyn's became insolvent "[a]fter the PE Sponsors stripped the real estate from it." (Am. Comp. ¶100.)

- Mervyn's does not allege that the EPA was contingent upon any of the allegedly fraudulent transfers occurring, and in fact it was not.

All the Amended Complaint contains are conclusory allegations that the post-sale transfers were done "with the knowledge, participation, or acquiescence of Target". (Am. Compl. ¶79.) This is insufficient as a matter of law. *See Official Committee of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355, 372-373 (Bankr. S.D.N.Y. 2002) (dismissing fraudulent transfer claims because the factual allegations did not support collapsing the transactions; Committee's assertion concerning the defendants' purported knowledge "is conclusory as there are no factual allegations to support it").

## C. The Plain Language Of Section 546(e) Bars Counts I And II.

In opposing Target's Section 546(e) defense, Mervyn's first rehashes its argument that this Court should "collapse" the transactions. (P's Br. 19-20.) This argument is no better the second time around.

For its second argument, Mervyn's asserts that the safe harbor granted by Section 546(e) does not apply because

- 7 -

Target's sale of its ownership interest in Mervyn's "does not implicate any of the policy considerations underlying the enactment of section 546(e)." (P's Br. 21.) Mervyn's relies upon district court cases from other circuits, but ignores a recent court of appeals decision that rejected Mervyn's position. *See Contemporary Indus. Corp. v. Frost (In re Contemporary Indus. Corp.)*, 564 F.3d 981 (8th Cir. 2009). In addition, shortly after Mervyn's filed its brief, the Sixth Circuit decided *QSI Holdings, Inc. v. Alford (In re QSI Holdings, Inc.)*, ___ F.3d ___, 2009 U.S. App. LEXIS 14744 (6th Cir. July 6, 2009). Both *QSI* and *Contemporary Industries* are consistent with this Court's holding in *Brandt v. B.A. Capital Co. (In re Plassein Int'l Corp.)*, 366 B.R. 318 (Bankr. D. Del. 2007), that Section 546(e) applies to transactions involving privately traded securities.

To construct its "policy" argument, Mervyn's discusses the broad definition of "settlement payment" under the Bankruptcy Code, contends that the definition is ambiguous, and then argues (supposedly based upon legislative history) that the definition should be construed to encompass publicly traded securities only. (P's Br. 21-24.) This approach is in error.

According to the Supreme Court, "[t]he starting point in discerning congressional intent is the existing

statutory text." *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). Where a "statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce [the statute] according to its terms." *Id.* (*quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000)).

Both *QSI Holdings* and *Contemporary Industries* directly address the alleged ambiguity in Section 546(e). Both Courts of Appeals concluded that the language of Section 546(e) is unambiguous, and that the safe harbor applies to transactions involving privately traded securities. *QSI Holdings*, 2009 U.S App. Lexis 14744, at *7-*11; *Contemporary Indus.*, 564 F.3d at 10. In *Contemporary Industries*, the Eighth Circuit noted that this interpretation would not (as Mervyn's seems to suggest) allow sophisticated parties to abuse Section 546(e) by funneling all payments for securities through a financial institution for purposes of immunizing such payments from future avoidance. Settlement payments are commonly used in the securities trade and "it is unlikely that a transaction that is a clear abuse of the exemption could be said to be commonly used in that trade." 564 F.3d at 15 n.5 (citation omitted).

Put simply, Mervyn's arguments about Section 546(e) are contrary to the plain language of the statute, cases decided by this Court, recent cases decided by two Courts of Appeals, and common sense.

## III. COUNT V LACKS A LEGAL OR FACTUAL BASIS.

### A. Target Did Not Owe Mervyn's Fiduciary Duties In Selling The Company.

Mervyn's acknowledges the lack of *any* California law holding that a sole member of a California LLC owes a fiduciary duty to the LLC. (P's Br. 25). Mervyn's has it backwards in arguing that the lack of any authority in its favor should permit Count V to proceed as against Target. Mervyn's has the burden of stating a claim, and a lack of authority dooms the claim.

Citing a single unpublished case, *First Am. Real Estate Info Servs., Inc.*, 2004 WL 5203296, at *6 (S.D. Cal. April 23, 2004), Mervyn's proffers a thin argument that California courts would recognize its breach of fiduciary duty claim. *First Am.*, however, held that two equal members of a California LLC *owed each other* fiduciary duties even though under the LLC's operating agreement, the managers owed more limited duties. The *First Am.* court never purported to ask or answer whether the California Supreme Court would recognize a cause of action against a parent company for breach of

fiduciary duty to its wholly-owned subsidiary in connection
with its sale of the subsidiary.

