# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERVYN'S HOLDINGS, LLC, *et al.* | ) | Case No. 08-11586 (KG) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| MERVYN'S LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 08-51402 (KG) |
| | ) | |
| LUBERT-ADLER GROUP IV, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | **Re Dkt Nos. 95 & 140** |

## MEMORANDUM OPINION[1]

The Official Committee of Unsecured Creditors (the "Committee") is prosecuting this adversary proceeding on behalf of the estate of debtor, Mervyn's LLC ("Debtor" or "Mervyn's") to recover alleged damages from the financial transactions surrounding the sale in July 2004 of Mervyn's by defendant Target Corporation ("Target") to Mervyn's Holdings,

---

[1] This Opinion constitutes the findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

LLC ("MH") (the "2004 Sale").[2] Since the commencement of the adversary proceeding and the filing of the original Complaint, the Committee filed its First Amended Complaint. (Adversary Docket "Adv. Dkt" 7). In lieu of an answer, defendants LaSalle Bank National Corporation and Bank of America ("Bank of America") (collectively "Defendants") filed a motion to dismiss the First Amended Complaint (the "Motion to Dismiss"). In the Motion to Dismiss, the Defendants argue that the Committee failed to join a necessary party, failed to properly name them in the proper capacity as trustees, failed to state a claim and failed to plead with the required particularity. The Committee filed its Motion for Leave to File Second Amended Complaint *Nunc Pro Tunc* to Motion Filing Date (the "Motion to Amend"). (Adv. Dkt. 140) in an effort to meet the Defendants' grounds for dismissal.

In the Motion to Amend, the Committee requests (a) leave to file the Second Amended Complaint, (b) to have the Second Amended Complaint deemed filed *nunc pro tunc* to the date of filing of the Motion, and (c) if necessary, to extend the time to serve the Second Amended Complaint in accordance with Federal Rule 4(m), made applicable by

---

[2] On December 30, 2008, the Court entered the Stipulation and Order Resolving and Settling (I) Objection of the Official Committee of Unsecured Creditors to Motion of the Debtors and Debtors in Possession for Orders Authorizing and Approving (A) Auction and Bid Procedures, (B) Bid Procedures to Stalking Horse Bidder, if Applicable, (C) Store Closing Sales Free and Clear of Liens, (D) Agency Agreement, and (E) Related Relief, With Respect to the Debtors' Remaining Stores, and (II) Cross-Motion for an Order Pursuant to 11 U.S.C. § 1112(b) and 11 U.S.C. § 105(a) Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code (the "Cash Collateral Settlement Order") (D.I. 1330). The Cash Collateral Settlement Order provides the Committee with standing, authority, control and the exclusive right and sole discretion to investigate, prosecute and/or seek authorization to compromise on behalf of the Debtors' estates, among other things, the 2004 Sale, causes of action under Chapter 5 of the Bankruptcy Code, and any claims or causes of action concerning SCSF Mervyn's (Offshore), Inc. and SCSF Mervyn's (US), LLC and their affiliates. The Committee took over litigation which special litigation counsel had commenced on September 2, 2008, under enormous time pressure.

Bankruptcy Rule 7004(a)(1). The parties fully briefed the Motion to Dismiss and the Motion to Amend[3] and the Court heard oral argument on January 14, 2010. Defendants seek dismissal of the First Amended Complaint and denial of the Motion to Amend arguing that the Committee has set forth no basis to find them liable and it would be futile to permit the filing of the Second Amended Complaint. For the following reasons, the Motion to Dismiss is granted and the Motion to Amend is denied.

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTS

### A. Private Equity Sale

Mervyn's, a California limited liability company, was a sectional retailer of various fashion and home décor products. At one time it operated 177 retail stores in the Midwest, South and Pacific Northwest.(Second Amended Complaint, "Second Am. Compl." ¶ 52). In 1978, the Dayton Hudson Corporation ("DHC") acquired Mervyn's, which thus became a wholly-owned subsidiary of DHC. (Second Am. Compl. ¶ 54). During this time, DHC also owned several "higher end" department stores, including Target Corporation ("Target"). (Second Am. Compl. ¶ 53). Target eventually became a highly successful chain of discount

---

[3] The Court has the slight procedural anomaly that although it is reviewing the Second Amended Complaint for futility in response to the Motion to Amend, it is the First Amended Complaint which is the subject of the Motion to Dismiss.

retail stores and DHC therefore changed its name to "Target Corporation." (Second Am. Compl. ¶ 53). By 2003, Target owned and operated three department store chains: (1) Marshall Field's; (2) Mervyn's; and (3) Target. The Target chain had become so successful by the end of 2004, that its board of directors decided to sell both the Marshall Field's and Mervyn's chains.