To the best of Target's knowledge, no court has ever
recognized such a cause of action. A property owner has a
fundamental right to dispose of its property – here, Target's
ownership interest in an LLC – as it sees fits. To impose a
fiduciary duty upon a parent company in these circumstances
would unjustifiably interfere with property rights and would
permit a parent's decisions to be second-guessed in the name
of its subsidiary.

## B. Target Did Not Owe Fiduciary Duties To Mervyn's Creditors In Selling The Company.

As a fallback, Mervyn's argues that Target owed
fiduciary duties to Mervyn's creditors. (P's Br. 29.)
California law recognizes a duty to a company's creditors when
the company is insolvent. (P's Br. 30-31, citing cases.)
However, the Amended Complaint *does not* allege that Mervyn's
was insolvent at the time Target owned it or sold it.[5]
Instead, it alleges that "[a]fter the PE Sponsors stripped the
real estate from it", Mervyn's became insolvent. (Am. Compl.
¶100.) As discussed previously, this necessarily occurred
after Target sold Mervyn's.

---

[5] Such an allegation would be silly, given that Target
received $1.175 billion for its equity interest in Mervyn's.

## C. **The Exculpation Provision Bars Count V.**

### 1. **The provision may be considered.**

Contrary to Mervyn's argument, *In re Tower Air, Inc.,* 416 F.3d 229, 242 (3d Cir. 2005), did not establish an absolute rule prohibiting consideration of exculpation provisions on a Rule 12(b)(6) motion. In *Tower Air,* the exculpation provision had not been raised or argued below. The "general rule" referenced in *Tower Air, id.* at 242, is just that: a general rule that does not automatically apply in every case.

This is one of those cases where the general rule should not be applied. Target has raised the exculpation provision at the earliest stages, the Court may take judicial notice of it (*see* Section IV.A, *infra*), and there is no dispute about its authenticity or content. A few months ago, in *Official Committee of Unsecured Creditors of Fedders North American, Inc. v. Goldman Sachs Credit Partner L.P. (In re: Fedders North America, Inc.),* 405 B.R. 527, 543 (Bankr. D. Del. 2009), the court did just that, dismissing a claim against outside directors based upon an exculpation provision contained in a certificate of incorporation.

Alternatively, the Court may convert this portion of Target's motion into a summary judgment motion and then decide. *See Malpiede v. Townson,* 780 A.2d 1075, 1090-1092

(Del. 2001)(holding that there was no discovery issue which precluded an immediate grant of summary judgment because plaintiffs did not contest the existence or authenticity of the exculpation provision). Mervyn's should not be allowed to avoid dismissal of a legally insufficient claim.

## 2. The Amended Complaint does not plead around the exculpation provision.

Mervyn's falsely argues that it "has alleged that Target breached its fiduciary duty of good faith." (P's Br. 32, citing Am.Compl. ¶¶169-182.) In the cited paragraphs, *only* the PE Sponsors and the PE Owners are alleged to have "engaged in self-dealing, acted in bad faith, and breached their fiduciary duties (including the duty of loyalty)." (Am. Compl. ¶¶178, 179, 180, 181).

The Amended Complaint *never alleges* that Target breached its fiduciary duty of loyalty or acted in bad faith. Nor does it plead any particular facts that would support a reasonable inference that Target breached such duties. Therefore, the exculpation provision protects Target.[6]

---

[6]    Mervyn's also argues – almost as a throwaway – that the exculpation provision may not protect Target because it applies to acts or omissions undertaken by Target "on behalf of the Company [Mervyn's]", and Target is alleged to have been acting on its own behalf. (*See* P's Br. 32.)  This curious argument defeats Count V.  If Target was acting for itself and not Mervyn's, then with respect to those actions, Target could
[Footnote continued]

### D. **Count V Is Untimely.**

#### 1. **Delaware's three-year statute of limitations applies to Count V.**

Mervyn's's reliance on the internal affairs doctrine is misplaced. That doctrine mandates that California's *substantive law* be applied to Count V because Mervyn's is a California LLC. But as the Supreme Court held in *Sun Oil Co. v. Wortman,* 486 U.S. 717, 722 (1988), a federal court may apply the forum's state's statute of limitations even to claims governed by the substantive law of a different state.