After a competitive auction process, Target entered into an Equity Purchase Agreement (the "EPA") on July 29, 2004, with MH. (Second Am. Compl. ¶ 54). MH is a Delaware limited liability company that three private equity groups formed (collectively, the "PE Sponsors" and "PE Owners"), (Second Am. Compl. ¶ 11). The EPA called for Target to convey 100% of its ownership interest in Mervyn's to MH for $1.175 billion, with Mervyn's real estate assets transferring to MDS Companies ("MDS"), a bankruptcy remote company formed by the PE Sponsors and PE Owners to administer Mervyn's real estate assets. (Second Am. Compl. ¶ 69). In the EPA, MH represented to Target that it had equity and debt commitment letters from Greenwich Capital Commercial Funding Corp. ("Greenwich") and Archon Financial LP ("Archon") (collectively referred as "the Secured Lenders"), evidencing that it had arranged for financing. (Second Am. Compl. ¶¶ 70-71).

### B. The Sale Results

On September 2, 2004, the 2004 Sale closed. (Second Am. Compl. ¶ 56). MDS funded the purchase with $800 million of the $1.175 billion purchase price in loans from the Secured Lenders by using Mervyn's real estate as collateral. (Second Am. Compl. ¶ 101). The Committee does not allege that Bank of America was a party to the 2004 Sale or

4

participated in forming its structure. MDS paid all of the loan proceeds directly to Target but MDS acquired the outstanding equity and debt. MH received none of the proceeds. (Second Am. Compl. ¶ 57). As a result of the Sale, Mervyn's could not transfer certain leases for Mervyn's real estate to MDS. (Second Am. Compl. ¶ 60). These "Restricted Leases" consisted of approximately 92 leases that were not assignable at the closing of the 2004 Sale, but as described below, Mervyn's was obligated to make new payments, called "Notional Rent" payments with respect to the Restricted Leases. (Second Am. Compl. ¶ 57).

### C. Notional Rent Payments

The PE Sponsors and PE Owners required Mervyn's to make Notional Rent payments to reflect the rent mark-up that MDS would have imposed on Mervyn's if the Restricted Leases had been transferred to the MDS Companies and then leased back to Mervyn's at the sale closing. (Second Am. Compl. ¶ 60). The PE Sponsors and PE Owners caused Mervyn's to deposit Notional Rent payments directly into MDS bank accounts that the Secured Lenders initially controlled (but later came under Bank of America's control). (Second Am. Compl. ¶ 60). Bank of America[4], was the trustee for the Registered Holders of Greenwich Capital Commercial Funding Corp., Commercial Mortgage Trust 2004-FL2, Commercial Mortgage Pass-Through Certificates, Series 2004-FL2 a/k/a Commercial Mortgage Trust 2004-FL2, Commercial Mortgage Pass-Through Certificates, Series 2004-FL2 (collectively referred to as "the Trust") and accepted an assignment of all or a portion of the loans made and related liens held by Greenwich in connection with the 2004 Sale. (Second Am. Compl. ¶ 44).

---

[4] Bank of America merged with LaSalle and thereby became the successor trustee to the Trust.

5

## III. PROCEDURAL BACKGROUND

On September 2, 2008, the Committee commenced the instant adversary proceeding by filing the Complaint against various parties seeking, *inter alia*, to avoid certain transactions made in connection with 2004 Sale (Adv. Dkt. 1). On December 22, 2008, the Committee filed the First Amended Complaint and served the Defendants for the first time. (Adv. Dkt. 7). The Defendants filed the Motion to Dismiss. (Adv. Dkt. 43, 95). While noting that the Amended Complaint identified LaSalle as a "trustee or nominee" and Bank of America as its successor, the Committee recognized that it did not correctly name Bank of America in its capacity as trustee and now requests authorization through its Motion to Amend to replead and cure any such deficiency. As explained below, the attempted correction is insufficient to defeat the Motion to Dismiss.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