> A state's interest in regulating the workload of its courts and determining when a claim is too stale to be adjudicated certainly suffices to give it legislative jurisdiction to control the remedies in its courts by imposing statutes of limitations.

*Id.* at 730.

The Delaware choice-of-law rules mandate that Delaware's statute of limitations be applied. The Delaware Chancery Court explained in *Juran v. Bron,* 2000 Del. Ch. LEXIS 143, at *33 (Del. Ch. Oct. 6, 2000):

> Where the law of two different states may apply to an action, Delaware courts apply the Restatement (Second) Conflict of Laws to determine which state law applies. With respect to questions of which state's statute of limitations to apply, the courts are instructed by the Restatement to apply the statute of limitations of the forum [*citing* Restatement at §142]. Thus, in this case, the Court

not have owed fiduciary duties to Mervyn's that could have been breached in the first place.

> would look to the statute of limitations laws of
> Delaware.[7]

Mervyn's one case where a Delaware court relied upon
the internal affairs doctrine to apply the statute of
limitations of another state was wrongly decided. In *Burtch*
*v. Dent (In re Circle Y of Yoakum, Texas)*, 354 B.R. 349, 359
(Bankr. D. Del. 2006), the court read *Schum v. Bailey,* 578
F.2d 493 (3d Cir. 1978), as holding that the court "should
apply the statute of limitations of the state whose
substantive law applies." The *Burtch* court misread *Schum.*
*Schum* involved New Jersey's choice-of-law rules. New Jersey,
unlike Delaware, "borrows" the statute of limitations from the
state whose substantive law is applied to the claim.[8] *Schum,*
578 F.2d at 495.

---

[7] In *Juran,* the court went on to discuss the interplay
between Delaware's choice-of-law rule and a choice-of-law
provision in the parties' contract. The court ultimately
concluded that "this case presents one of those 'unusual' or
'special' circumstances" where the court was not bound by any
statute of limitations because it was sitting as a court of
equity. 2000 Del. Ch. LEXIS 143, at *36. But "[h]ad the
special circumstances not been present, or had this been an
action at law, this Court believes that, despite the choice of
law provision in the contract Delaware limitations periods
would apply. This includes Delaware's borrowing statute."
*Id.* at *37.

[8] Mervyn's only other authority, *Official Committee of
Unsecured Creditors v. Lattman (In re Norstan Apparel Shops,
Inc.),* 367 B.R. 68 (March 30, 2007), involved application of
New York's choice-of-law rules, not Delaware's.

- 15 -

There is nothing in *Schum* to suggest that a statute

of limitations always must be taken from the state whose

substantive law applies, nor is there anything to suggest that

Delaware's choice-of-law rules take the statute of limitations

from the state whose substantive law applies. Under

Delaware's rule, Delaware's three-year statute of limitations

for breach of fiduciary duty applies and bars Count V.

### 2. **Delaware's borrowing statute bars Count V.**

Citing *Saudi Basic Indus. Corp. v. Mobil Yanbu*

*Petrochemical Co., Inc.*, 866 A.2d 1, 16 (Del. 2005), Mervyn's

argues that Section 8121 does not apply because it was not

forum-shopping for a longer statute-of-limitations period when

it filed its claim against Target in Delaware. The plaintiff

in *Saudi* had sued in Delaware in hopes of imposing a shorter

statute of limitations upon defendant's counterclaim. The

Delaware Supreme Court held that Section 8121 did not bar the

counterclaim because it would subvert the purpose of the

borrowing statute if the plaintiff who had selected the forum

could use it to prevail on a counterclaim that would have been

timely in another forum.[9]  *Id.* at 17-18.

---

[9] The other case cited by Mervyn's, *B. Lewis Productions, Inc.*
*v. Bean*, 2005 WL 273298 (D. Del. Jan. 28, 2005), also involved
the application of the borrowing statute to a counterclaim.

- 16 -

But *Saudi* does not mean that an out-of-state plaintiff that chooses Delaware as its forum can avoid the application of Section 8121 *to the plaintiff's own claims.* Under the plain language of Section 8121,

> [a] court must apply Delaware's borrowing statute when a non-Delaware resident brings a cause of action in a Delaware court, and the cause of action arose outside of Delaware.