### Rule 12(b)(6) Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) serves to test the sufficiency of the factual allegations in a plaintiff's complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain sufficient "factual allegations" which, if true, would establish "plausible grounds" for a claim: "the threshold requirement . . . [is] that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557. However, "labels and conclusions" or "formulaic

recitation of the elements of a cause of action" are not sufficient. *Id.* at 555. Legal conclusions are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding a motion to dismiss under Rule 12(b)(6), a court tests the sufficiency of the factual allegations and evaluates whether a plaintiff is "entitled to offer evidence to support the claims," and "not whether a plaintiff will ultimately prevail." *Oatway v. Am. Int'l Group, Inc.*, 325 F.3d 184, 187 (3d Cir. 2003). This is true even if "actual proof of those facts is improbable" and "a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

As discussed above, the Court must accept as true all allegations in the Amended Complaint and draw reasonable inferences in a light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Morse v. Lower Merion School District*, 132 F.3d 902, 905 (3d Cir. 1997). However, "a court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Sands v. McCormick*, 502 F.3d 263, 267-68 (3d Cir. 2007) (quoting *Morse*, 132 F.3d at 906).

### B. Motion to Amend

F.R.Civ.P., applicable to this matter under Bankruptcy Rule 7015, provides in relevant part:

> **(c) Relation Back of Amendments**. An amendment of a pleading relates back to the date of the original pleading when:
>
> > (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment.
>
>> (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and
>>
>> (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).

The purpose of Rule 15 is to "permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981); *see also Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1186 n.19 (3d Cir. 1994). Notwithstanding this policy of liberally granting leave to amend, a court should deny a motion to amend where granting it would be futile. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (providing that "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility"); *Hollander v. Flash Dancers Topless Club*, 173 Fed. Appx. 15, 19 (2d Cir. 2006). "[I]t is well established that leave to 'amend a complaint need not be granted when amendment would be futile." *Id.* Under Third Circuit law, "'[f]utility means that the complaint, as amended, would fail to state a claim upon which

8

relief would be granted . . . In assessing 'futility,' [a] court applies the same standard of legal sufficiency as applies under Rule 12(b)(6) . . . ." (citations omitted). Thus, a court "may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).

Before this Court can determine whether to permit Debtor to amend its pleadings pursuant to F.R.Civ.P. 15(a), the Court needs to decide whether the Committee's Motion to Amend would withstand a motion to dismiss. *Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir. 1983), cert. denied, 464 U.S. 937, 104 S. Ct. 348 (1983).

In determining whether to dismiss the adversary proceeding against Bank of America and LaSalle, this Court must consider the Supreme Court's recent discussion of motions to dismiss in *Ashcroft v. Iqbal*, U.S., 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In that opinion, the Court clarified some of the uncertainty as to the scope of its prior opinion in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007), and forcefully held that *Twombly* was not limited to antitrust complaints but instead enunciated the standard applicable to review of all complaints. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). To state a claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 127 S. Ct. at 1965. Stated another way, heightened fact pleading is not required, but enough facts must be alleged to state a claim to relief that is plausible on its face. *Id.* at 1974.

## IV. DISCUSSION

### A. The Committee Failed to Demonstrate Bank of America is a "Transferee" of Debtor's Property

The Committee is asserting a subsequent transferee claim pursuant to Bankruptcy Code Section 550(a)(2) against Bank of America (in its capactiy as successor trustee of a trust) to recover the liens granted to Greenwich by MDS on the transferred real estate from the 2004 Sale.

A valid avoidance claim against a subsequent *transferee*, requires a plaintiff to plead and prove that (1) the initial transaction was avoidable and (2) the initial transfer was later made to–or for the benefit of–the subsequent or mediate transferee. 11 U.S.C. § 550 (2009).

While the term "transferee" is neither defined in the Bankruptcy Code nor discussed in the legislative history of Section 550, the Court adopts the "dominion and control" test prescribed in Chief Judge Carey's decision in *In re Factory 2-U Stores, Inc.*, 2007 WL 2698207, *3 (Bankr. D. Del. Sept. 11, 2007), which adopts the Seventh Circuit's decision in *Bonded Financial Serv., Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988). This highly-regarded precedent[5] requires a "transferee" to have "'dominion over the money or other asset [and] the right to put the money to one's own purposes.'" *In re Factory 2-U*

---

[5] *Christy v. Alexander of New York, Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52 (2d Cir. 1997); *Bowers v. Atlanta Motor Speedway (In re Southeast Hotel Prop. Ltd P'ship.)*, 99 F.3d 151 (4th Cir. 1996); *In re Video Depot, Ltd.*, 127 F.3d 1195 (9th Cir. 1997); *Rupp Markgraf*, 95 F.3d 936 (10th Cir. 1996); *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588 (11th Cir. 1990).