*Elmer v. Tenneco Resins, Inc.,* 698 F. Supp. 535, 538 (D. Del. 1988). As a practical matter, "a Delaware court *must choose the shorter of either our own or another jurisdiction's law"* when Section 8121 applies. *Katell v. Morgan Stanley Group, Inc.,* 1993 Del. Ch. LEXIS 5, at \*21-\*22 (Del. Ch. Jan. 14, 1993)(emphasis added)(applying shorter Delaware statute of limitations to bar plaintiff's claim); *see Elmer,* 698 F. Supp. at 539 (same); *McIntosh v. Arabian American Oil Co.,* 633 F. Supp. 942, 945-946 (D. Del. 1986) (same); *Amoroso v. Joy Mfg. Co.,* 531 A. 2d 619, 621 (Del. Super. 1987) (same).

There is nothing unfair about applying Delaware's borrowing statute as written. Mervyn's is a California resident that seeks to bring a California claim based upon events that occurred outside of Delaware. Mervyn's has no inherent right to a Delaware forum for its breach of fiduciary duty claim. This Court should not entertain such a claim where, as here, it is untimely under Delaware law.

**IV. MERVYN'S ATTEMPTS TO POSTPONE DISMISSAL SHOULD FAIL.**

Mervyn's makes several unpersuasive arguments in an attempt to postpone dismissal of their action as to Target.

## A. Mervyn's Objections To The Exhibits Submitted By Target Have No Merit.

Mervyn's is incorrect in arguing that the Court may not consider the exhibits submitted by Target with its motion.

The commitment letters are exhibits to, and part of, the EPA, which is integral to, and explicitly relied on, in the Amended Complaint. (*See* Am. Compl. ¶¶54-79.) Accordingly, considering these documents on a motion to dismiss is proper. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

With one exception, the press releases submitted by Target simply repeat facts that already appear in the Amended Complaint. The exception (TAR.A005) announced Target's sale of its Marshall Field's division. This fact is not subject to dispute, and Target's motion does not depend on it.

The closing/funds flow statement and wire information demonstrate the uncontested proposition that the Purchase Price was paid to Target by wire transfer. Obviously, Mervyn's Holdings did not physically deliver $1.175 billion in cash to Target at closing.

Mervyn's Operating Agreement is a public document of
which the Court may take judicial notice. Fed.R.Evid. 2001.
Beyond that, Mervyn's clearly has access to its own Operating
Agreement. Mervyn's argument that it is "not in a position to
verify [its] authenticity" (P's Br. 13) is ridiculous.

**B.    The Court Should Deny Mervyn's Leave To Amend.**

There is no good reason to grant Mervyn's footnote
request (P's Br. 37 n.20) for leave to replead.

It has been 11 months since the initial Complaint,
and seven months since the Amended Complaint. Mervyn's was at
the center of the transactions at issue, and has had more than
enough time to review its records and gather evidence.
Mervyn's does not identify any facts that, if pleaded, might
save its claims against Target, nor has Mervyn's complied with
its obligation to submit a draft amended complaint when
seeking leave to replead. This is sufficient reason to deny
Mervyn's request. *Burtch v. Milberg Factors, Inc.,* 2009 U.S.
Dist. LEXIS 48431, at \*9-\*10 (D. Del. May 31, 2009) (*citing
Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482
F.3d 247, 252 (3d Cir. 2007)).

Mervyn's wants to engage in a speculative "fishing
expedition" that would costly and disruptive to Target,
without having any realistic expectation that a viable claim

- 19 -

against Target exists.  It is this sort of vexatious litigation that motions to dismiss are intended to prevent.

Date:  July 31, 2009.     Respectfully submitted,

**MONTGOMERY, MCCRACKEN,**
**WALKER & RHOADS, LLLP**


By  */s/ Laurie A. Krepto*
Laurie A. Krepto
(DE Bar #4109)
1105 North Market Street
Suite 1500
Wilmington, DE  19801
Phone:  (302) 504-7890
Fax:  (302) 504-7820
lkrepto@mmwr.com

- and –

**FAEGRE & BENSON LLP**
Wendy J. Wildung
(MN Bar #117055)
Dennis M. Ryan
(MN Bar #161275)
Michael F. Doty
(MN Bar #0388303)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Phone:  (612) 766-7000
Fax:  (612) 766-1600
wwildung@faegre.com
dryan@faegre.com
mdoty@faegre.com

Counsel for Defendant Target Corporation