*Stores, Inc.*, 2007 WL 2698207 at *3 (*quoting Bonded Financial*, 838 F.2d at 894). In other words, a "transferee must have the legal right to use the funds to whatever purpose he or she wishes, be it to invest in 'lottery tickets or uranium stocks.'" *Id*. ((*quoting Bonded Financial*, 838 F.2d at 894)(*quoting In re Anton Noll*, 277 B.R. 875, 879 (1st Cir. BAP May 16, 2002))).

The court in *Bonded Financial* reasoned that a "mere conduit" could not be a transferee and that only having control over the funds does not automatically render the party in recipt a transferee. *Id.* at 893-94. To better illustrate the ruling, Judge Easterbrook offered a hypothetical alternative to the facts of *Bonded Financial*: "When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent [B] may be disregarded." *Id*. at 893. In addressing the situation where a trustee is the conduit, Judge Ebel's decision in *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996), directly states that "in order to be a transferee of the debtor's funds . . . [the recipient] must have full dominion and control over them for one's own account as opposed to receiving them in trust or as agent for someone else." *Id.* at 942.

In applying the dominion and control test, the court in *LaSalle National Bank Assoc. v. Paloian*, 406 B.R. 299 (N.D. Ill. 2009), found LaSalle National Bank liable as a transferee but solely based on the absence of evidence showing that LaSalle acted as a trustee. *Id.* The court, however, acknowledged that if there was evidence of LaSalle acting as a trustee, it would not meet the "dominion and control" standard. *Id.* at 331.

The existence of fraudulent conveyance law post-*Bonded Financial* leads the Court to conclude that Bank of America is not a "transferee" under section 550 of the Code. The Court agrees with Bank of America that the Committee does not plead in the Second Amended

11

Complaint how Bank of America, acting as trustee had "dominion and control" over the funds. Specifically, the Committee fails to plead how Bank of America has legal title to the Notional Rent funds as opposed to mere physical possession. Bank of America acted as a financial intermediary and trustee to the Trust. It received no benefit and under the law of contracts, Bank of America is bound by the terms of the Trust and is therefore no different from a courier or an intermediary on a wire transfer; it held the Notional Rent funds only for the purpose of fulfilling an instruction to make the funds available to a third party. There is no allegation in the Second Amended Complaint that either the liens assigned by Greenwich or Notional Rent payments allegedly received from the MDS accounts were transferred to Bank of America in a non-trustee capacity or that Bank of America used the funds for another purpose. For all these reasons, the Committee failed to plead sufficient facts to show that Bank of America was a "transferee" for the purposes of its avoidance actions.

### B. The Committee Failed to Plead Constructive Knowledge of the Entire Transaction

Counts XXVIII through XXX of the Second Amended Complaint assert constructive fraud claims against Bank of America, as a subsequent transferee, seeking to avoid and recover Debtor's Notional Rent payments pursuant to sections 544(b), 548 and 550 of the Code as well as the Uniform Fraudulent Transfer Act. The Committee asserts in these counts that Debtor deposited certain unspecified Notional Rent payments into certain MDS bank accounts which Bank of America allegedly controlled. The Committee contends that the obligation to make Notional Rent payments arose from the 2004 Sale and that because all of these transactions should be collapsed in order to infer constructive fraud against Bank of

12

America, the Notional Rent payments are avoidable.

The *Tabor Court Realty* decision is the leading authority in the Third Circuit for collapsing multiple individual transactions to determine whether a certain transaction constitutes an avoidable fraudulent transfer. *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1302 (3d Cir. 1986). The Third Circuit in *Tabor Court Realty* held that where a series of transactions were "part of one integrated transaction," then courts may look "beyond the exchange of funds" and "collapse" the individual transactions of a leveraged buyout. *Id.* Instead of focusing on one of several transactions, the court needs to consider the overall financial consequences and the effects these transactions have on creditors. *In re Hechinger Inv. Co.*, 327 B.R. 537, 546-47 (Bankr. D. Del. 2005). In making this determination, courts can consider three factors in their analysis. First, whether all of the parties involved had knowledge of the multiple transactions. *Id.* Second, whether each transaction would have occurred on its own. *Id.* And third, whether each transaction was dependent or conditioned on other transactions. *Id.*

As to the first requirement, the Committee did not plead sufficient facts that Bank of America had knowledge of the entirety of the 2004 Sale of Mervyn's. As decided previously in this Court's decision in *In re Plassein*, 366 B.R. 318 (Bankr. D. Del. 2007) *aff'd on other grounds*, 590 F. 3d 252 (3d Cir. 2009), "absent proof of intent to defraud, independent transactions will not be collapsed." *Id.* at 326. The Committee's Second Amended Complaint does not contain any allegation of any actual or constructive fraud as to Bank of America. The only allegation of fraud comes from the Presale Report, a document outside of the

pleadings.

The court may not consider matters outside of the pleadings unless willing to treat the matter as a motion for summary judgment. Fed. R. Civ. P. Rule 12(d). However, in *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997), the Third Circuit Court of Appeals formulated a narrow exception. *Id.* The court stated that "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion into one for summary judgment." *Id.* at 1426. Additionally, another exception exists to Rule 12(b) and that is the public record exception. In the Third Circuit, courts may take judicial notice of public records for the purpose of acknowledging that the facts contained in the records existed in the public realm at that time. *Benak v. Alliance Capital Mgmt L.P.*, 435 F.3d 396, 401 (3d Cir. 2006). A court may not consider the information in the records as to whether or not these facts were true. *Id.*

This Court will not consider the Committee's Presale Report because it does not fall within either the integral document or public record exception. The Presale Report contains only unidentified ratings agency reports. The Presale Report was not made available to the public and does not contain relevant information from which to infer that Bank of America had constructive knowledge of all the transactions surrounding the 2004 Sale.

Moreover, the Committee has made no credible allegations that Bank of America was involved in the 2004 Sale. Although the Committee seeks to include Bank of America with the Secured Lenders, such allegations are patently untrue. The Trust for which Bank of America is Trustee did not even exist at the time of the 2004 Sale.

14

### C. The Second Amended Complaint Fails to Plead Sufficient Facts to State a Valid Fraudulent Conveyance Claim

The Committee argues in Count XIII and Counts XXVIII through XXX, that it has alleged with sufficient facts that Bank of America was an immediate or mediate transferee of the liens granted to Greenwich in conjunction with the 2004 Sale. (Second Am. Compl. ¶ 107). The Committee contends that Bank of America had constructive knowledge of the events surrounding the 2004 Sale because Bank of America "knew or should have known of the structure and purpose of the 2004 Sale." (Second Am. Compl. ¶ 107). Specifically, the Committee asserts that pleading that Bank of America controlled certain bank accounts into which Mervyn's transferred funds is sufficient to state a successor transferee claim. The Committee also contends that it has met the pleading standard for a constructive fraudulent conveyance because they believe discovery will reveal more evidence that demonstrates both Bank of America's constructive knowledge and its dominion and control over the Notional Rent funds.

A plaintiff is required to "set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him so that [he] can prepare an adequate answer." *AstroPower Liquidating Trust v. Xantrex Technology, Inc., (In re AstroPower Liquidating Trust),* 335 B.R. 309, 333 (Bankr. D. Del.2005) (internal quotation, citation omitted). *See also Official Comm. of Unsecured Creditors v. DVI Bus. Credit, Inc. ( In re DVI, Inc.),* 326 B.R. 301, 305-06 (Bankr. D. Del. 2005) (applying Rule 8(a)(2) notice pleading standard in considering motion to dismiss fraudulent transfer claim). However, cases in this District have identified factors that "would put a defendant on notice as to the basis of the

plaintiff's complaint." *In re APF, Co.*, 308 B.R. 183, 188 (Bankr. D. Del. 2006); *In re Lexington Healthcare Group,* 339 B.R. 570, 575 (Bankr. D. Del. 2006) (must identify transfer by date and amount and the transferor and transferee); *In re DVI, Inc.,* 326 B.R. 301, 308 (Bankr. D. Del. 2005) (complaint sufficiently pled where it identifies date and amounts of transfers). These factors include identifying the transfer by date, amount, name of the transferor, and name of the transferee. *In re APF, Co.,* 308 B.R. at 188.

In this case, the Committee did not provide any information regarding the amounts of Notional Rent payments or name a proper transferee acting in a non-trustee capacity. As previously discussed, Bank of America as a trustee is not a "transferee" for purposes of Section 550. Therefore, the Committee did not name a valid transferee and did not state the the value of the Notional Rent payments Mervyn's made to Bank of America. For these reasons, the Committee's fraudulent transfer claim must fail.

## IV. <u>CONCLUSION</u>

For the reasons enumerated above, the Court will deny the Committee's Motion to Amend and will grant Defendants' Motion to Dismiss. Order to follow.

Date: March 12, 2010

_____
KEVIN GROSS, U.S.B.J.